# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

HE DEPU, *et al.*,

                    Plaintiffs,

               v.

YAHOO! INC., *et al.*,

                    Defendants.

No. 1:17-00635-JDB

Judge John D. Bates

**PLAINTIFFS' MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO DEFENDANTS' MOTIONS TO DISMISS**

# TABLE OF CONTENTS

PRELIMINARY STATEMENT.................................................................................................. 1

STATEMENT OF FACTS...................................................................................................... 2

    I.     The Trust is created to provide humanitarian relief to Chinese dissidents
          imprisoned for online dissent................................................................................ 2

    II.    The Trust's humanitarian purpose is breached. ................................................... 3

    III.   All Defendants exercised significant control over Trust assets and were
          trustees. ............................................................................................................... 4

    IV.   This lawsuit was a last resort to vindicate the Trust's humanitarian
          purpose. ............................................................................................................... 6

ARGUMENT ....................................................................................................................... 7

    I.     The Complaint plausibly alleges that the Trust is an enforceable charitable
          trust. .................................................................................................................... 9

    II.    The Complaint plausibly alleges that all Defendants were trustees of the
          Trust. ................................................................................................................. 11

    III.   The Complaint plausibly alleges a profound breach of Trust............................. 15

    IV.   The Beneficiary Plaintiffs have standing to enforce the Trust. .......................... 16

          1.     The Beneficiary Plaintiffs have a special interest in the Trust that is
                   undisputedly distinguishable from the general public's. ......................... 16

          2.     The Yahoo Defendants' "numerosity" argument fails............................. 20

    V.    All claims are timely made. ............................................................................... 27

          1.     The clock on any statute of limitations applicable to Plaintiff Xu
                   W. did not begin to run until April 29, 2014. ......................................... 27

          2.     The breach of trust claims are timely under D.C. Code § 19-
                   1310.05(c). .............................................................................................. 28

          3.     The Yahoo Defendants concealed the existence of a claim against
                   them.......................................................................................................... 30

          4.     Plaintiffs' claims are timely even under D.C. Code § 12-301(8). ............ 31

    VI.   The Complaint plausibly alleges breach of contract and unjust enrichment. ....... 37

          1.     Plaintiff Yu did not release her claims here............................................. 37

           2.     Res judicata does not apply........................................................................ 39

          3.     The Complaint plausibly alleges breach of contract................................. 39

           4.     The Complaint plausibly alleges unjust enrichment................................. 42

    VII.  Plaintiffs plausibly allege third-party and principal-agent liability against
          Yahoo. ............................................................................................................... 43

CONCLUSION.................................................................................................................... 45

# TABLE OF AUTHORITIES

**Page(s)**

CASES

*Akin v. Certain Underwriters at Lloyd's London*,
  140 Cal. App. 4th 291 (Cal. Ct. App. 2006) .........................................................................40

*Alder v. Drudis*,
  30 Cal. 2d 372 (Cal. 1947)....................................................................................................40

*Aleutian Pribilof Islands Ass'n, Inc. v. Kempthorne*,
  537 F. Supp. 2d 1 (D.D.C. 2008) ...........................................................................................11

*In re APA Assessment Fee Litig.*,
  766 F.3d 39 (D.C. Cir. 2014)................................................................................................42

*In re APA Assessment Fee Litig.*,
  862 F. Supp. 2d 1 (D.D.C. 2012) ............................................................................................9

*Ashcroft v. Iqbal*,
  556 U.S. 662 (2009)................................................................................................................8

*Athey v. United States*,
  132 Fed. Cl. 683 (Fed. Cl. 2017) ..........................................................................................11

*Attorney Gen. v. Old S. Soc. in Boston*,
  95 Mass. 474 (Mass. 1866)...................................................................................................37

*Averill v. Lewis*,
  138 A. 815 (Conn. 1927) ......................................................................................................26

*Banneker Ventures, LLC v. Graham*,
  798 F.3d 1119 (D.C. Cir. 2015)..............................................................................................8

*Beard v. Edmondson & Gallagher*,
  790 A.2d 541 (D.C. 2002) ....................................................................................................34

*Beckett v. Air Line Pilots Ass'n*,
  995 F.2d 280 (D.C. Cir. 1993) ..............................................................................................10

*Berkowitz v. Berkowitz*,
  No. CIV.A. 11-10483-DJC, 2012 WL 769726 (D. Mass. Mar. 9, 2012) ...............................12

*Burton v. Dolph*,
  89 Va. Cir. 101 (Va. Cir. Ct. 2014)..................................................................................13, 14

*Colbert v. Georgetown Univ.*,
    641 A.2d 469 (D.C. 1994) ................................................................................33

*C&E Servs., Inc. v. Ashland, Inc.*,
    498 F. Supp. 2d 242 (D.D.C. 2007) ...............................................................36

*Cabaniss v. Cabaniss*,
    464 A.2d 87 (D.C. 1983) ..........................................................................10, 12

*Chambers v. NASA Fed. Credit Union*,
    222 F. Supp. 3d 1 (D.D.C. 2016) ....................................................................42

*Estate of Chappelle v. Sanders*,
    442 A.2d 157 (D.C. 1982) ...............................................................................30

*In re Chinese-Manufactured Drywall Prods. Liab. Litig.*,
    No. CV 09-02047, 2017 WL 1476595 (E.D. La. Apr. 21, 2017) ....................45

*Church of Scientology Int'l v. Eli Lilly & Co.*,
    848 F. Supp. 1018 (D.D.C. 1994) .....................................................................9

*City Bank Farmers Tr. Co. v. Neary*,
    27 N.Y.S.2d 979 (N.Y. Sup. Ct. 1940) ...........................................................42

*City of Hartford v. Larrabee Fund Ass'n*,
    161 Conn. 312 (Conn. 1971) ...........................................................................16

*City of Paterson v. Paterson Gen. Hosp.*,
    97 N.J. Super. 514 (N.J. Ch. Div. 1967) .........................................................21

*City of Tacoma v. Tacoma Cemetery*,
    28 Wash. 238, 68 P. 723 (Wash. 1902) ..........................................................37

*Cobell v. Norton*,
    260 F. Supp. 2d 98 (D.D.C. 2003) ..................................................................36

*Congregation Jeshuat Israel v. Congregation Shearith Israel*,
    186 F. Supp. 3d 158 (D.R.I. 2016), *rev'd on other grounds*, No. 16-1756,
    2017 WL 3276805 (1st Cir. Aug. 2, 2017) .....................................................13

*Cundiff v. Dollar Loan Ctr. LLC*,
    726 F. Supp. 2d 1232 (D. Nev. 2010) ...............................................................1

*Dakin v. Allis*,
    25 Wis. 2d 49 (Wis. 1964) ..............................................................................38

*Davenport v. Attorney Gen.*,
    361 Mass. 372 (Mass. 1972) ...........................................................................16

*In re Deyette,*
     16 Misc.3d 1124(A), (N.Y. Sup. Ct. 2007) ..................................................12

*Diamond Crystal Brands, Inc. v. Wallace,*
     563 F. Supp. 2d 1349 (N.D. Ga. 2008) ....................................................11

*Diamond v. Davis,*
     680 A. 2d 364 (D.C. 1996) ......................................................................35

*In re Diet Drugs Prods. Liab. Litig.,*
     No. CIV.A. 99-20593, 2001 WL 283163 (E.D. Pa. Mar. 21, 2001).......................11

*Doe v. Medlantic Health Care Grp., Inc.,*
     814 A.2d 939 (D.C. 2003) ...............................................................32, 36

*In re Downer Home,*
     67 Wis. 2d 55 (Wis. 1975) ........................................................................16

*Duggan v. Keto,*
     554 A.2d 1126 (D.C. 1989) .......................................................................10

*EEOC v. St. Francis Xavier Parochial Sch.,*
     117 F.3d 621 (D.C. Cir. 1997)......................................................................8

*England v. Winslow,*
     196 Cal. 260 (Cal. 1925)............................................................................13

*English v. D.C. Dep't of Behavioral Health,*
     No. 2013-DMH-00003, 2015 WL 5693305 (D.C. Office of Admin. Hearings,
     July 13, 2015)...........................................................................................30

*Family Fed'n for World Peace and Unification v. Moon,*
     No. 2011 CA 003721, 2013 WL 5974896 (D.C. Super. Oct. 28, 2013),
     *overruled on other grounds, Family Fed'n for World Peace v. Hyun Jin
     Moon,* 129 A.3d 234 (D.C. 2015) ...........................................................28

*Family Fed'n for World Peace v. Hyun Jin Moon,*
     129 A.3d 234 (D.C. 2015) ............................................................... *passim*

*Felter v. Kempthorne,*
     473 F.3d 1255 (D.C. Cir. 2007).................................................................34

*Feng Wang v. A & W Travel, Inc.,*
     14 N.Y.S.3d 459 (N.Y. App. Div. 2015) ...................................................45

*Fischer v. Eldon Stevenson, Jr. Scholarship Fund Tr.,*
     No. M2004-00352-COA-R3-CV, 2005 WL 2012773 (Tenn. Ct. App. Aug. 22,
     2005) ........................................................................................................26

*Fletcher v. District of Columbia*,
    481 F. Supp. 2d 156 (D.D.C. 2007), *vacated in part on other grounds sub nom.*, *Fletcher v. United States Parole Comm'n*, 550 F. Supp. 2d 30 (D.D.C. 2008) .........................................................................................................27, 28

*Foman v. Davis*,
    371 U.S. 178 (1962)..........................................................................................45

*Gilmore v. Palestinian Interim Self-Gov't Auth.*,
    53 F. Supp. 3d 191 (D.D.C. 2014), *aff'd*, 843 F.3d 958 (D.C. Cir. 2016) ................................8

*Gray v. St. Matthews Cathedral Endowment Fund*,
    544 S.W.2d 488 (Tex. Ct. Civ. App. 1976) ...............................................................19

*Henderson v. Charles E. Smith Mgmt., Inc.*,
    567 A.2d 59 (D.C. 1989) ....................................................................................44

*Himmelfarb v. Horwitz*,
    536 A.2d 86 (D.C. 1987) ....................................................................................17

*Hooker v. Edes Home*,
    579 A.2d 608 (D.C. 1990) ......................................................................... *passim*

*Hurd v. District of Columbia Gov't*,
    864 F.3d 671 (D.C. Cir. 2017)................................................................................9

*Int'l Longshoremen's and Warehousemen's Union v. Meese*,
    891 F.2d 1374 (9th Cir. 1989) ...............................................................................27

*Integrated Voting Sols., Inc. v. Automated Ballot Concepts, LLC*,
    No. F071837, 2017 WL 371385 (Cal. Ct. App. Jan. 26, 2017).............................................39

*Jackson v. Loews Washington Cinemas, Inc.*,
    944 A.2d 1088 (D.C. 2008) .................................................................................44

*Johnson's Adm'x v. Richmond & D.R. Co.*,
    86 Va. 975, 11 S.E. 829 (Va. 1890)........................................................................38

*Judah v. Reiner*,
    744 A.2d 1037 (D.C. 2000) .................................................................................45

*Kaar v. Wells Fargo Bank, N.A.*,
    No. C 16-01290 WHA, 2016 WL 3068396 (N.D. Cal. June 1, 2016)....................................41

*Kania v. Chatham*,
    297 N.C. 290 (N.C. 1979)...............................................................................25, 26

*Keepseagle v. Perdue*,
    856 F.3d 1039 (D.C. Cir. 2017) ........................................................................41

*Kim v. United States*,
    632 F.3d 713 (D.C. Cir. 2011) ...........................................................................9

*King v. Johnston*,
    178 Cal. App. 4th 1488 (Cal. Ct. App. 2009) ......................................................13

*King v. Mitchell*,
    33 U.S. 326 (1834) ...........................................................................................12

*Kosty v. Lewis*,
    319 F.2d 744 (D.C. Cir. 1963) ..........................................................................36

*Lee v. Foote*,
    481 A.2d 484 (D.C. 1984) (*per curiam*) ........................................................42, 43

*Lee v. Spoden*,
    776 S.E.2d 798 (Va. 2015) ................................................................................39

*Lifespan Corp. v. New England Med. Ctr., Inc.*,
    No. CIV. 06-CV-421-JNL, 2010 WL 3718952 (D.R.I. Sept. 20, 2010) .................37

*Limestone Dev. Corp. v. Vill. of Lemont, Ill.*,
    520 F.3d 797 (7th Cir. 2008) ............................................................................34

*In re Lish*,
    No. 2:12-CV-02204-APG, 2013 WL 4006603 (D. Nev. Aug. 5, 2013) ....................8

*Long v. United States*,
    604 F. Supp. 2d 119 (D.D.C. 2009) ..................................................................34

*Love v. Med. Coll. of Wis.*,
    No. 15-CV-0650, 2016 WL 1627629 (E.D. Wis. Apr. 22, 2016) ..........................38

*McBride v. McBride*,
    262 Ky. 452, 90 S.W.2d 736 (Ky. Ct. App. 1936) ..............................................13

*McWilliams Ballard, Inc. v. Broadway Mgmt. Co. Inc.*,
    636 F. Supp. 2d 1 (D.D.C. 2009) ......................................................................43

*Mount Jezreel Christians Without a Home v. Bd. of Trustees of Mount Jezreel*
    *Baptist Church*,
    582 A.2d 237 (D.C. 1990) ...........................................................................23, 24

*Nat'l Parks Conservation Ass'n v. United States Forest Serv.*,
    No. 15-01582(APM), 2015 WL 9269401 (D.D.C. Dec. 8, 2015) ..........................11

*Nevius v. Africa Inland Mission Int'l,*
  511 F. Supp. 2d 114 (D.D.C. 2007) ...................................................................43

*NRM Corp. v. Hercules, Inc.,*
  758 F.2d 676 (D.C. Cir. 1985) ........................................................................41

*Paleteria La Michoacana, Inc. v. Productos Lacteos Tocumbo S.A. De C.V.,*
  No. CV 11-1623 (RC), 2017 WL 1194331 (D.D.C. Mar. 30, 2017)...........................8

*Poulos v. Poulos,*
  No. 15 CVS 1116, 2016 WL 5375649 (N.C. Super. Sept. 26, 2016) ........................1

*Ray v. Queen,*
  747 A. 2d 1137 (D.C. 2000) ......................................................................33, 35

*Reardon v. Riggs Nat'l Bank,*
  677 A.2d 1032 (D.C. 1996) ...........................................................................44

*Robert Schalkenbach Found. v. Lincoln Found., Inc.,*
  208 Ariz. 176, 91 P.3d 1019 (Ariz. Ct. App. 2004)....................................19, 21, 26

*Samaritan Health Ctr. v. Heckler,*
  636 F. Supp. 503 (D.D.C. 1985)......................................................................27

*Schwartz v. Dallas Cowboys Football Club, Ltd.,*
  157 F. Supp. 2d 561 (E.D. Pa. 2001) ................................................................39

*Sibley v. St. Albans Sch.,*
  134 A.3d 789 (D.C. 2016) .............................................................................15

*Smith v. Wash. Post Co.,*
  962 F. Supp. 2d 79 (D.D.C. 2013) ...................................................................43

*St. Croix Chippewa Indians of Wis. v. Kempthorne,*
  No. 07-2210 (RJL), 2008 WL 4449620 (D.D.C. Sept. 30, 2008)....................26, 27

*State ex rel. Nixon v. Hutcherson,*
  96 S.W.3d 81 (Mo. 2003) ..............................................................................26

*Stephan v. Equitable S & L Ass'n.,*
  268 Or. 544, 522 P.2d 478 (Or. 1974) ..........................................................12, 13

*Stevens v. Sodexo, Inc.,*
  846 F. Supp. 2d 119 (D.D.C. 2012)...............................................................41, 42

*Taylor v. Sturgell,*
  553 U.S. 880 (1974)....................................................................................39

*In re Thompson's Estate,*
   416 Pa. 249 (Pa. 1965) ..................................................................................35

*Trustees of Andover Theological Seminary v. Visitors of Theological Inst. in*
   *Phillips Acad. in Andover,*
   253 Mass. 256 (Mass. 1925) ..................................................................36, 37

*Union Tr. Co. of Pittsburgh v. McCaughn,*
   24 F.2d 459 (E.D. Pa. 1927) ........................................................................12

*United States ex rel. Am. Civil Constr., LLC v. Hirani Eng'g & Land Surveying,*
   *P.C.*, No. 14-CV-00745 (APM), 2017 WL 2787590 (D.D.C. June 27, 2017) ......................42

*W. Virginia Ass'n of Cmty. Health Centers, Inc. v. Heckler,*
   734 F.2d 1570 (D.C. Cir. 1984) ....................................................................27

*Wang by & through Wong v. New Mighty United States Trust,*
   843 F.3d 487 ................................................................................................1

*In re Washington Builders Ben. Tr.,*
   173 Wash. App. 34 (Wash. Ct. App. 2013) ..................................................17

*William Buchanan Found. v. Shepperd,*
   283 S.W.2d 325 (Tex. Civ. App. 1955) ........................................................37

*Williams v. Bd. of Trustees of Mount Jezreel Baptist Church,*
   589 A.2d 901 (D.C. 1991) ..............................................................23, 24, 25

*Williamson v. Williamson,*
   No. 2:12-CV-01841-MHH, 2013 WL 12121985 (N.D. Ala. Nov. 4, 2013) ..........................30

*Wright v. Howard Univ.,*
   60 A.3d 749 (D.C. 2013) ..............................................................................39

*Wright v. Sony Pictures Entm't, Inc.,*
   394 F. Supp. 2d 27 (D.D.C. 2005) ................................................................38

*Yandell v. Wilson,*
   182 Miss. 867 (Miss. 1938) ..........................................................................14

**STATUTES**

D.C. Code § 12-301(8) ..........................................................................28, 29, 32

D.C. Code § 12-302 ....................................................................................27, 28

D.C. Code § 19-1301.02 ....................................................................................11

D.C. Code § 19-1310.05 ............................................................................. *passim*

D.C. Code § 29-403.04 ...................................................................................15

D.C. Code § 29-406.30 ...................................................................................15

D.C. Code § 29-408.09 ...................................................................................16

D.C. Code § 29-408.23 ...................................................................................15

D.C. Code § 29-410.03 ...................................................................................15

N.H. Rev. Stat. Ann. § 564-B:10-1005..........................................................30

**OTHER AUTHORITIES**

Alan Newman, *You Don't Know What You've Got Till It's Gone: Time-Barred Claims Under the Uniform Trust Code*, 48 Real Prop. Tr. & Est. L.J. 459 (2014).........................................................................................................30

Austin W. Scott & William F. Fratcher, *The Law of Trusts* (4th ed. 1987)...................................36

Austin W. Scott & William F. Fratcher, *The Law of Trusts* (4th ed. 1989)...................................43

Austin W. Scott, William F. Fratcher & Mark L. Ascher, *Scott & Ascher on Trusts* (5th ed. 2008) .......................................................................................16

George G. Bogert, George T. Bogert & William K. Stephens, *The Law of Trusts and Trustees* (rev. 2d ed. supp. 2003)........................................................26

Geraint Thomas & Alastair Hudson, *The Law of Trusts* (2d ed. 2010) ...................................12, 13

Mary Grace Blasko, *et al.*, *Standing to Sue in the Charitable Sector*, 28 U.S.F. L. Rev. 37 (1993) ...........................................................................................21

*Michie's Jurisprudence of Virginia & West Virginia: Trusts and Trustees* (2013) .....................13

Restatement (Second) of Trusts (1959) ..............................................................10, 11

Restatement (Second) of Torts (1979)......................................................................44

Restatement (Third) of Trusts (2007) ......................................................16, 18, 22, 26

Restatement (Third) of Trusts (2012) ...........................................................7, 21, 26

Uniform Trust Code § 1005......................................................................28, 29, 30

## PRELIMINARY STATEMENT

As set forth in detail in the Complaint,[1] this case is about profound breaches of trust and contract in connection with the Yahoo Human Rights Fund (the "Trust"), particularly the violation and eventual termination of the Trust's noble purpose of providing humanitarian assistance to Chinese dissidents imprisoned for exercising their freedom of expression online.

Amidst hundreds of pages of submissions on Defendants'[2] four motions to dismiss, a startling concession emerges: not *one* meaningfully challenges that these profound breaches of trust and contract have occurred. Yet, ***all*** Defendants seek to cut off liability without answering the Complaint, mainly on the theory that Plaintiffs[3] are the wrong people to bring suit (despite being beneficiaries of the Trust, and despite being a party to the contract creating the Trust), and that even if they were, they sued too late (despite Defendants' systematic concealment of facts establishing liability, and despite the Trust's humanitarian purpose being definitively terminated only last year). In some ways, these efforts are unsurprising. Defendants have long sought to benefit from the Trust in various ways, but have never wanted to accept the responsibility that came with it. As the Complaint makes clear, however, Defendants *did* have important responsibilities, to the Trust and to Plaintiffs, but failed utterly to live up to them. Defendants'

---

[1] The Complaint refers to Dkt. 26 and citations to "¶ __" are to paragraphs therein.

[2] Defendants are Yahoo! Inc. ("Yahoo"), Michael Callahan ("Callahan"), Ronald Bell ("Bell") (together, the "Yahoo Defendants"), the Estate of Harry Wu ("Wu"), the Laogai Human Rights Organization ("LHRO"), the Laogai Research Foundation, the Laogai Research Foundation-CA (together with the Laogai Research Foundation, "LRF"), and currently unknown Doe defendants. The Trust is a nominal defendant because it may hold title to assets necessary for complete relief. *E.g.*, *Wang by & through Wong v. New Mighty United States Trust*, 843 F.3d 487, 496 & 496 n.20 (D.C. Cir. 2016) (noting defendant trust may be a nominal party and declining to dismiss it); s*ee also Cundiff v. Dollar Loan Ctr. LLC*, 726 F. Supp. 2d 1232, 1243 (D. Nev. 2010); *Poulos v. Poulos*, No. 15 CVS 1116, 2016 WL 5375649, at *1 (N.C. Super. Sept. 26, 2016).

[3] Plaintiffs are He Depu ("Mr. He"), Yang Zili ("Yang"), Li Dawei ("Li"), Wang Jinbo ("Wang"), Ouyang Yi ("Ouyang"), Xu Yonghai ("Xu"), Xu Wanping ("Xu W.") (collectively, the "Beneficiary Plaintiffs"), and Yu Ling ("Yu").

motions do nothing to suggest otherwise. They should be denied, Defendants should answer the Complaint, and this case should proceed to discovery.

## STATEMENT OF FACTS

**I.    The Trust is created to provide humanitarian relief to Chinese dissidents imprisoned for online dissent.**

In 2007, after imprisoned Chinese dissidents who were Yahoo users sued Yahoo for providing their user information to the Chinese Communist Party ("CCP"), the Chinese dissidents and their families settled their lawsuit in exchange for, among other things, the establishment of a charitable trust for the benefit of similarly situated dissidents. ¶¶ 33-36. Pursuant to a confidential settlement agreement ("Settlement"), $17.3 million was to be paid "in trust" to the LRF, to be maintained separately from LRF's funds, and to be administered by a board of directors with Yahoo's involvement. ¶ 36 n.3. The final installment was paid in July 2008, and the Trust at issue in this action was thus created. *Id.*

According to numerous public and private statements, the purpose of the Trust (variously referred to by Yahoo and others as the "Yahoo Human Rights Fund," the "Human Rights Fund," the "Yahoo Fund," the "Fund," or the "YHRF") was "to provide humanitarian and legal aid to dissidents who have been imprisoned for expressing their views online." *E.g.*, ¶¶ 41-42. Indeed, as Yahoo, through Vice President and Deputy General Counsel Michael Samway ("Samway"), admonished the LRF *before* wiring the final portion of Trust assets, "we need to use the Fund for its *intended principles* regarding *online dissent*." ¶ 43 (emphasis added). And, in the following several years, and as recently as 2015, Yahoo repeatedly made similar statements, including as a justification for defeating human rights-related shareholder proposals, which Yahoo represented in SEC filings were unnecessary in light of Yahoo's "establishment of a Human Rights Fund, in partnership with a noted Chinese human rights activist, to provide humanitarian relief and legal

2

support for dissidents imprisoned for expressing their views online." *E.g.*, ¶¶ 104-09.

As for the Settlement, it also included "provid[ing] humanitarian and legal assistance primarily to persons in or from the People's Republic of China who have been imprisoned for expressing their views through Yahoo! or another medium," ¶ 144, first in a list of three permissible uses of Trust assets, required that reports be made twice a year to Yahoo of all Trust expenditures and that Yahoo be involved in creating the Trust's board of directors. ¶ 49.

In sum, it is indisputable, and indeed, undisputed, that the Trust's purpose was at least in significant part to provide humanitarian assistance to Chinese dissidents imprisoned for online expression. Further, the Complaint alleges that that was the Trust's *primary* purpose—citing, among other things, Yahoo's own language, as expressed through Samway, that the Trust's "intended principles" related to "online dissent" and that other uses were to be "limited exceptions"—and no Defendant has meaningfully challenged the plausibility of that allegation.[4]

## II.    The Trust's humanitarian purpose is breached.

Also undisputed is that, regardless of whether humanitarian spending was the Trust's primary purpose, that purpose has been violated. First, the Complaint alleges that, based on publicly available information, less than $700,000, or a paltry *4%*, of the Trust's $17.3 million corpus, has been spent on that purpose, ¶ 59, while more than *$13 million* has been spent on other things. ¶¶ 59 & n.7, 60. That this constitutes a profound violation of that purpose cannot

---

[4] That Defendants *deny* that was the primary purpose is, of course, meaningless on this motion to dismiss, absent a showing of implausibility. And, given the facts alleged—including Yahoo's own statements about the Trust's purpose, which *never* mentioned anything *other* than providing assistance to imprisoned Chinese dissidents, ¶¶ 41, 103-09, and which explicitly referred payments to LRF as a "limited exception," ¶¶ 43-44, as well as facts indicating that numerous prerequisites and restrictions were placed on the use of Trust funds for non-humanitarian purposes at the outset, ¶¶ 45, 51—the allegation is at a minimum plausible, since these facts indicate an intent to privilege and protect humanitarian spending.

reasonably be disputed, and indeed, no Defendant meaningfully argues otherwise (or argues that the underlying factual allegations are implausible).

Second, the Complaint alleges that in 2016, that purpose was terminated completely. Indeed, when Plaintiff Xu W. applied for humanitarian assistance from the Trust, the LRF, through its Executive Director and *alter ego* Wu, informed him that the *Trust was no longer providing such assistance at all*. ¶¶ 16, 72. That this *also* was unlawful and constitutes a profound breach of trust is similarly indisputable—indeed, no Defendant seriously contends otherwise, nor does any Defendant dispute the plausibility of the underlying factual allegations.

### III.    All Defendants exercised significant control over Trust assets and were trustees.

As discussed, the Trust *res* was paid in installments to the LRF "in trust" for specifically identified purposes, and required the LRF to hold the *res* in separate accounts. As a result, the LRF was a trustee of the Trust. So too was Wu, as the *alter ego* of LRF, which he dominated and controlled until his death. ¶ 118. (Neither Wu nor the LRF challenge the plausibility of the Complaint's *alter ego* allegations.) And, more generally, Wu and the LRF exercised considerable control over Trust assets, and meddled in Trust affairs.

So too did the Yahoo Defendants. For instance, in guidelines drafted by Yahoo and the LRF for operating the Trust, Yahoo insisted that the Trust's board of directors always include a Yahoo employee, that a quorum required that employee's presence, and that all Trust spending require board consensus (and thus Yahoo's approval, given the quorum requirement). ¶ 49.

Then, in July 2008, **before** wiring the final installment of Trust assets to the LRF, Samway wrote to the LRF, on Yahoo's behalf, to press issues Yahoo had previously raised at Trust board meetings, including: (1) the need to obtain "professional guidance to evaluate the tax implications the Fund will have on LRF and Yahoo"; (2) the need for "transparency mechanisms for the Board to have better visibility into applications for assistance and payments from the

Fund and also with respect to the overall expenses of the Fund"; (3) the fact that "we need to use the Fund for its intended purposes regarding online dissent"; (4) the fact that "supporting some of the preparatory work for the LRF Museum" was a "limited exception" to those purposes; (5) the fact that, notwithstanding those exceptions, "we should be sure to keep focus on the Fund's purposes though"; (6) a proposal "to seek Board approval for distribution of funds of more than a certain amount, say $10,000"; and (7) the need to "establish criteria for what types of projects the YHRF Board should consider and also decide if they're within the scope of the Fund." ¶ 51.

Then, in 2009, after transferring the entire Trust *res* to accounts controlled mainly by Wu and the LRF, Yahoo transferred some or all of those assets back into accounts that Yahoo controlled, at least in part, dividing the *res* into two. The first part, consisting of $3.55 million, was carved out into a sub-trust for settling legal claims against Yahoo by imprisoned Yahoo users, with Callahan, Bell, and other Yahoo employees named as trustees. ¶ 53. In 2015, the Yahoo Defendants purported to terminate this sub-trust, with the *res* returning to the Trust. *Id.*

These facts contradict numerous public and private statements to the effect that the Yahoo Defendants had little or no responsibility over Trust assets. *E.g.*, ¶¶ 75-93.[5] They only came to light because of Plaintiffs' investigation, which generated media pressure and unearthed previously confidential information, including information revealed for the first time in the Yahoo Defendants' motion to dismiss the initial complaint. ¶¶ 3-6. More to the point, they show that, contrary to their representations, the Yahoo Defendants in fact exercised considerable control over Trust assets and meddled considerably in Trust affairs. And, as alleged, that made them trustees of those assets, with fiduciary responsibilities over those assets. ¶¶ 56-57.

---

[5] Indeed, as discussed below, when Plaintiff Yu sued in 2011 to recover her personal share of the Settlement, Yahoo even used the fact that it was not named in her lawsuit as a defense against the allegation, made in other proceedings, that it had responsibilities for Trust assets. ¶ 86.

As for the LHRO, it was created in 2009 and was entrusted with the balance of Trust assets not transferred to the sub-trust, with Yahoo employees serving on its board of directors. ¶ 54. LHRO has controlled Trust assets since, and it too is a trustee. ¶¶ 25, 126.

## IV.    This lawsuit was a last resort to vindicate the Trust's humanitarian purpose.

For years, efforts have been made to learn why the Trust's humanitarian purpose did not seem to be getting appropriate funding. Early efforts to hold Wu and the LRF to that purpose by concerned insiders failed, *e.g.*, ¶¶ 96-100, and thus many focused on persuading the Yahoo Defendants to investigate. ¶¶ 75-93. In response, the Yahoo Defendants repeatedly disclaimed all responsibility, pointed the finger back at Wu and the LRF, and concealed the fact that they (and the LHRO) had all the authority needed to protect the Trust's humanitarian purpose. *Id.*

In 2015 and 2016, the urgency reached new levels. Publicly available Forms 990 for the LHRO and LRF suggested ever greater levels of Trust spending, yet the amounts being reported for the Trust's humanitarian purpose were *decreasing*. ¶ 111 (declining from a reported $54,910 in 2011 to $19,841 in 2015). Then, in 2015, Wu was alleged to have sexually assaulted a woman after luring her to the D.C. area on the promise of financial assistance drawn from the Trust. ¶ 102. Finally, in March 2016, Plaintiff Xu W. was told by the LRF, acting through Wu, that the Trust's humanitarian purpose had been extinguished outright. ¶¶ 16, 72.

Efforts to have the Yahoo Defendants investigate also intensified. In 2015, certain Plaintiffs wrote to Yahoo imploring that the Trust be run more transparently and for the benefit of imprisoned Chinese dissidents, particularly Yahoo users. ¶ 92. Yahoo never responded. *Id.* Yahoo and Bell were again sent a letter in February 2016 asking them to act. They initially did not respond, but after certain Plaintiffs and allies gained the attention of the *New York Times*, a

journalist contacted Yahoo for comment. ¶¶ 3, 93.[6] Pressured by that contact, Yahoo and Bell wrote back in April 2016, but denied responsibility for the Trust, declined to respond "point-by-point" to suggestions otherwise, and pointed the finger at Wu and the LRF yet again. ¶ 93.

In the face of Yahoo's inaction, certain Plaintiffs intensified their own investigation, including by contacting former LRF employees, eventually obtaining information and documents previously kept confidential by Defendants. ¶¶ 3-4. This information revealed that, contrary to what the Yahoo Defendants had represented, they had considerable authority over Trust assets, and had meddled in Trust affairs for years. It also revealed that, in Yahoo's own words, the Trust's "intended principles" from the outset were to protect "online dissent," while payments to the LRF were considered "limited exceptions." ¶¶ 43, 51.

With nowhere else to go, and faced with the outright termination of the Trust's humanitarian purpose, Plaintiffs filed this action to vindicate the "intended principles" embodied by that purpose. After Defendants' initial motions to dismiss revealed new, troubling facts about the Trust, Plaintiffs filed the amended complaint.

## ARGUMENT[7]

The Complaint easily survives Defendants' motions under Fed. R. Civ. P. 12(b)(6)

---

[6] The story was eventually reported by the *New York Times* in August 2016. ¶ 70 n.9.

[7] Sprinkled throughout Defendants' briefs are various asides that disparage the Complaint but that are too threadbare to constitute cognizable argument and should be ignored. *E.g.*, *Gilmore v. Palestinian Interim Self-Gov't Auth.*, 53 F. Supp. 3d 191, 202 (D.D.C. 2014), *aff'd*, 843 F.3d 958 (D.C. Cir. 2016) ("In this circuit, it is not enough merely to mention a possible argument in the most skeletal way, leaving the court to do counsel's work, create the ossature for the argument, and put flesh on its bones. Two sentences of argument, a threadbare conclusion, and a handful of marginally relevant citations do not provide us with enough to adequately assess the strength of their legal conclusions."); *Paleteria La Michoacana, Inc. v. Productos Lacteos Tocumbo S.A. De C.V.*, No. CV 11-1623 (RC), 2017 WL 1194331, at *22 (D.D.C. Mar. 30, 2017) ("threadbare assertion" does not constitute cognizable argument).

For example, the Yahoo Defendants' assertion that LHRO's incorporation documents did not

because it contains extensive "factual allegations that, if proved, would 'allow the court to draw

the reasonable inference that'" Defendants are liable for breaches of trust and contract as a result

of the largely admitted violations of the Trust's humanitarian purpose. *Banneker Ventures, LLC*

*v. Graham*, 798 F.3d 1119, 1129 (D.C. Cir. 2015) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678

(2009)). This is especially the case since the Complaint's "well-pleaded factual allegations [must

be accepted] as true," and since "all reasonable inferences from those allegations [must be

drawn] in the [P]laintiff's favor." *Id.* In deciding these motions, the Court "may consider only the

facts alleged in the [C]omplaint, any documents either attached to or incorporated in the

[C]omplaint and matters of which [the court] may take judicial notice," *EEOC v. St. Francis*

*Xavier Parochial Sch.*, 117 F.3d 621, 624 (D.C. Cir. 1997), but may not "rely on [such extra-

Complaint materials] for the truth of the matter asserted" therein.[8] *Hurd v. District of Columbia*

---

permit anything less than $1 million to be provided to the LRF per year, *see* Dkt. 29-1 ("Yahoo
Br.") at 7 n.5, has no legal significance whatsoever on this motion to dismiss, and the Yahoo
Defendants do not and cannot argue that those documents mean no breach is adequately alleged.
As another example, the Yahoo Defendants' passing reference to an arbitration clause, Yahoo
Br. at 2 n.1, also has no impact on this motion. As yet another example, both the LRF and the
LHRO request attorneys' fees and costs against Plaintiff Yu in their briefs' conclusions, *see* Dkt.
27-1 ("LRF Br.") at 37 and Dkt. 28-1 ("LHRO Br.") at 4, but make no actual argument, much
less cite authority, supporting their requests (which are obviously unwarranted, since Plaintiff Yu
has plausibly alleged a claim against them, and since they have not even tried to argue that her
claims are frivolous). *E.g.*, *In re Lish*, No. 2:12-CV-02204-APG, 2013 WL 4006603, at *4 (D.
Nev. Aug. 5, 2013) ("The Motion contains no argument or legal authority in support of an award
for attorney's fees. The request for sanctions is denied.").

[8] Thus, although Plaintiffs generally do not oppose the request for judicial notice of the *existence*
of various documents, with one exception discussed below, Plaintiffs vigorously oppose any
attempts to rely on the *truth* of those documents' contents, particularly to resolve factual
disputes, such as whether the alleged conduct violated the Trust's humanitarian purpose and the
Settlement. *E.g.*, *Church of Scientology Int'l v. Eli Lilly & Co.*, 848 F. Supp. 1018, 1028 (D.D.C.
1994) (denying summary judgment because material fact issues existed regarding claims for
breach of contract and fiduciary duty). Such reliance is highly improper and cannot be permitted
without a reasonable opportunity for discovery. *Hurd*, 864 F.3d at 686 ("[A] court that decides to
consider extra-pleading material is required to convert the motion to dismiss into one for
summary judgment, with attendant procedural protections," including "giv[ing] the parties notice

*Gov't*, 864 F.3d 671, 686 (D.C. Cir. 2017). Should the Court go beyond these confines, "it must

convert the motion to dismiss into a motion for summary judgment and 'provide the parties with

notice and an opportunity to present evidence in support of their respective positions.'" *Id.* at 678

(quoting *Kim v. United States*, 632 F.3d 713, 719 (D.C. Cir. 2011)).

## I.     The Complaint plausibly alleges that the Trust is an enforceable charitable trust.

The Complaint adequately alleges that the Yahoo Human Rights Fund, *i.e.*, the Trust, is

an enforceable trust. "The elements of a trust include a trustee, who holds the trust property and

is subject to equitable duties to deal with it for the benefit of another; a beneficiary, to whom the

trustee owes such duties; and the trust property, which is held by the trustee for the beneficiary."

*Duggan v. Keto*, 554 A.2d 1126, 1133 (D.C. 1989) (citing *Cabaniss v. Cabaniss*, 464 A.2d 87,

91 (D.C. 1983)). There must also be evidence of an "intention to create a trust, which may be

manifested 'by written or spoken language or by conduct, in light of all surrounding

---

of the court's intention to convert the motion and a reasonable opportunity to discover and present relevant evidence.").

The exception is Dkt. 29-4 ("Exhibit 1") a 105-page scanned PDF that on its face appears to be missing pages, *see* Exhibit 1 at 2 (internal pagination begins at "6"), and that purports to contain, among other things, articles of incorporation and bylaws for the LHRO. The Yahoo Defendants claim that "¶¶ 6, 44, 54, 56" of the Complaint "referenc[e] … the 2009 incorporation of Laogai Human Rights Organization ("LHRO"), as well as provisions of the LHRO's bylaws." *See* Dkt. 29-2 ("Yahoo RJN") at 1-2. But referencing the *fact* of an entity's creation hardly constitutes "incorporation" of that entity's corporate documents, and nowhere does the Complaint even reference, must less "incorporate," LHRO's incorporation documents or bylaws themselves, as a review of the cited paragraphs makes plain. Exhibit 1 thus cannot be considered. The Yahoo Defendants' reliance on this Court's decision in *In re APA Assessment Fee Litig.*, 862 F. Supp. 2d 1, 7 (D.D.C. 2012) does not change that, because the plaintiffs' claims there were "based on" the undisputedly authentic incorporation documents. Here, Plaintiffs' claims are not "based on" the LHRO's incorporation documents, and Defendants cannot and do not argue otherwise. Moreover, Plaintiffs *do* dispute Exhibit 1's authenticity.

However, even if the Court were to consider Exhibit 1, no Defendant argues that the LHRO's incorporation documents authorized breaching the Trust's humanitarian purpose, or that the Complaint fails to state a claim as a result. Thus, the LHRO's incorporation documents have no legal significance at this stage, as discussed elsewhere. *See supra* at n. 7 and *infra* at nn. 16, 51.

circumstances.'" *Id.* (quoting *Cabaniss*, 464 A.2d at 91).

Here, these elements are easily met. As the Complaint alleges, payments (*i.e.*, trust property) were made "in trust" (evidencing intention to create a trust), to the LRF (*i.e.*, trustee), and charitable beneficiaries and purposes were identified. ¶¶ 36 & n.3, 40. Under well-settled law, this is all that is needed to allege a trust, particularly at this stage of the litigation. *E.g.*, *Beckett v. Air Line Pilots Ass'n*, 995 F.2d 280, 287 (D.C. Cir. 1993) (elements of a trust are a trustee, a beneficiary, and trust property) (citing Restatement (Second) of Trusts § 2(1), cmt. h).[9]

Instead of grappling with the Complaint's allegations on this score, Defendants simply assert, *ipse dixit*, that no trust was created in connection with the Settlement, suggesting that the Yahoo Human Rights Fund is not itself a trust. *E.g.*, LRF Br. at 2 & n.4, LHRO Br. at 2, Yahoo Br. at 6. Similarly, they insist that the only trust at issue is the 2009 sub-trust. *E.g.*, LRF Br. at 2 & n.4, Yahoo Br. at 6. The problem is that none of these assertions is supported by one iota of legal or factual support, and none explain why the Complaint's allegations are insufficient to plead the creation or existence of the Trust actually alleged, with a *res* of $17.3 million. Indeed, tellingly, the Yahoo Defendants do not even seek dismissal for failure to adequately allege that the $17.3 million Trust is an enforceable charitable trust (and have thus conceded it is).[10]

As for the LRF, LHRO, and Wu, they assert that the Settlement is not itself a trust, but

---

[9] *See also Family Fed'n for World Peace v. Hyun Jin Moon*, 129 A.3d 234, 246 (D.C. 2015) (holding that the existence of oral charitable trust was adequately alleged, and rejecting argument that later establishment of a non-profit corporation extinguished that trust, noting that "[h]owever the evidence may eventually turn out to be, we are not persuaded that any decision on this issue can be based on an inadequacy in the complaint").

[10] They also tellingly do not join the other Defendants' arguments on this score. And, of course, neither they nor any other Defendant should be permitted to make new arguments on reply. *Nat'l Parks Conservation Ass'n v. United States Forest Serv.*, No. 15-01582(APM), 2015 WL 9269401, at *2 (D.D.C. Dec. 8, 2015) ("'[I]t is a well-settled prudential doctrine that courts generally will not entertain new arguments first raised in a reply brief.'") (quoting *Aleutian Pribilof Islands Ass'n, Inc. v. Kempthorne*, 537 F. Supp. 2d 1, 12 n.5 (D.D.C. 2008)).

that is a meaningless *non sequitur*. There is no principle in law or logic that a settlement cannot result in the creation of a trust—indeed, numerous cases involve just that scenario. *E.g.*, *Athey v. United States*, 132 Fed. Cl. 683, 687 (Fed. Cl. 2017) (settlement required payments to be made to an administrator who would then "establish an 'Athey Class Settlement Trust'"); *In re Diet Drugs Prods. Liab. Litig.*, No. CIV.A. 99-20593, 2001 WL 283163, at *1 (E.D. Pa. Mar. 21, 2001) (settlement created "[trust] fund [that] must be administered by … seven court appointed trustees"); *Diamond Crystal Brands, Inc. v. Wallace*, 563 F. Supp. 2d 1349, 1354 (N.D. Ga. 2008) (settlement resulted in funds held in trust for third party). More to the point, no party has argued that the Settlement and the Trust are the same thing. Indeed, they are not, as the Settlement also required Wu and the LRF to hold other assets in trust for the underlying plaintiffs, separate from the Trust assets held in trust here. *E.g.*, ¶ 37. The LRF, LHRO, and Wu's repeated assertions that the Settlement is not a trust, untethered to any citation to trust law, are thus utterly non-responsive to the Complaint, and do nothing to advance their cause. Accordingly, the Complaint cannot be dismissed for failure to allege an enforceable trust.[11]

## II.    The Complaint plausibly alleges that all Defendants were trustees of the Trust.

The Complaint also plausibly alleges that all Defendants were trustees of the Trust. First, the Settlement clearly identifies the LRF as a trustee and explicitly states that payments of $17.3

---

[11] Wu's contention that the Complaint does not allege an "express trust" within the ambit of D.C. Code § 19-1301.02 similarly fails. *See* Dkt. 30-1 ("Wu Br.") at 9. An express trust is simply "'a fiduciary relationship with respect to property, subjecting the person by whom the title to the property is held to equitable duties to deal with the property for the benefit of another person, which arises as a result of a manifestation of an intention to create it.'" *Cabaniss*, 464 A.2d at 91 (D.C. 1983) (quoting Restatement (Second) of Trusts § 2 (1959)). *See also id.* at 91 n.5 ("The term 'express trust' is used to distinguish between a trust as defined above in the text and a resulting or constructive trust. The term 'private trust' is used to distinguish between a trust as defined above and a charitable trust.").

million constituting the Trust would be made "in trust" to it, for the benefit of others. ¶ 36 n.3. This plausibly alleges that the LRF was a trustee. *E.g.*, *Berkowitz v. Berkowitz*, No. CIV.A. 11-10483-DJC, 2012 WL 769726, at *6 (D. Mass. Mar. 9, 2012) (allegation "that Samuel twice orally instructed Bonnie to 'take care' of Barbara and Brian … is sufficient to constitute a plausible allegation that Samuel created an oral trust sufficient to impose a fiduciary duty on Bonnie as trustee").[12] And, because Wu was LRF's *alter ego*, Wu also was a trustee.

Moreover, under well-settled equitable principles, "[w]here a party acts like a trustee and assumes the duties of a trustee, that party will be considered a *de facto* trustee and held to account for trustee-related activities, the same as a *de jure* trustee." *In re Deyette*, 16 Misc.3d 1124(A), at *3 (N.Y. Sup. Ct. 2007); *see also* Geraint Thomas & Alastair Hudson, *The Law of Trusts* § 30.03 (2d ed. 2010) ("[T]rustees *de son tort* are not expressly declared by the settlor to be trustees but rather are deemed to be constructive trustees by operation of law, due to their meddling with trust affairs."); *Stephan v. Equitable S & L Ass'n.*, 268 Or. 544, 559, 522 P.2d 478 (Or. 1974) ("A person may become a trustee by construction by intermeddling with, and assuming the management of, trust property without authority. Such persons are trustees *de son tort*. During the possession and management by such constructive trustees, they are subject to the same rules and remedies as other trustees; and they cannot avoid their liability by showing that they were not, in fact, trustees.") (citations and quotation marks omitted); *id.* at 558. ("A person who assumes the duties of a trustee and proceeds with their administration is as liable for their improper conduct as if he had been regularly appointed"); *King v. Johnston*, 178 Cal. App. 4th

---

[12] *See also King v. Mitchell*, 33 U.S. 326, 352 (1834) ("[T]he ordinary sense of the term ['in trust'] is descriptive of a fiduciary estate or technical trust[.]"); *Union Tr. Co. of Pittsburgh v. McCaughn*, 24 F.2d 459, 461 (E.D. Pa. 1927) ("The addition of the words 'in trust' absolutely negative the idea that he had any purpose that she should take a beneficial interest in the fund [as opposed to as trustee]").

1488, 1506 (Cal. Ct. App. 2009) ("'It is a well settled rule in the law of trusts that if a person not being in fact a trustee acts as such by mistake or intentionally, he thereby becomes a trustee *de son tort*.'") (quoting *England v. Winslow*, 196 Cal. 260, 267 (Cal. 1925)); *Burton v. Dolph*, 89 Va. Cir. 101, 8 n.7 (Va. Cir. Ct. 2014) ("'A 'trustee *de son tort*' is one who of his own authority enters into the possession, or assumes the management, of property which belongs beneficially to another; a person subject to the same rules and remedies as other constructive trustees.'") (quoting 19 *Michie's Jurisprudence of Virginia & West Virginia: Trusts and Trustees* § 2 (2013)).[13]

The Yahoo Defendants contend that the Complaint fails to allege "anything beyond … meaningless legal conclusions" to support the allegation Yahoo was a trustee *de son tort*, constructive trustee, implied trustee, or *de facto* trustee. Yahoo Br. at 16. But the Complaint makes detailed and unchallenged allegations that "Yahoo exercised considerable control over Trust assets," ¶ 48, including by having one of its employees always be a member of the Trust's board of directors, ¶ 49, with no quorum existing without that member's presence, *id.*, with all disbursements requiring board consensus and thus Yahoo's effective approval, *id.*, and with a detailed report of the Trust's expenditures to be given to Yahoo at least twice a year. *Id.*

The Complaint also alleges as evidence of Yahoo's control of and meddling in Trust affairs that in 2009, "Yahoo orchestrated the transfer" of Trust assets into two buckets, the 2009

---

[13] *See also Congregation Jeshuat Israel v. Congregation Shearith Israel*, 186 F. Supp. 3d 158, 190 & n.42 (D.R.I. 2016) (holding that a synagogue's caretaker could be described as a "*de facto* trustee, constructive trustee, or trustee *de son tort*," and citing Geraint Thomas & Alastair Hudson, *The Law of Trusts* § 30.03 (2d ed. 2010), for the proposition persons can be "deemed to be constructive trustees by operation of law, due to their meddling with trust affairs"), *rev'd on other grounds*, No. 16-1756, 2017 WL 3276805 (1st Cir. Aug. 2, 2017); *McBride v. McBride*, 262 Ky. 452, 90 S.W.2d 736, 742 (Ky. Ct. App. 1936) ("[T]rustees' continued retention and control of the trust estate thereafter was had by them as trustees *de son tort*.").

sub-trust and the LHRO. ¶¶ 52-54. (The Yahoo Defendants do not challenge that Callahan and Bell were trustees of at least the Trust assets contained in the 2009 sub-trust.)

Yahoo does not grapple with *any* of these allegations, and indeed, fails to argue that they are insufficient to plausibly allege that Yahoo controlled and meddled in Trust affairs, and thus was a constructive trustee, *de facto* trustee, implied trustee, or a trustee *de son tort*. Thus, Yahoo's unsupported contention that it is not a trustee should be rejected.[14] *See also Burton v. Dolph*, 89 Va. Cir. 101, 3 (Va. Cir. Ct. 2015) (defendant could be *de facto* trustee even where trust instrument precluded him from serving as trustee, and "[w]hether the circumstances support that Hudgins acted as a *de facto* trustee is a factual issue improper to resolve via demurrer").

The LHRO's status as trustee is equally clear: from 2009 onwards, it was expressly designated as the entity that would administer a significant portion of Trust assets. ¶¶ 25, 54 & n.5 (alleging that LHRO received the balance of Trust assets not given to the 2009 sub-trust, "from which the Trust's humanitarian purpose would ostensibly be carried out," and that "Yahoo required that its employees serve on LHRO's board of directors," and noting that LHRO's tax filings claimed that Callahan and then Bell devoted an average of 25 hours per week to the LHRO). The LHRO does not and cannot challenge the plausibility of these allegations, and as a result, it too is adequately alleged to be a trustee.[15]

---

[14] Moreover, there is no reason a donor or settlor of a trust cannot also be a trustee and held liable as such. *E.g.*, *Yandell v. Wilson*, 182 Miss. 867 (Miss. 1938) ("Assuming control of the notes and executing the waivers aforesaid, Mr. Wilson [the donor] constituted himself a trustee *de son tort* of the security and became liable to the appellants, as owners of the equitable and beneficial interest in the lien, and became liable to account to them, as such trustee, for the value of the notes, which was shown by subsequent events to have been completely destroyed by his unauthorized act."). Accordingly, Yahoo's contention that it is a mere "donor," Yahoo Br. at 15-16, does not help Yahoo, even putting aside that this contention is directed at the 2009 sub-trust, not the Trust actually alleged.

[15] The LRF and LHRO's reliance on D.C. Code § 29-406.30's provision stating that "[a] director

## III.    The Complaint plausibly alleges a profound breach of Trust.

The Complaint also alleges that more than $13 million of the $17.3 million Trust corpus

has been spent, with less than $700,000, or 4%, having been spent on the Trust's humanitarian

purpose. ¶¶ 59, 110-11. No Defendant challenges the plausibility of these allegations. The

Complaint also alleges that these facts constitute a breach of the Trust's humanitarian purpose.

*Id.* Again, no Defendant argues otherwise.[16]

---

[of a nonprofit] shall not be a trustee with respect to the nonprofit corporation or with respect to
any property held or administered by the corporation," *see* LRF Br. at 30 n.26, LHRO Br. at 3, is
unavailing. By its terms, the statute applies to the directors of nonprofit corporations, not to the
corporations themselves. And D.C. Code §§ 29-408.09, 29-408.23, and 29-410.03, all of which
prohibit "[p]roperty held in trust by a nonprofit corporation or otherwise dedicated to a charitable
purpose [from being] diverted from its purpose," make crystal clear that nonprofit corporations
can themselves be trustees. Thus, D.C. Code § 29-406.30 does not help the LRF or the LHRO.
(Indeed, that provision can be read to make it unlawful for a director act as a trustee. It can also
be read to mean that being a director will not by itself make one a trustee. Certainly, the LRF and
LRHO cite no case for the unlikely proposition that being a director makes one categorically
immune from liability as a trustee regardless of the circumstances.)

The LHRO's reliance on D.C. Code § 29-403.04 and *Sibley v. St. Albans Sch.*, 134 A.3d 789,
802 n.8 (D.C. 2016), is also unavailing, as those relate to allegations of *ultra vires* conduct by a
non-profit corporation. The Beneficiary Plaintiffs' allegation is not that LHRO's conduct was
*ultra vires*, *i.e.*, that it lacked power to act. It is that the LHRO breached its duties as trustee.

[16] Defendants' references to extra-Complaint bylaws and articles of incorporation for the
proposition that the LRF was entitled to a minimum of $1 million a year unfettered, besides
being wrong, are irrelevant on this motion, because Defendants do not and cannot argue that they
were entitled to effectively ignore, much less terminate, the Trust's humanitarian purpose as a
result of these provisions. Moreover, whatever the evidence on this point may end up being, it is
black-letter trust law that "[t]he provisions of the corporate charter or certificate of incorporation
must be in accordance with the terms of the trust." Austin W. Scott, William F. Fratcher & Mark
L. Ascher, *Scott and Ascher on Trusts*, § 37.3.1.1 (5th ed. 2008). *See also* D.C. Code §§ 29-
408.09 and 29-408.23 (prohibiting "[p]roperty held in trust by a nonprofit corporation or
otherwise dedicated to a charitable purpose [from being] diverted from its purpose" by bylaws or
articles of incorporation); *In re Downer Home*, 67 Wis. 2d 55, 67-68 (Wis. 1975) ("One cannot
change the provisions of a trust, certainly not its dispositive provisions, by changing the articles
of incorporation of a charitable corporation formed to administer the terms of the trust and carry
out the intent of the creator of the trust. That shortcut is not available."); *Davenport v. Attorney
Gen.*, 361 Mass. 372, 378 (Mass. 1972) ("[T]he corporate purposes and powers should have
followed more closely the purposes stated in the residuary trust[.]"); *City of Hartford v. Larrabee
Fund Ass'n*, 161 Conn. 312, 317 (Conn. 1971) ("[B]y incorporating the association, and revising

The Complaint further alleges the Trust's humanitarian purpose was terminated in March 2016. ¶¶ 16, 72. The only "defense" to this allegation is made by the LRF, which argues that "[t]he Complaint does not allege that LRF has in fact stopped providing humanitarian assistance, only that Mr. Wu told this to one of the plaintiffs." LRF at 32. Putting aside that the LRF's interpretation impermissibly requires drawing a number of inferences in its favor, it does not actually argue that this fails to state a breach of trust, only breach of contract (which is wrong, as discussed below). Accordingly, the Complaint's allegation that the termination in March 2016 constituted a breach of the Trust's humanitarian purpose is also unchallenged.[17]

## IV.    The Beneficiary Plaintiffs have standing to enforce the Trust.

### 1.    The Beneficiary Plaintiffs have a special interest in the Trust that is

---

its structure, the legislature has reinterpreted Major Larrabee's will [which created the charitable trust]."). Thus, to the extent those articles and bylaws are inconsistent with the Trust's humanitarian purpose, they are invalid under settled law.

[17] The Complaint alleges several additional breaches, all unchallenged. For example, it alleges that Defendants "fail[ed] to obtain redress for these breaches," and that "Yahoo and Bell further breached their duties as trustees by completely abandoning their duties with respect to the Trust in 2015, leaving Trust assets substantially in the control of Wu and the LRF, who they knew or should have known were not trustworthy, and who they knew or should have known would spend Trust assets in violation of the Trust's humanitarian purpose, and without taking adequate precautions against that violation." ¶¶ 127-28. Defendants tellingly do not argue that they were not required to seek redress, or that their decision to leave Trust assets substantially in the control of Wu and the LRF was consistent with their duty of care. Nor could they. "Each trustee also has a duty to use reasonable care to prevent a co-trustee from committing a breach of trust and, if a breach of trust occurs, to obtain redress." Restatement (Third) of Trusts § 81 (2007); *id.* § 80 ("[A] trustee cannot properly transfer the trust property to another as trustee and thereby abdicate responsibility[.]"); *In re Washington Builders Ben. Tr.*, 173 Wash. App. 34, 71-72 (Wash. Ct. App. 2013) (holding that because the defendant "accepted trust duties," its failure to ensure its subsidiaries did not breach their own duties was itself a breach). Indeed, Defendants *themselves* say the alleged wrongdoing was enough to require *Plaintiffs*, who were obviously not trustees, to seek redress. *E.g.*, Yahoo Br. at 23-26, LRF Br. at 35-36. This is incorrect, as discussed *infra* at Section V. and n. 36, but is also effectively an admission of wrongdoing.

As for Wu's facetious objection that he cannot "sue himself," Wu Br. at 9, the Beneficiary Plaintiffs' claim is obviously that *other* trustees could and should have. More to the point, this absurd objection does nothing to address the fact that Wu breached his duties in other ways, including by terminating the Trust's humanitarian purpose.

**undisputedly distinguishable from the general public's.**

The Beneficiary Plaintiffs have standing[18] under the well-settled rule that standing to enforce a charitable trust will lie with a plaintiff who has "'a 'special interest' in continued performance of the [charitable] trust distinguishable from that of the public at large.'" *Family Fed'n for World Peace v. Hyun Jin Moon*, 129 A.3d 234, 244 (D.C. 2015) (quoting *Hooker v. Edes Home*, 579 A.2d 608, 612 (D.C. 1990)).[19] One category of persons with such a "special interest" are those belonging to a "sharply defined" and "limited in number" "class of potential beneficiaries." *Hooker*, 579 A.2d at 614; *see also* Restatement (Third) of Trusts § 94 (2012) ("If a charitable trust is created to benefit the members of a described group of persons that is reasonably limited … one or more members of that group may be allowed to maintain a suit, on behalf of its members generally, against the trustee for enforcement of the trust.").[20]

In *Alco Gravure, Inc. v. Knapp Found.*, the trust was intended to benefit "the employees

---

[18] Defendants cite *Himmelfarb v. Horwitz*, 536 A.2d 86, 92 (D.C. 1987), for the proposition that "only parties with standing to challenge the administration of a private trust … are the beneficiaries with an interest in the aspect challenged." Yahoo Br. at 11; LRF Br. at 27. But the Beneficiary Plaintiffs are challenging the administration of a *charitable* trust, *not* a private trust. *See supra* at n. 11 (regarding private versus charitable trusts). As a result, *Himmelfarb* is irrelevant. For similar reasons, Wu's argument that because the Beneficiary Plaintiffs are not "current beneficiaries," or "actual beneficiaries," Wu Br. at 5, 9, they have no standing, misses the point. Indeed, as discussed herein, the D.C. Court of Appeals has explicitly rejected a "current beneficiary" requirement for charitable beneficiary standing.

[19] "[T]he traditional rule [is] that, generally, with respect to charitable trusts and charitable corporations, 'only a public officer, usually the state Attorney General, has standing to bring an action to enforce the terms of the trust.'" *Family Fed'n*, 129 A.3d at 244 (quoting *Hooker*, 579 A.2d at 612). It is based on policy considerations, namely the "impossibility of establishing a distinct justiciable interest on the part of a member of a large and constantly shifting benefited class," and "the recurring burdens on the trust *res* and trustee of vexatious litigation that would result from recognition of a cause of action by any and all of a large number of individuals who might benefit incidentally from the trust." *Hooker*, 579 A.2d at 612.

[20] *Hooker* rejected the idea that only "current beneficiaries" had standing because that "would reserve to the Trustees the power to confer or deny standing to question their actions by refusing to act on applications" submitted by potential beneficiaries. 579 A.2d 608 at 614.

of corporations in which Joseph P. Knapp was involved and the employees of successors of such corporations." 64 N.Y.2d 458, 466 (N.Y. 1985). When a claimed successor corporation and its employees sued, the court found they had standing as potential beneficiaries. *Id.*

Similarly, in *Hooker*, the trust was intended to benefit indigent widows meeting certain criteria. The defendants argued the plaintiffs did not have standing because "the class of potential beneficiaries includes 'all women,'" given that "any woman could possibly become poor and widowed." *Id.* at 615. This, they said, was distinguishable from the class of beneficiaries in *Alco Gravure*, which had been "limited by threshold criteria." *Id.* The court disagreed. It noted that in *Alco Gravure*, the class was defined as "'the employees of corporations in which [the settlor] was involved *and* the employees of successors of such corporations.'" *Id.* (modification and emphasis in *Hooker*) (quoting *Alco Gravure*, 64 N.Y.2d at 466). The court reasoned that there were "definite criteria narrowing the [*Hooker*] class and identifying its present members with at least as much particularity as" in *Alco Gravure*, namely that beneficiaries had to be "(1) female, (2) indigent, (3) aged, and (4) widowed," and also had to "(5) 'be in good health' (certifiably) and (6) have been for at least five years immediately preceding the date of application a resident of Georgetown,' (although the Board has discretion to waive this requirement on unanimous vote)."[21] *Hooker*, 579 A.2d at 615 (modifications omitted).

Here, the potential beneficiaries must be: (1) Chinese persons (2) who are imprisoned in China (3) for exercising their freedom of expression (4) online.[22] ¶ 119. The Beneficiary

---

[21] Notably, although the plaintiffs there did not actually reside in Georgetown, the court held that they "probably satisf[ied] this requirement if facts are taken in a light most favorable to them." *Hooker*, 579 A.2d at 615 n.12.

[22] Contrary to the Yahoo Defendants' argument that the proposed beneficiary class is "broader" than set forth in the initial complaint, it is identical. *See, e.g.*, Dkt. 1, ¶ 84 (alleging that Trust's purpose was "providing humanitarian aid to Chinese dissidents imprisoned for expressing their

Plaintiffs submit that these criteria set out a "sharply defined" beneficiary class and provide "at least as much particularity" as in *Alco Gravure* and *Hooker*. The interest of persons meeting this criteria in the "continued performance of the trust" is indisputably "distinguishable from that of the public at large." *Family Fed'n*, 129 A.3d at 244 (quoting *Hooker*, 579 A.2d at 612).

Standing is further reinforced by the following allegations—***all*** of which are undisputed. First, "being imprisoned is a necessary prerequisite to becoming a member of the class, and even then, it is not sufficient. As such, it is not easy to become a member of the class." ¶ 119. *Robert Schalkenbach Found. v. Lincoln Found., Inc.*, 208 Ariz. 176, 183, 91 P.3d 1019, 1026 (Ariz. Ct. App. 2004), as amended (July 9, 2004) ("More important than numbers of class members is the manageability of the size of the class, *whether it can be easily entered*, and whether the plaintiff established that it has a direct interest in the operation of the trust.") (emphasis added).

Second, there is no "difficulty in identifying who falls within the class of beneficiaries." ¶ 121. *Gray v. St. Matthews Cathedral Endowment Fund*, 544 S.W.2d 488, 491 (Tex. Ct. Civ. App. 1976) ("[P]roblems of identification of beneficiaries and of undue harassment are not present when the class of persons to be benefited is a small, easily identifiable group, as distinguished from the public generally.").

Third, "[t]he Beneficiary Plaintiffs are also entitled to preference in the distribution of Trust assets, compared to distributees who do *not* meet the requirements of the above-described class." ¶ 122 (emphasis in Complaint). *Alco Gravure*, 64 N.Y.2d at 465 (standing is supported

---

views online"); *id.*, ¶ 92 (alleging that the "purpose of the Yahoo Trust was to provide humanitarian assistance to Chinese dissidents imprisoned as a result of exercising their freedom of expression"). Indeed, the limitation that such dissidents also must be Yahoo users was apparently part of the 2009 sub-trust, which contained only a portion of Trust assets. Accordingly, the Beneficiary Plaintiffs' standing argument is strengthened even further by Defendants' inexplicable position that the 2009 sub-trust is the one being sued on.

"when a particular group of people has a special interest in funds held for a charitable purpose, *as when they are entitled to a preference in the distribution of such funds*") (emphasis added).

Finally, standing exists because, as in *Alco Gravure* and *Hooker*, the Beneficiary Plaintiffs bring this suit not to challenge relative trivialities committed to the discretion of the trustees, but to challenge the fundamental violation and outright termination of the Trust's humanitarian purpose. *Alco Gravure*, 64 N.Y.2d at 466 ("However, the present action concerns not the ongoing administration of a charitable corporation, but the dissolution of that corporation and the complete elimination of the individual plaintiffs' status as preferred beneficiaries of the funds originally donated by Joseph Knapp. The individual plaintiffs, therefore, have standing."); *Hooker*, 579 A.2d at 617 ("[W]hen, as here, the Trustees decide upon a basic change affecting the interests of the entire class of intended beneficiaries—and one alleged to be inconsistent with the settlor's will—the value of denying representatives of the class access to judicial process to challenge that decision is greatly diminished. We conclude, therefore, that elderly, indigent widows satisfying the Trustees' own eligibility requirements have standing to challenge the actions proposed by the Board here.").

## 2. The Yahoo Defendants' "numerosity" argument fails.

In the face of these largely uncontested facts and against this well-settled law, Defendants' *sole* argument, advanced by the Yahoo Defendants and joined by the others, is that there are too many (1) Chinese persons (2) who are imprisoned in China (3) for exercising their freedom of expression (4) online. This "numerosity" argument fails for several reasons.

### A. Charitable beneficiary standing must be analyzed in context.

As an initial matter, although the Yahoo Defendants cite *Hooker* once in passing (no other Defendant bothers), they fail to discuss its reasoning, which is fatal to their argument. Specifically, *Hooker* cited a "modern trend" in case law that "recognize[s] that application of the

strict traditional rule denying standing to 'potential' beneficiaries of a charitable trust may be inimical to trust purposes in cases where a suit to enforce the trust does not present the dangers the rule was intended to guard against." *Hooker*, 579 A.2d at 613. Thus, as the D.C. Court of Appeals recently reiterated, in considering standing, "the key consideration, discussed at length in *Hooker*, is whether finding a justiciable interest in a given plaintiff would contravene the considerations underlying the traditional rule." *Family Fed'n*, 129 A.3d at 244 (citing *Hooker*, 579 A.2d at 612). Therefore, any inquiry into "numerosity" must be made in the context of the particular case, and no bright line separates a beneficiary class small enough to find standing from one that is too large. *E.g.*, *Robert Schalkenbach Found.*, 208 Ariz. at 183 (noting the existence of factors that are "[m]ore important than numbers").

Applying these concepts here favors standing. First, as the D.C. Court of Appeals observed, a general factor favoring standing in modern cases is that "[t]he exponential expansion of charitable institutions justifies a reasonable relaxation of any rule limiting enforcement to a busy Attorney General." *Family Fed'n*, 129 A.3d at 244.[23] Then there is the reality that the only persons who could possibly avail themselves of a favorable ruling here are those *imprisoned in China*, and who therefore must *first be imprisoned* to benefit, and even then, must overcome

---

[23] *See also* Mary Grace Blasko, *et al.*, *Standing to Sue in the Charitable Sector*, 28 U.S.F. L. Rev. 37, 48-52 (1993) (cataloguing problems associated with limiting enforcement authority to public officials, and noting that "[i]n view of the apparent lack or inadequacy of state supervision, many state courts have responded to the situation by relaxing standing requirements"); *City of Paterson v. Paterson Gen. Hosp.*, 97 N.J. Super. 514, 527-28 (N.J. Ch. Div. 1967) ("Charities in this State, whether or not incorporated, are, in general, only subject to the supervision of the Attorney General. The manifold duties of this office make readily understandable the fact that such supervision is necessarily sporadic. …. [Under those circumstances], a liberal rule as to the standing of a plaintiff to complain about the administration of a charitable trust or charitable corporation seems decidedly in the public interest."); Restatement (Third) of Trusts § 94 cmt. g (2012) (citing various authorities indicating "the need that exists for recognizing special-interest standing").

geographic, linguistic, cultural, and financial obstacles to even bring a lawsuit, to say nothing of the risk of additional political persecution. Finally, there is the fact that the Beneficiary Plaintiffs' challenge is to "an extraordinary measure threatening the existence of the trust," a challenge that "by its nature, could only be tried once." *See Hooker*, 579 A.2d at 615.

All of these factors suggest that to confer standing in *this* case would not "contravene the considerations underlying the traditional rule." *Family Fed'n*, 129 A.3d at 244. Indeed, regardless of the precise number of people meeting the Trust criteria, there is no real difficulty with "establishing a distinct justiciable interest"—the Beneficiary Plaintiffs, all of whom were imprisoned in China for online dissent, are clearly the specific persons the Trust was intended to benefit. Nor is there a real risk that permitting them to challenge the singular violations here, including the outright termination of the Trust, would unduly invite "recurring burdens on the trust *res*." *Id.* As a result, the Yahoo Defendants' speculative assertions about the number of persons imprisoned in China for online dissent are insufficient to deny standing.

## B.  The "numerosity" argument violates Rule 12(b)(6) standards.

The numerosity argument must also be rejected because it contradicts the Complaint's well-pleaded allegations, relies on several extra-Complaint documents for the truth of the matters asserted therein, and requires drawing a slew of inferences against the Beneficiary Plaintiffs and for Defendants, in violation of the standards governing this motion. *See supra* at 8 & n. 8.[24]

---

[24] Even *if* the Court were to consider these materials, they do not support the Yahoo Defendants' wildly speculative claim that there are "potentially hundreds of thousands of potential beneficiaries here." Yahoo Br. at 12. Dkt. 29-18 ("Exhibit 15") cites Reporters Without Borders' description of the PRC's current president, Xi Jinping ("Xi") (not the PRC itself as Yahoo claims) as the "planet's leading censor," but says nothing about the number of persons imprisoned as a result of that censorship.

Dkt. 29-19 ("Exhibit 16") reports that the Chinese government claims to have arrested—not imprisoned—about 15,000 people, and gives no indication that the arrests were over online

### C. The cases cited do not support a rigid "numerosity" threshold and are inapplicable for several reasons.

The numerosity argument also fails because it relies almost entirely on a single inapposite case, *Williams v. Bd. of Trustees of Mount Jezreel Baptist Church*, 589 A.2d 901 (D.C. 1991). But *Williams* simply does not establish a rigid threshold that requires denying standing here.

First, it is not clear that the plaintiffs in *Williams* even *argued* that they were part of a "sharply defined" class of "potential beneficiaries" under the charitable trust at issue, there a church. *Williams* is inapplicable for that reason alone. Indeed, the entire thrust of *Williams* was that because the plaintiffs had been *expelled* from the church, they were *not* analogous to the

---

dissent, as opposed to conduct relating to, for example "explosives and firearms and gambling."

Dkt. 29-20 ("Exhibit 17") discusses a crackdown on the use of "Virtual Private Networks" to circumvent the so-called "Great Firewall," but says nothing about imprisonment.

Dkt. 29-21 ("Exhibit 18") is a mere headline noting that Xi has sent "a number of critics to prison," but says nothing about a nexus with online activity or how many "a number" is.

Dkt. 29-22 ("Exhibit 19") reports that, in July 2015, 27 lawyers and activists were "forbidden to leave the country," 255 were "temporarily detained or forcibly questioned," and 28 were "held in government custody." It does not say any were either "imprisoned" or targeted for online expression, as opposed to acting as lawyers in politically sensitive cases, the article's subject.

Dkt. 29-23 ("Exhibit 20") gives no indication of how many of the reported cases had a nexus with online activity, but it is clearly a subset, and plausibly a small subset. And, whatever can be made of the statement that "there are considerably more than 1,433 cases of current political and religious imprisonment in China," it cannot reasonably be inferred that that means there are "hundreds of thousands" of such cases meeting the narrowly defined Trust criteria, even if one were to draw an inference in favor of *Defendants*, which is obviously impermissible here.

Finally, as to Dkt. 29-24 ("Exhibit 21") and Dkt. 29-25 ("Exhibit 22") and their discussion of Chinese internet users, that says little about the number of persons meeting the Trust criteria here, absent facts about the likelihood of those users to challenge the CCP or of the CCP imprisoning them as a result. Indeed, it may be that any increased CCP persecution will work, resulting in *fewer* challenges, *fewer* imprisonments, and *fewer* persons meeting the Trust criteria.

Put simply, the Yahoo Defendants' contention that there are "hundreds of thousands of potential beneficiaries" is not supported by these materials, even if the Court were to take the extraordinary step of relying on them at this stage to make a factual finding about the number of potential Trust beneficiaries.

23

potential beneficiaries of a charitable trust possessing a "special interest." *See Williams*, 589 A.2d at 908-10 (rejecting plaintiffs' attempts to establish that they maintained a privileged status with respect to the church despite their expulsion). Thus, *Williams*' facts make clear that the salient problem was that the plaintiffs' lack of membership in the church (the trust) meant they could not even be analogized to the potential beneficiaries of a charitable trust in the first place.

In light of that, the *Williams* court's observation that regular church attendance and financial contributions—the basis for the plaintiffs' various standing theories—made for an "uncertain and limitless" class, *id.* at 909, can hardly be read as establishing a threshold to be rigidly applied in subsequent cases.[25] If anything, the most that can be read into that observation is that the *indefiniteness* engendered by the ease with which a would-be plaintiff could manufacture standing, simply by contributing money and attending church regularly, was the more significant issue, as opposed to numerosity. Indeed, the *Williams* court noted that in *Mount Jezreel Christians Without a Home v. Bd. of Trustees of Mount Jezreel Baptist Church*, 582 A.2d 237, 239 (D.C. 1990), members of a church *did* have standing under the rule, without reference to numerosity. *Id.* And *Mount Jezreel Christians Without a Home* itself held that "*bona fide* members of a church have standing to bring suit as trust beneficiaries when there is a dispute over the use or disposition of church property," citing the *Hooker* case, and without limiting its holding only to churches of a certain size. Put simply, *Williams* simply does not support the Yahoo Defendants' contention that the denial of standing there "*a fortiori*" requires denying standing here. This is doubly true given that the plaintiffs in *Williams* were merely challenging "the sale of church property," *see Williams*, 589 A.2d at 903, and not anything approaching the

---

[25] Indeed, it does not appear that *any* court has *ever* cited *Williams* for the proposition that it set a limit on the number of potential beneficiaries that can belong to a class before standing is denied.

extraordinary and existentially threatening measures challenged here. For all these reasons, *Williams* is distinguishable and does not bar standing.

The Yahoo Defendants also rely heavily on *Kania v. Chatham*, 297 N.C. 290, 292 (N.C. 1979), saying it is the case that is "most on point." Yahoo Br. at 13. As with *Williams*, that reliance is misplaced. First, *Kania*'s core holding—that a plaintiff's "classification as a potential beneficiary … is fatal to his claim"—was squarely rejected by the D.C. Court of Appeals in *Hooker*. *Hooker*, 579 A.2d at 614 ("We reject a 'current beneficiary' restriction[.]"). For that reason alone, *Kania* has little application here.

More fundamentally, as noted by the *Hooker* court, "[k]ey to *Kania*" was the fact it was a lawsuit "challenging the trustee's discretionary day-to-day administration of the trust," *id.* at 614, namely the "denial of a [scholarship] benefit to *an individual*," *id.* at 615 (emphasis in *Hooker*) as opposed to a weightier challenge to, for example, the "denial of a benefit to … the class as a whole." *Id. This* lawsuit, by contrast, *does* challenge the "denial of a benefit to the class as a whole." Indeed, unlike the lawsuit in *Kania*, this lawsuit is precisely the type the *Hooker* court envisioned: one that seeks to "vindicate the interests" of a class of potential beneficiaries, "addressed to trustee action that impairs those interests, [and] not the interests of a given individual." *Hooker*, 579 A.2d at 615. Accordingly, *Kania* is also inapposite.[26,27]

---

[26] Moreover, as the *Hooker* court pointed out, "[t]he opinion [in *Kania*] went on to state, however, that 'we do not mean to imply that a potential beneficiary of a charitable trust can never avail himself of legal process to enforce the provisions of such a trust.'" *Hooker*, 579 A.2d at 614 (quoting *Kania*, 297 N.C. at 293).

[27] The cases cited in footnote 8 of the Yahoo Defendants' brief are not to the contrary. ***None*** was based solely, or even primarily, on numerosity, and all were at best only marginally related to numerosity. Most were challenges to day-to-day decisions, and usually a decision to exclude a potential beneficiary from a trust, as opposed to an existential threat to the trust. And others relied on requirements rejected in *Hooker*, such as a "current beneficiary" requirement. For example, *Robert Schalkenbach Found.*, 208 Ariz. at 179, 182-83, was a challenge to trust

In sum, the Beneficiary Plaintiffs clearly possess a special interest in the Trust, easily distinguished from the general public's. Defendants' argument [28] that notwithstanding that

payments allegedly inconsistent with the trust's purpose of "teaching, expounding and propagating the ideas of Henry George," as opposed to trustee action that threatened to terminate the trust entirely, and had little if anything to do with numerosity. Similarly, *Fischer v. Eldon Stevenson, Jr. Scholarship Trust Fr.*, No. M2004-00352-COA-R3-CV, 2005 WL 2012773, at *3 (Tenn. Ct. App. Aug. 22, 2005), challenged the denial of a scholarship to a single plaintiff, and not to extinguishing of the scholarship fund. *Averill v. Lewis*, 138 A. 815 (Conn. 1927), aside from being of little relevance, given its age, in light of the "modern trend" identified in *Hooker*, was also not a challenge to an existential threat to a trust, but rather to a probate accounting to determine how much of the decedent's estate was to be allocated to the trust. *Averill* is also inapplicable because it essentially relied on the "current beneficiary" requirement rejected by *Hooker*. *See Averill*, 138 A. at 818 (denying standing because it was "impossible to show that any one of these 110 appellants ever will become a recipient" of the trust). *State ex rel. Nixon v. Hutcherson*, 96 S.W.3d 81, 84 (Mo. 2003), was similarly based on a "current beneficiary" requirement rejected by the *Hooker* court, and is similarly inapplicable. *See* Restatement (Third) of Trusts § 94 (2012), cmt. g(1) (criticizing *Nixon* as "still appear[ing] to require a 'present' claim to benefits," contradicting "the prevalent view of the modern cases [a]s illustrated by the uniquely and comprehensively instructive opinion in the earlier leading case of *Hooker*").

Even the citation to George G. Bogert, George T. Bogert & William K. Stephens, *The Law of Trusts and Trustees* § 414 (rev. 2d ed. supp. 2003), backfires, because that same section also notes that "in a fairly large group of cases the courts have permitted private individuals, whose positions with regard to the charitable trust were more or less fixed, to sue for its enforcement," that "where a charitable trust was to be carried out, members of a community who were sentimentally interested in seeing the charity promoted and also expected to receive some benefits themselves have been allowed to sue for the protection of the charity or its enforcement," and that, "[i]n some recent cases, persons were permitted to represent a class of specially interested beneficiaries in proceedings to enforce a charitable trust."

[28] Because the Beneficiary Plaintiffs have standing under trust law, it cannot reasonably be disputed that they have standing under Article III. Defendants' main argument to the contrary relies on *St. Croix Chippewa Indians of Wis. v. Kempthorne*, No. 07-2210 (RJL), 2008 WL 4449620, at *1-2 (D.D.C. Sept. 30, 2008). There, an Indian tribe brought an Administrative Procedure Act action challenging agency treatment of their application to convert certain land into federal trust land in order to build a casino. *St. Croix*, 2008 WL 4449620, at *2. After finding that there had not been "final agency action," the court noted that plaintiffs' claims were also not ripe and did not articulate Article III injury, because their application had not actually been denied yet, and their allegation that it would "in all probability" be denied constituted "rank speculation" insufficient to allege Article III injury. *Id.* at *7.

Here, the Beneficiary Plaintiffs do not "speculate" that a pending application will "in all probability" be denied. Rather, they allege, among other things, that the Trust has been outright terminated, depriving them and other Chinese dissidents of even the opportunity to apply for

uncontested special interest, there are too many Chinese dissidents imprisoned for online dissent for the special-interest rule to apply, is legally and factually unsupportable.[29]

## V.    All claims are timely made.

### 1.    The clock on any statute of limitations applicable to Plaintiff Xu W. did not begin to run until April 29, 2014.

At the outset, Defendants' challenge to the timeliness of Plaintiff Xu W.'s claim is incoherent. Plaintiff Xu W. was imprisoned from 2005 to April 29, 2014. ¶¶ 16, 124. As a result, under D.C. law, any statute of limitations triggered by events while he was in prison was tolled until April 29, 2014, and the limitations period would have begun on that day. *See* D.C. Code § 12-302 ("[W]hen a person entitled to maintain an action is, at the time the right of action accrues[,] … imprisoned[,] he or his proper representative may bring action within the time limited after the disability is removed."); *Fletcher v. District of Columbia*, 481 F. Supp. 2d 156, 172 (D.D.C. 2007) ("Under District of Columbia law, the statute of limitations is tolled when the plaintiff is imprisoned at the time the cause of action accrues."), *vacated in part on other grounds sub nom. Fletcher v. United States Parole Comm'n*, 550 F. Supp. 2d 30 (D.D.C. 2008)).

In the face of this unambiguous law, the Yahoo Defendants inexplicably argue:

> Even if that were true, his claims would begin to run upon his release from prison. D.C. Code § 12-302. At best, therefore, Xu Wanping's limitations period is

---

funding in the first instance. This is more than enough to allege Article III injury, as numerous courts have held. *E.g.*, *Samaritan Health Ctr. v. Heckler*, 636 F. Supp. 503, 512 (D.D.C. 1985) ("The plaintiffs have suffered a concrete injury: they have absolutely no opportunity to become eligible for … funding unless" the court granted the requested relief); *W. Virginia Ass'n of Cmty. Health Centers, Inc. v. Heckler*, 734 F.2d 1570, 1576 (D.C. Cir. 1984) ("[O]nce appellants demonstrated that they would qualify to receive these funds, they need not shoulder the additional burden of demonstrating that they are certain to receive funding."); *Int'l Longshoremen's and Warehousemen's Union v. Meese*, 891 F.2d 1374 (9th Cir. 1989) (loss of opportunity constitutes Article III injury).

[29] To the extent the Court grants dismissal based on the "numerosity" argument, Plaintiffs respectfully request leave to amend to add facts contradicting it, including, for example, facts about the number of imprisoned Chinese dissidents granted funding under the Trust.

> extended by 18 days, from April 11, 2014 (the date when the other plaintiffs' claims
> began to run) to April 29, 2014. The amended complaint alleges no misconduct on
> the part of the Yahoo Defendants during those 18 days, and therefore Xu Wanping's
> claims should be dismissed on statute of limitations grounds for the same reason
> that the other plaintiffs' claims should be.

Yahoo Br. at 27.

This argument makes no sense. First, the Yahoo Defendants say "the date when the other

plaintiffs' claims began to run" is April 11, 2014. If so, then *no* claim, by *any* of the Plaintiffs,

could be time-barred on *any* theory, because this suit was filed within three years of that date.

Next, the Yahoo Defendants appear to suggest that the presence of other plaintiffs affected either

the time in which Plaintiff Xu W. had to sue, or the permissible subject matter of such a lawsuit,

or both. The argument is difficult to parse, but makes no sense in any event. Put simply, under

D.C. Code § 12-302, the clock on any conceivable limitations period applicable to Plaintiff Xu

W. did not start until April 29, 2014, when he was released from prison. Thus, even under the

three-year period set forth in D.C. Code § 12-301(8)—which, as discussed below, is not the

correct statute for the Beneficiary Plaintiffs' claims—and even if that period was not tolled for

other reasons—which it was—Plaintiff Xu W. had until April 29, 2017 to sue. He sued on April

11, 2017. Thus, there is no conceivable scenario under which Plaintiff Xu W.'s claim is time-

barred. The Yahoo Defendants' incoherent argument to the contrary should be rejected.

### 2.    The breach of trust claims are timely under D.C. Code § 19-1310.05(c).

D.C. enacted portions of the Uniform Trust Code ("UTC") in 2004. *Family Fed'n for*

*World Peace and Unification v. Moon*, No. 2011 CA 003721 B, 2013 WL 5974896, at *42 (D.C.

Super. Oct. 28, 2013), *overruled on other grounds*, *Family Fed'n*, 129 A.3d 234 (D.C. 2015)).

As a result, the relevant statute of limitations is D.C.'s version of Section 1005 of the UTC,

enacted at D.C. Code § 19-1310.05(c), and the limitations period in D.C. Code § 12-301(8) has

no application to the Beneficiary Plaintiffs' trust claims. *Family Fed'n*, 2013 WL 5974896, at

*42 (holding that only "'acts' [in breach of trust] alleged to have taken place prior to the enactment of the Uniform Trust Code [in 2004]" are subject to D.C. Code § 12-301(8), and that D.C. Code § 19-1310.05(c) applies otherwise)).

D.C. Code § 19-1310.05(c) provides that "a judicial proceeding by a beneficiary against a trustee for breach of trust must be commenced within 3 years after the first to occur of: (1) [t]he removal, resignation, or death of the trustee; (2) [t]he termination of the beneficiary's interest in the trust; or (3) [t]he termination of the trust."

All Defendants are sued in their capacity as trustees of the Trust, and, except for Callahan, none were removed, resigned, or died before April 11, 2014.[30] Nor had the Trust or the Beneficiary Plaintiffs' interest therein been terminated by that date. ¶¶ 16, 72, 124. Defendants largely admit as much, and as a result, the Beneficiary Plaintiffs' claims are timely.

As for Callahan, the Yahoo Defendants argue, citing no authority, that D.C. Code § 19-1310.05(c) is a "statute of repose" that strictly prohibits tolling of the breach of trust claims against him. Not so. The UTC comments make clear that "[S]ection [1005] does not specifically provide that the statutes of limitations under this section are tolled for fraud or other misdeeds, the drafters preferring to leave the resolution of this question to other law of the State." Limitation of Action Against Trustee, *Uniform Trust Code* § 1005.

In enacting Section 1005, D.C. declined to prohibit tolling, *see* D.C. Code § 19-1310.05 (no indication tolling prohibited), unlike other states. *E.g.*, N.H. Rev. Stat. Ann. § 564-B:10-1005 ("The periods of limitation under this section shall not be tolled for any reason, except by a

---

[30] The LRF claims that it cannot be alleged in good faith that Wu was a trustee of the 2009 sub-trust after that date. LRF Br. at 35 n.32. That is irrelevant. Wu was a trustee of the *main Trust*, and had control of its assets as late as March 2016, when he rejected Plaintiff Xu W.'s application for assistance on the ground that the Trust's humanitarian purpose had been terminated. Neither the LRF nor Wu challenge the plausibility of this allegation, nor could they.

written agreement of the trustees and qualified beneficiaries or a court order."). *See also* Alan Newman, *You Don't Know What You've Got Till It's Gone: Time-Barred Claims Under the Uniform Trust Code*, 48 Real Prop. Tr. & Est. L.J. 459, 483 (2014) ("[I]t is clear that the limitations period of section 1005(c) [on which D.C. Code § 19-1310.05(c) is based] can be tolled, and that other law of the applicable jurisdiction should determine what constitutes sufficient grounds for doing so.");[31] *Williamson v. Williamson*, No. 2:12-CV-01841-MHH, 2013 WL 12121985, at *6 (N.D. Ala. Nov. 4, 2013) ("Wells Fargo argues that § 19-3B-1005(c)(1), 'constitutes a statute of repose,' so that '[t]here is no tolling of the statute.' Wells Fargo cites no authority for this proposition.").[32] Thus, the Yahoo Defendants' argument that D.C. Code § 19-1310.05(c) cannot be tolled is wrong, and indeed, they cite no case so holding. And it should be tolled here because of the Yahoo Defendants' concealment of the claims against them.

### 3.    The Yahoo Defendants concealed the existence of a claim against them.

"It is well established that affirmative acts employed by a party to fraudulently conceal either the existence of a claim or facts forming the basis of a cause of action toll the running of limitations periods." *Estate of Chappelle v. Sanders*, 442 A.2d 157, 158 (D.C. 1982). Here, the Complaint makes detailed allegations of precisely such affirmative acts by the Yahoo Defendants, including at times when Callahan was Yahoo's General Counsel, Executive Vice President, and a trustee of the Trust.

For example, the Complaint alleges that in 2011 and 2012, Yahoo vehemently denied

---

[31] Thus, although the comments to the UTC also say that Section 1005(c) is intended to "provide some ultimate repose for actions against a trustee," it is clear that whether to actually bar tolling is left up to the states. And Defendants have not cited any authority for the proposition that D.C. intended to prohibit tolling here.

[32] *See also English v. D.C. Dep't of Behavioral Health*, No. 2013-DMH-00003, 2015 WL 5693305, at *5 (D.C. Office of Admin. Hearings, July 13, 2015) (characterizing D.C. Code § 19-1310.05(c) as a statute of limitations, not of repose).

responsibility for the Trust in connection with a shareholder demand for documents relating to the Trust, with the shareholder citing, among other things, Plaintiff Yu's 2011 lawsuit as a reason for the demand. In opposition, Yahoo pointed the finger squarely at Wu, noting that the lawsuit's "allegations of wrongdoing [were made] against Harry Wu," and thus "fail[ed] to provide a credible basis to find probable wrongdoing by *anyone* at Yahoo!." ¶ 79 (modifications and emphasis in Complaint). Doubling down, Yahoo then argued there was "no basis … to claim that Yahoo! manages or controls the [Trust]." ¶ 82 (modification in Complaint).

Yahoo then cited the lawsuit as *defense*, noting that "Yu Ling alleges that the [Trust] is administered by Mr. Wu and the Laogai Human Rights Organization," as opposed to Yahoo, ¶ 84, and that the lawsuit "further alleges that Mr. Wu and LRF had exclusive control over her money," not Yahoo. ¶ 85.[33]

Similarly, when the shareholder proposed a resolution asking Yahoo to investigate "potentially unlawful activities of the Yahoo! Human Rights Fund," Yahoo argued to the SEC that it "has no ownership interest in the Yahoo! Human Rights Fund," that neither it nor its board of directors was "able to require disclosure of information regarding" the Trust, and again pointed the finger at Wu, noting that "[t]he Human Rights Fund is administered [not by Yahoo but] by Harry Wu … with the help of a board of directors." ¶¶ 88-91.

Given these affirmative acts concealing their responsibility, which are plainly alleged but which the Yahoo Defendants do not even mention, much less challenge, the breach of trust claims against them were tolled and thus are not time-barred.

### 4.    Plaintiffs' claims are timely even under D.C. Code § 12-301(8).

---

[33] Yahoo even cited as a defense the fact that "Yu Ling did not even name Yahoo! as a defendant in her suit." ¶ 86. Yet, in a particularly audacious move, the Yahoo Defendants now argue that that suit gave notice of the claims against them *here*. Yahoo Br. at 22. That must be rejected.

Plaintiffs' claims are also timely under D.C. Code § 12-301(8), even if D.C. Code § 19-1310.05(c) was not the operative statute of limitations for breach of trust (which it clearly is).

### A.    Plaintiffs' injuries either did not occur until 2016, or are of such a nature that it was impossible to know of them before April 11, 2014.

Plaintiffs' alleged injuries are: (1) "the depletion of Trust assets *to such an extent* that it constituted a breach of [the Trust's humanitarian] purpose" and of contract, ¶¶ 1, 10-16, 18, 144, 149 (emphasis added), and (2) "the termination of that purpose completely," in breach of trust and contract. ¶¶ 1, 10-16, 18, 72, 123, 144.

Given that the termination injury occurred in March 2016, Plaintiffs' claims for *that* injury cannot possibly be time-barred. *E.g.*, *Doe v. Medlantic Health Care Grp., Inc.*, 814 A.2d 939, 945 (D.C. 2003) ("A claim usually accrues for statute of limitations purposes when injury occurs[.]"). Defendants have not argued to the contrary, and thus have conceded as much.

As for claims for injury occasioned by the *extent* of Trust spending on non-humanitarian purposes,[34] those also did not accrue before April 11, 2014. A cause of action only accrues when the plaintiff has actual knowledge of, or by the exercise of reasonable diligence should have knowledge of: (1) the existence of the injury; (2) its cause in fact; and (3) some evidence of wrongdoing. *Ray v. Queen*, 747 A. 2d 1137, 1141 (D.C. 2000).

Here, Defendants do not argue that Plaintiffs had actual knowledge that Trust assets had

---

[34] Defendants do not meaningfully challenge that these are well-pleaded and actionable injuries. And their various allusions to the argument that non-humanitarian spending was permitted (or required), *e.g.*, LRF Br. at 3, LHRO Br. at 3, Yahoo Br. at 26, are irrelevant, because they do not and cannot argue that there was no breach of the Trust's humanitarian purpose as a result, whether that was the Trust's primary purpose (which, as plausibly alleged, it was) or simply an equally important purpose (which Defendants do not and cannot deny). Indeed, Defendants do not actually argue that the allegedly permitted or required non-humanitarian spending requires dismissal under trust or contract law (nor could they), and the Court can thus ignore their assertions on this point in deciding this motion.

been spent to such an *extent* as to constitute a violation of the Trust's humanitarian purpose and a breach of the Settlement. Indeed, Defendants do not even argue that Plaintiffs *should have known* that. For that reason alone, Plaintiffs' claims for this injury are not time-barred.[35]

Moreover, even if Defendants had so argued, such arguments would fail. *None* of the pre-2014 events identified in Defendants' papers could have alerted *Plaintiffs*[36] to the fact that Trust assets had been or were being depleted to such an *extent* that the Trust and Settlement were violated, even with a reasonably diligent investigation. Indeed, as explained in the Complaint, "before April 11, 2014 … the publicly available Forms 990 for LRF and LHRO suggested that 57% or more of the $17.3 million Trust corpus remained intact, which was insufficient to provide notice that the Trust's humanitarian purpose had been, was being, or would be fundamentally violated." ¶ 124. (Defendants do not challenge the plausibility of this allegation.)[37] Accordingly, because Plaintiffs' injuries did not exist and could not reasonably

---

[35] The Yahoo Defendants argue that the Complaint "identified numerous alleged, well-publicized bad acts that occurred *before 2014* that allegedly injured them." Yahoo Br. at 20 (emphasis in original). But this argument ignores the Complaint's actual theories of injury described above. More fundamentally, the Complaint addresses precisely this point, by alleging that "[w]hether any individual expenditure was lawful or unlawful, and thus whether it was injurious to Plaintiffs, could not reasonably have been known to anyone but Defendants." ¶ 71. Defendants do not deny the plausibility of this allegation, and indeed, no Defendant argues Plaintiffs could have determined from any individual expenditure that the Trust's humanitarian purpose had been or would be violated. *C.f. Colbert v. Georgetown Univ.*, 641 A.2d 469, 472 (D.C. 1994) ("[W]here the fact of an injury can be *readily determined*, a claim accrues for purposes of the statute of limitations at the time the injury actually occurs.") (emphasis added).

[36] In contrast, *Defendants*, by virtue of their status as trustees and as insiders with access to and detailed knowledge of Trust matters, should have taken action in response to these events, which Plaintiffs alleged were "red flags." Defendants do not dispute they were "red flags," and indeed, by arguing that *Plaintiffs* should have *sued* in response, Defendants have essentially conceded their own negligence and misconduct in failing to act.

[37] Defendants suggest that Plaintiffs should have brought this lawsuit in 2014 or earlier. *See* Yahoo Br. at 25. But given that Defendants do not explain how the existential injuries that are both a threshold requirement for the Beneficiary Plaintiffs' standing, *see Hooker*, 579 A.2d at 614-15, and the basis of Plaintiff Yu's breach of contract claim, could have been alleged, or even

have been discovered before April 11, 2014, their claims are not time-barred.[38]

**B.    Even if inquiry notice could apply, it is a fact-intensive inquiry inappropriate for resolution at this stage.**

Even if there were a plausible argument that Plaintiffs could have known earlier the

existential threat posed by the extent of Trust spending, triggering inquiry notice, "[t]he critical

question in assessing the existence *vel non* of inquiry notice is whether the plaintiff exercised

reasonable diligence under the circumstances in acting or failing to act on whatever information

was available to [the plaintiff]." *Ray*, 747 A. 2d at 1141. That is a highly factual analysis and

---

reasonably discovered, at that time, Defendants' suggestion is misplaced.

[38] The facts here also warrant application of the continuing violation doctrine, which is perhaps more aptly called the cumulative violation doctrine. *Limestone Dev. Corp. v. Vill. of Lemont, Ill.*, 520 F.3d 797, 801 (7th Cir. 2008) (noting that the "doctrine [is] not about a continuing, but about a cumulative, violation."). The doctrine's purpose "is to allow suit to be delayed until a series of [individually inactionable] wrongful acts blossoms into an injury on which suit can be brought." *Id. See also Beard v. Edmondson & Gallagher*, 790 A.2d 541, 550 (D.C. 2002) (explaining that the doctrine applies "[w]here … the nature of the violation is such that … the time when the claim comes into existence [is] less than clear"). The wrongful acts challenged by Plaintiffs' claims regarding the *extent* of Trust spending on non-humanitarian purposes are quintessential cumulative violations. The "time when the[se] claims [came] into existence [is] less than clear," and they challenge "a series of wrongful acts" that individually could not have been sued on, and that only "blossom[ed] into an injury on which suit can be brought" when their cumulative impact resulted in the clear and fundamental violation of the Trust's humanitarian purpose.

For similar reasons, the Yahoo Defendants' claim that alleged misconduct occurring after April 11, 2014 constitutes inactionable "lingering injuries," Yahoo Br. at 25, must be rejected. The Yahoo Defendants' own cases make clear that the "lingering injury" notion operates to defeat cumulative violation arguments where there are no new injurious *acts* committed by defendants, only injuries experienced by the plaintiff, within the limitations period. *E.g., Long v. United States*, 604 F. Supp. 2d 119, 122 (D.D.C. 2009) (alleging "five individual liens were unlawfully placed" on plaintiffs' property, each of which was "a single act," and none in the limitations period); *Felter v. Kempthorne*, 473 F.3d 1255, 1260 (D.C. Cir. 2007) (plaintiff "asserts no new *acts* committed" by defendant within limitations period) (emphasis in original). Here, Defendants committed several "acts" after April 11, 2014—expenditures in 2015, ¶¶ 60, 64, 68, 111; the termination of the Trust's humanitarian purpose in 2016, ¶¶ 16, 72; and Yahoo and Bell's negligent abandonment of their duties as trustees in turning over Trust assets to Wu and the LRF in 2015. ¶ 128. To characterize Defendants' later affirmative misconduct as "effects" of their earlier misconduct is patently absurd, and would make *any* application of the cumulative violation doctrine impossible, because later actions in a series of wrongful acts could then always be characterized as the "lingering injuries" of the earlier wrongdoing.

"requires an evaluation of **all** of the plaintiff's circumstances." *Diamond v. Davis*, 680 A. 2d 364, 372 (D.C. 1996) (emphasis added). "In determining whether the plaintiff exercised reasonable diligence, the court should consider, *inter alia,* whether there was a fiduciary relationship between the parties." *Ray*, 747 A.2d at 1142.

Here, the facts and circumstances include that Plaintiffs are "residents of China who speak little or no English," ¶ 3; that Defendants were Plaintiffs' fiduciaries in whom Plaintiffs placed trust and confidence, ¶¶ 3, 124; that important facts were kept confidential by Defendants, such as that, according to Yahoo itself, the Trust's "intended principles" and "purpose" were aimed at protecting "online dissent," ¶ 43, with support for LRF's work being a "limited exception," *id.*; and that contrary to Yahoo's repeated denials, Yahoo actually exercised considerable control over Trust assets. ¶¶ 47-57.

These circumstances—which Defendants do not challenge—all militate against inquiry notice. *Diamond*, 680 A.2d at 365 ("[T]he character of material statements and nondisclosure by the defendant as well as the existence of a relationship of trust between the plaintiff and the defendant … are properly taken into account by the trier of fact in evaluating the reasonableness of plaintiff's diligence."); *see also In re Thompson's Estate*, 416 Pa. 249, 258 (Pa. 1965) ("A trustee of a charitable trust has a special duty to protect the interests of the beneficiaries because the real beneficiaries are unascertainable and therefore unable to protect themselves.").

Moreover, although various Defendants say Plaintiffs were aware of Trust spending on non-humanitarian purposes, Defendants have *not* argued that Plaintiffs lacked diligence in failing to discover the *extent* of such spending. As such, this case cannot be dismissed on inquiry notice grounds, especially at this stage. *E.g.*, *C&E Servs., Inc. v. Ashland, Inc.*, 498 F. Supp. 2d 242, 262 (D.D.C. 2007) (even *summary judgment* could not be granted on inquiry notice grounds

"because the commencement of the statute of limitations is a question of fact usually reserved for the jury and because there are genuine issues of material fact" on the adequacy of plaintiffs' investigation); *Doe v. Medlantic Health Care Grp., Inc.*, 814 A.2d 939, 945 (D.C. 2003) ("[W]hen accrual actually occurred in a particular case is a question of fact for the fact finder.").

### C. The Beneficiary Plaintiffs' claims did not accrue until repudiation and termination of the fiduciary relationship occurred in 2016.

The Beneficiary Plaintiffs' claims are also not time-barred because they bring equitable claims against Defendants as trustees to enforce their rights under the Trust. Because there was no clear repudiation of those rights before April 11, 2014, the Beneficiary Plaintiffs' cause of action did not accrue before that date.[39] *See Cobell v. Norton*, 260 F. Supp. 2d 98, 105 (D.D.C. 2003) ("[T]he principle that the statute of limitations does not begin to run for a beneficiary's claim in equity to enforce the obligations of the trustee until the trustee has repudiated the beneficiary's right to the benefits of the trust is well-established[.]").[40]

### D. The common law exempts this action to return the Trust to its true purpose from being time-barred.

Finally, as the Complaint alleges, this action is not time-barred because "this is an action to enforce the charitable purpose of a charitable trust." ¶ 124. Under the common law, such actions are exempt from being time-barred. *E.g.*, *Trustees of Andover Theological Seminary v. Visitors of Theological Inst. in Phillips Acad. in Andover*, 253 Mass. 256, 298 (Mass. 1925)

---

[39] Clear repudiation only occurred in 2016, when Plaintiff Xu W. was informed that Wu and the LRF had terminated the Trust's humanitarian purpose. ¶¶ 16, 72.

[40] *See also Kosty v. Lewis*, 319 F.2d 744, 750 (D.C. Cir. 1963) (for the statute of limitations to start, "there must be clear and continuing repudiation of the right to trust benefits"); Austin W. Scott & William F. Fratcher, *The Law of Trusts* § 481.1 (4th ed. 1987) ("[I]t is only where the trustee has repudiated the trust to the knowledge of the beneficiaries that they may become barred from enforcing the trust[.]").

("Generally it is true that no length of time of diversion from the plain provisions of a charitable

foundation will prevent its restoration to its true purpose.").[41] Defendants present no argument on

this point whatsoever, and for that reason alone, their request that this action should be dismissed

as untimely must be rejected.

## VI.    The Complaint plausibly alleges breach of contract and unjust enrichment.[42]

### 1.    Plaintiff Yu did not release her claims here.

Plaintiff Yu never released her claims here. In settling her earlier suit, "[t]he focus of

[which] was not to enforce the Trust's humanitarian purpose," ¶ 38, Plaintiff Yu only released

those claims "which have existed or may have existed … from the beginning of the world to the

date of this Agreement," ¶ 39, which was October 21, 2011. *Id.* Moreover, the Complaint

explicitly states that Plaintiff Yu sues only for breaches that occurred after that date. *Id.* As a

result, the release does not bar her claims.

---

[41] *See also William Buchanan Found. v. Shepperd*, 283 S.W.2d 325, 336 (Tex. Civ. App. 1955)
("Also no length of diversion from the plain provisions of a charitable trust will prevent
restoration to its true purpose."); *City of Tacoma v. Tacoma Cemetery*, 28 Wash. 238, 249, 68 P.
723, 727 (Wash. 1902) ("'But the statute of limitations affords no absolute bar or limit; and when
trustees, with knowledge of the charitable use, and no reasonable excuse for mistake, have
misappropriated the whole or part of the income, they will be held to account for it during the
whole period of misappropriation, unless grave inconvenience or hardship would be caused by so
doing.'") (quoting *Attorney Gen. v. Old S. Soc. in Boston*, 95 Mass. 474, 496 (Mass. 1866)); *see
also id.* ("Nor will lapse of time be allowed to establish any perversion or abuse of a charitable
trust, if the original purpose can be clearly determined.") (quotation marks and citation omitted);
*see also Lifespan Corp. v. New England Med. Ctr., Inc.*, No. CIV. 06-CV-421-JNL, 2010 WL
3718952, at *2 (D.R.I. Sept. 20, 2010) ("[A]s a general rule of common law, … claims for
mismanagement of a public charity by those acting in a fiduciary capacity are exempt from any
limitations period under Massachusetts law.").

[42] LHRO proclaims it cannot be sued for breach of contract because it was not a party to the
Settlement, LHRO Br. at 2-3, but given that it is not being sued for breach of contract, it is
unclear what LHRO's point is. The LRF and Wu's exhortations that the Beneficiary Plaintiffs
are not parties to the Settlement, *e.g.*, LRF Br. at 2, 7 and Wu Br. at 9, are similarly puzzling,
since the Complaint does not assert contract claims on the Beneficiary Plaintiffs' behalf. Finally,
Wu's assertion that the Complaint fails to allege he was a party to the Settlement fails, given that
it *does* so allege, *e.g.*, ¶¶ 36, 40, 45, 55, 143-44, and given the *alter ego* allegations. ¶ 118.

Defendants tellingly do not grapple with the language limiting the release "to the date of this Agreement." For that reason alone, their argument fails. Instead, Defendants insist that notwithstanding Plaintiff Yu's express disclaimer for breaches occurring before the release, the breaches alleged here "occur[ed] years before" that release, and "were actually alleged" in the 2011 lawsuit. This is simply false. The 2011 lawsuit did not allege that the Trust's humanitarian purpose was being violated, and the mere fact that certain of the same spending is also alleged here cannot change that—spending can be improper for many reasons, and it was not alleged there that a fundamental violation of the Trust's humanitarian purpose was one of them.

Defendants also point to the phrase "past, present, or future" in the release, LRF Br. at 24, but that language merely ensures claims are not exempt from the release just because they are asserted for the first time in the future. Indeed, that phrase comes before, and is modified by, the language explicitly limiting the release to claims existing "from the beginning of the world to the date of this Agreement."[43] *See* LRF Br. at 20. Because Defendants do not and cannot explain why Plaintiff Yu's claims should be barred notwithstanding this explicit limiting language, their arguments that her claims were released must fail.

_____

[43] This limiting language is eminently sensible, as it avoids the risk of violating public policy. *E.g.*, *Wright v. Sony Pictures Entm't, Inc.*, 394 F. Supp. 2d 27, 31 (D.D.C. 2005) ("The law regarding prospective liability releases in Virginia is that they are forbidden and unenforceable in all instances."); *Johnson's Adm'x v. Richmond & D.R. Co.*, 86 Va. 975, 11 S.E. 829, 829 (Va. 1890) ("To uphold the stipulation in question would be to hold that it was competent for one party to put the other parties to the contract at the mercy of its own misconduct, which can never be lawfully done where an enlightened system of jurisprudence prevails. Public policy forbids it, and contracts against public policy are void."); *Dakin v. Allis*, 25 Wis. 2d 49, 53 (Wis. 1964) ("We conclude that it is against public policy to covenant not to sue based on misconduct of the defendant that is subsequent to the agreement."); *Love v. Med. Coll. of Wis.*, No. 15-CV-0650, 2016 WL 1627629, at *2 (E.D. Wis. Apr. 22, 2016) ("Contracts which release a party from liability for future intentional or reckless conduct are unenforceable because they encourage such conduct."); *Schwartz v. Dallas Cowboys Football Club, Ltd.*, 157 F. Supp. 2d 561, 578 (E.D. Pa. 2001) ("The release is also too broad because it bars later claims based on future conduct.").

2.    *Res judicata* **does not apply.**

Defendants' *res judicata* argument fails for similar reasons.[44] For a claim to be precluded under Virginia law: (1) the first decision must have been "decided on the merits by a final judgment"; (2) the second claim must involve the same parties; and, (3) the second claim must involve the "same conduct, transaction or occurrence." *Lee v. Spoden*, 776 S.E.2d 798, 803 (Va. 2015) (citing *Taylor v. Sturgell*, 553 U.S. 880, 892 (1974)). Here, Plaintiff Yu's claims clearly involve conduct, transactions, and occurrences far beyond and thus different than her claims in 2011. Her earlier claims related to wrongful withholding of a portion of the $3.2 million owed to her and her family under the Settlement, and not the $17.3 million Trust that was also a requirement of the Settlement. ¶ 38. Moreover, her claims here are based in significant part on conduct and transactions occurring well *after* 2011. *E.g.*, ¶¶ 72, 111. Defendants do not meaningfully grapple with these obvious differences, and for that reason alone, their *res judicata* argument fails. *E.g.*, *Lee*, 776 S.E.2d at 806 (claim preclusion inapplicable to a sale that occurred *after* earlier ruling).[45]

3.    **The Complaint plausibly alleges breach of contract.**[46]

---

[44] Defendants argue only the claim preclusion species of *res judicata*, and not issue preclusion. They also allude to a rule prohibiting "claim-splitting," LRF Br. at 17, but do not and cannot argue that that rule applies here.

[45] Defendants assert half-heartedly, citing no authority whatsoever, that Plaintiff Yu's breach of contract claims should also be dismissed for failure to allege damages. LRF Br. at 24 n.21. Not only does that completely ignore Plaintiff Yu's request for specific performance, *see* Complaint at 44, it also ignores that actual damages are not required to state a breach of contract claim. *E.g.*, *Integrated Voting Sols., Inc. v. Automated Ballot Concepts, LLC*, No. F071837, 2017 WL 371385, at *16 (Cal. Ct. App. Jan. 26, 2017) (nothing that actual damages are not required under California law and reversing for failure to award nominal damages); *Wright v. Howard Univ.*, 60 A.3d 749, 753 (D.C. 2013) ("Even where monetary damages cannot be proved, a plaintiff who can establish a breach of contract is entitled to an award of nominal damages.").

[46] Defendants make a bizarre argument that Plaintiff Yu is somehow trying to rescind the contract, when she plainly is not, and instead trying to *enforce* it. Defendants' contention to the

Plaintiff Yu alleges that she "agreed to dismiss the 2007 Lawsuit in exchange for, among other things, the creation of a Trust for the benefit of Chinese dissidents imprisoned for exercising their freedom of expression online." ¶ 143. Further, the "Settlement contemplated that Wu and the LRF would be responsible for [the Trust's] day-to-day administration, but that Yahoo would maintain oversight to ensure Trust assets were being spent in accordance with its purpose: providing humanitarian and legal aid to Chinese dissidents imprisoned for exercising their freedom of expression online." ¶ 40. Thus, "[t]he Settlement imposed obligations on Yahoo, Wu, and the LRF to ensure that purpose was carried out." ¶ 143.[47]

Defendants do not meaningfully challenge these allegations. No Defendant denies humanitarian spending was required by the Settlement. No Defendant denies that requirement has been violated. Accordingly, the Complaint states a claim for a breach of contract.[48]

---

contrary relies entirely on the Beneficiary Plaintiffs' assertion of a claim to modify the Trust, and on the request for a modification in the Complaint's prayer for relief. The problem is that Defendants cite no authority whatsoever for the proposition that this somehow transforms Plaintiff Yu's claim into one for rescission—and none exists. Even assuming a rescission claim could somehow by imputed to Plaintiff Yu by operation of the Complaint's prayer for relief, this still would not justify dismissal. Indeed, Defendants' own case, which it cites for the proposition that "an action for a rescission and an action for breach of contract are alternative remedies," *Akin v. Certain Underwriters at Lloyd's London*, 140 Cal. App. 4th 291, 296-97 (Cal. Ct. App. 2006), declined to dismiss on that basis (and only did so on statute of limitations grounds); *see also Alder v. Drudis*, 30 Cal. 2d 372 (Cal. 1947) (declining to dismiss claims for rescission and for breach).

As for the LRF's references to Settlement provisions regarding amendment, invalidation, and severability, LRF Br. at 13 & n.15, those provisions are completely irrelevant here because the LRF does not and cannot argue that they result in a failure to state a claim.

[47] For example, Wu and the LRF were required to "use their best efforts to maximize the benefits achieved" by the Trust's humanitarian purpose, ¶ 18; Yahoo was to be provided with regular reports on Trust spending, ¶ 45; and Yahoo was to be involved in the creation of a board of directors for the Trust, ¶ 37 n.3.

[48] The LRF quibbles that Wu and the LRF's obligation to "use best efforts to maximize the benefits" of humanitarian spending is limited to maximizing the effect of whatever money happens to be distributed, and that it imposed "no obligation to forego permitted operational

Against all this, Yahoo claims that its only contractual obligation was to *fund* the Trust and it had no obligation to "review" how Trust assets were being spent. Yahoo Br. at 18. The problem is that this does not respond to Plaintiff Yu's allegation that it was also required to "maintain oversight" of Trust spending, as embodied in provisions specifically calling for Yahoo to review Trust spending, including by being provided with reports and by participating in the Trust's board of directors.[49] ¶¶ 36 n.3, 40, 45. Indeed, Yahoo does not explain what the purpose of the provisions plausibly could be if *not* to require it to maintain oversight.[50] But Yahoo cannot

---

expenditures." LRF Br. at 31. That misses the point on this motion to dismiss, given that the LRF does not and cannot argue that the Settlement permitted it to violate the Trust's humanitarian purpose, or that that violation does not constitute a breach of contract. The LRF's bizarre contention that "[t]he Complaint does not allege that LRF has in fact stopped providing humanitarian assistance," and that the mere fact "that Mr. Wu told this to one of the plaintiffs" is insufficient, LRF Br. at 32, must also be rejected. The Complaint alleges that Wu was both the LRF's *alter ego* and its Executive Director. ¶¶ 23, 24, 118. Neither Wu nor the LRF denies this. To hold that the Complaint fails to allege that the LRF has in fact terminated humanitarian assistance despite these allegations is an unduly cramped reading inconsistent with the Court's obligation to construe facts in Plaintiffs' favor under Rule 12(b)(6).

[49] Yahoo's argument that it had no obligations under the Settlement with respect to the Trust other than to fund it also fails to give effect to the parties' intentions, given the numerous terms providing for Yahoo's oversight (not to mention Yahoo's actual exercise of such oversight, at least initially). *E.g.*, *Keepseagle v. Perdue*, 856 F.3d 1039, 1047 (D.C. Cir. 2017) ("[A] central interpretive goal 'in construing a contract is to give effect to the mutual intentions of the parties.' … To effectuate the parties' intent, we must consider the 'context.'") (quoting *NRM Corp. v. Hercules, Inc.*, 758 F.2d 676, 681 & n.10 (D.C. Cir. 1985)).

[50] Defendants' reliance on *Kaar v. Wells Fargo Bank, N.A.*, No. C 16-01290 WHA, 2016 WL 3068396, at *2 (N.D. Cal. June 1, 2016), and *Stevens v. Sodexo, Inc.*, 846 F. Supp. 2d 119, 125 (D.D.C. 2012), are unavailing. In *Kaar*, the court *denied* defendants' motion to dismiss because "identifying the specific provision" merely required identification of the "contractual obligations allegedly breached," not a "recit[ation of] the contract's terms verbatim," and plaintiffs' allegation that "new payment terms" had been agreed to and violated met that burden. *Id.* at *2. Here, Plaintiff Yu has far exceeded that standard, and has identified numerous provisions creating a contractual obligation on Yahoo's part to ensure the Trust's humanitarian purpose was carried out. Yahoo simply ignores these provisions, and thus its arguments fail. As for *Stevens*, the plaintiff there made a "naked assertion" that a contract existed, "fail[ed] to identify any written employment agreement, or even any basis for inferring a tacit agreement," and even then, did not "indicate what any of the specific terms of that alleged contract might have been." 846 F. Supp. 2d at 125. That is obviously not the case here, where Defendants do not deny an agreement

read these allegations out of the Complaint, and these provisions out of the Settlement, by remaining silent. Yahoo's argument that no contract breach is alleged against it therefore fails.[51]

Put simply, Plaintiff Yu plausibly alleges that she contracted for a charitable trust to provide humanitarian assistance to imprisoned Chinese dissidents and for Defendants to ensure that purpose was carried out, and that Defendants have failed to live up to those obligations.[52] Accordingly, she states a breach of contract claim.

### 4.    The Complaint plausibly alleges unjust enrichment.

"[U]njust enrichment occurs when a plaintiff confers a benefit on the defendant, the defendant retains the benefit, and under the circumstances, the defendant's retention of the benefit is unjust." *Chambers v. NASA Fed. Credit Union*, 222 F. Supp. 3d 1, 14 (D.D.C. 2016) (citing *In re APA Assessment Fee Litig.*, 766 F.3d 39, 45-46 (D.C. Cir. 2014)). And, "[w]hen an express contract has been repudiated or materially breached by the defendant, restitution for the value of the non-breaching party's performance is available as an alternative to an action for damages on the contract." *Lee v. Foote*, 481 A.2d 484, 485 (D.C. 1984) (*per curiam*).[53]

---

existed, and where Plaintiff Yu *has* indicated the terms breached.

[51] Yahoo also relies on the extra-Complaint LHRO bylaws, this time to argue that its hands were tied. Yahoo Br. at 18. But Yahoo does not actually argue that those bylaws permitted it to effectively ignore deficient humanitarian spending. Thus, even if the Court considered such documents (and the Court should not for many reasons, *see infra* at n. 8), they do not help Yahoo. To the contrary, Yahoo's extensive involvement in Trust affairs following the Settlement, including its role in forming the LHRO, indicate an understanding that it had obligations under the Settlement to ensure the Trust's humanitarian purpose was carried out.

[52] *See also City Bank Farmers Tr. Co. v. Neary*, 27 N.Y.S.2d 979, 982 (N.Y. Sup. Ct. 1940) (noting a "contractual right to keep the trust in existence" by party to contract creating trust).

[53] *See also United States ex rel. Am. Civil Constr., LLC v. Hirani Eng'g & Land Surveying, P.C.*, No. 14-CV-00745 (APM), 2017 WL 2787590, at *13 (D.D.C. June 27, 2017) (denying summary judgment even though party to contract sought recovery based on "reasonable value" of benefit conferred and unjust enrichment, rather than contract damages).

Here, the LRF does not dispute that all elements are adequately alleged, including the conferral of a benefit.[54] Instead, its *only* merits[55] argument is that the existence of a contract bars Plaintiff Yu from even *pleading* unjust enrichment. LRF Br. at 33-34. But that ignores that "plaintiff's unjust enrichment claim is an alternate theory of liability which it may pursue" at the pleading stage. *McWilliams Ballard, Inc. v. Broadway Mgmt. Co. Inc.*, 636 F. Supp. 2d 1, 9 n.10 (D.D.C. 2009); *see also Nevius v. Africa Inland Mission Int'l*, 511 F. Supp. 2d 114, 122 (D.D.C. 2007). It also ignores that under D.C. law, restitution is available even where a contract exists. *See Lee*, 481 A.2d at 485 (D.C. 1984) (*per curiam*).[56]

## VII.    Plaintiffs plausibly allege third-party and principal-agent liability against Yahoo.

*Third-party liability.* "When a person in a fiduciary relationship to another violates his duty as fiduciary, a third person who participates in the violation of duty is liable to the beneficiary." Austin W. Scott & William F. Fratcher, *The Law of Trusts* § 506 (4th ed. 1989). And, "[a] person who knowingly assists a fiduciary in committing a breach of trust is himself guilty of tortious conduct and is subject to liability for the harm thereby caused." Restatement

---

[54] As for Wu, he bizarrely claims, as if the Complaint's *alter ego* allegations did not exist, "[t]here is simply no factual allegation that Plaintiff Yu conferred a benefit on Harry Wu." Wu Br. at 10. Wu's failure to challenge the *alter ego* allegations against him is fatal.

[55] The LRF's statute of limitations argument on this claim, *see* LRF Br. at 34 n.30, fails because the time begins to run "upon the occurrence of the wrongful act giving rise to a duty of restitution." *Smith v. Wash. Post Co.*, 962 F. Supp. 2d 79, 85 (D.D.C. 2013). Here, those wrongful acts were 1) the *extent* of non-humanitarian spending culminating in the violation of the Trust's humanitarian purpose, and 2) the 2016 termination of that purpose, neither of which is time-barred for the reasons discussed above.

[56] Because the Complaint adequately alleges breach of trust and contract, the civil conspiracy claim is also adequately alleged. Indeed, aside from Wu, Defendants' *only* challenge to Plaintiffs' civil conspiracy claim is the alleged lack of an underlying tort. *See* LRF Br. at 34, Yahoo Br. at 19, LHRO Br. at 3. As for Wu, his challenge to the alleged lack of an overt act "specifically attributed to Harry Wu," Wu Br. at 13, inexplicably ignores the *alter ego* allegations against him yet again. Thus, Wu's challenge fails.

(Second) of Torts § 874 (1979). The Complaint alleges that Yahoo "knowingly assist[ed] and participat[ed] in Callahan's and Bell's breaches of trust. ¶ 139. Yahoo does not challenge the plausibility of this allegation. As a result, the Complaint adequately alleges third-party liability against Yahoo.[57]

*Principal-agent liability.* The existence of an agency relationship is a question of fact, and is adequately pleaded through allegations making it plausible that: (1) the parties consented to the agency relationship, and (2) the principal had the right (even if not exercised) to control the agent's actions. *Henderson v. Charles E. Smith Mgmt., Inc.*, 567 A.2d 59, 62 (D.C. 1989). "Relevant factors include (1) the selection and engagement of the servant, (2) the payment of wages, (3) the power to discharge, (4) the power to control the servant's conduct, (5) and whether the work is part of the regular business of the employer." *Jackson v. Loews Washington Cinemas, Inc.*, 944 A.2d 1088, 1097 (D.C. 2008) (quotation marks and citations omitted).

Here, the Complaint is rife with allegations that Callahan and Bell agreed to act as trustees of the Trust as a condition of their employment with Yahoo and were compensated for doing so. ¶¶ 20, 21, 144. Yahoo does not challenge the plausibility of these allegations. The Complaint thus alleges a principal-agent relationship.[58]

---

[57] Yahoo's reliance on *Reardon v. Riggs Nat'l Bank*, 677 A.2d 1032, 1037 (D.C. 1996) is unavailing. The plaintiffs there were legatees of an estate to which trust assets reverted upon the settlor/testator's death, not trust beneficiaries. *Id.* Those assets were then administered not by the defendant trustees, but by the settlor/testator's "personal representatives" under probate law. *Id.* Under those circumstances, the court held that the plaintiffs were required to "proceed in the first instance" against those personal representatives in probate court, who could then be compelled to sue the trustees. *Id.* However, *Reardon* noted that "for purposes of judicial economy the third party may also be joined as a defendant in the beneficiary's action." *Id.* Here, the Beneficiary Plaintiffs *have* "proceeded in the first instance" against the analogue of the personal representatives in *Reardon*, namely the trustees of the Trust. And as *Reardon* itself acknowledges, joining Yahoo as a third party is proper for judicial economy.

[58] Yahoo asserts that the Complaint fails to allege "how Callahan or Bell sacrificed their

---

44

## CONCLUSION

For the foregoing reasons, Defendants' motions to dismiss should be denied.[59],[60]

---

independence to Yahoo when acting in their capacities as directors or trustees." Yahoo Br. at 16. This, of course, ignores the Complaint's allegations that Callahan and Bell served at Yahoo's pleasure and as a condition of their employment—which Yahoo does not challenge. More to the point, Yahoo cites no authority that an agent must actually "sacrifice" his or her "independence" from the principal for the agency relationship to exist. To the contrary, D.C. law is clear that an agency relationship exists where the principal has the *right* to control the agent, regardless of whether the right is exercised by the principal, and thus, by implication, regardless of whether the agent actually "sacrificed" his or her "independence." *Judah v. Reiner*, 744 A.2d 1037, 1040 (D.C. 2000) ("The cases emphasize that the right to control, rather than its actual exercise, is usually dispositive of whether there is an agency relationship.").

[59] The Yahoo Defendants' assertion that "discovery in this case will be problematic if not impossible on key issues," Yahoo Br. at 28 n.11, is both wrong and irrelevant. The "key issues" here all relate to *Defendants'* conduct in the U.S., not *Plaintiffs'*. Moreover, discovery in China, even depositions, is hardly unheard of. *E.g.*, *In re Chinese-Manufactured Drywall Prods. Liab. Litig.*, No. CV 09-02047, 2017 WL 1476595, at *45 (E.D. La. Apr. 21, 2017) ("This lawsuit has been going on for over five years. Numerous depositions have been taken in this country and in China."); *Feng Wang v. A & W Travel, Inc.*, 14 N.Y.S.3d 459, 462 (N.Y. App. Div. 2015) (permitting deposition in China by videoconference). More to the point, this gratuitous assertion has no bearing on whether the Complaint adequately states a claim. And, contrary to the Yahoo Defendants' contention, *see* Yahoo Br. at 28, the Complaint does not say discovery is needed to survive Defendants' motions. The Complaint easily survives as pleaded, as shown herein.

[60] Should the Court dismiss the Complaint, Plaintiffs respectfully request leave to amend, which should be "freely give[n]," Fed. R. Civ. P. 15(a)(2), absent factors "such as undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, futility of amendment, etc." *Foman v. Davis*, 371 U.S. 178, 182 (1962). Here, Defendants' only argument against leave is alleged futility. *See* Yahoo Br. at 28 and LRF Br. at 36. But depending on the grounds for dismissal, Plaintiffs may cure pleading deficiencies with additional facts supporting, for example, standing, timeliness, or liability, including additional facts regarding their investigation as it relates to the LHRO, as well as facts that have become known since the Complaint was filed. For example, it appears that Yahoo is now taking the position that, because Yahoo "recently sold its operating business … the Yahoo Human Rights Fund is now being administered by Verizon as a result." *See* Letter from Eric K. Brandt to Jing Zhao, dated July 28, 2017, *available at* http://cpri.tripod.com/cpr2017/altaba.pdf (last accessed Sept. 11, 2017). Needless to say, this supports the notions that the Trust was part of Yahoo's "operating business," that Yahoo administered the Trust, and that it was a trustee.

Dated: September 11, 2017                Respectfully submitted,

                                         /s/ Times Wang
                                         **COHEN MILSTEIN SELLERS & TOLL PLLC**
                                         Daniel S. Sommers (D.C. Bar 416549
                                         S. Douglas Bunch (D.C. Bar 974054)
                                         Times Wang (D.C. Bar 1025389)
                                         dsommers@cohenmilstein.com
                                         dbunch@cohenmilstein.com
                                         twang@cohenmilstein.com
                                         1100 New York Ave NW, Suite 500
                                         Washington, DC 20005
                                         Telephone: (202) 408-4600
                                         Facsimile: (202) 408-4699

                                         *Counsel for Plaintiffs*

### CERTIFICATE OF SERVICE

I hereby certify that on September 11, 2017, I caused the foregoing to be electronically filed using the CM/ECF system, which will send notice of this filing to all counsel of record.

*/s/ Times Wang*
Times Wang (D.C. Bar 1025389)
twang@cohenmilstein.com
1100 New York Ave NW, Suite 500
Washington, DC 20005
Telephone: (202) 408-4600
Facsimile: (202) 408-4699