**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| HE DEPU, *et al.*,<br><br>                    Plaintiffs,<br><br>     v.<br><br>YAHOO! INC., *et al.*,<br><br>                    Defendants. | Case No. 1:17-cv-00635-JDB<br><br>Judge John D. Bates |

**THE YAHOO DEFENDANTS' MEMORANDUM OF LAW IN OPPOSITION
TO PLAINTIFFS' RULE 59(E) MOTION TO ALTER JUDGMENT
FROM DISMISSAL WITH PREJUDICE TO DISMISSAL WITHOUT
PREJUDICE, RULE 15(A) MOTION FOR LEAVE TO AMEND**

I.      **Introduction**

Nothing in Plaintiffs' 13 new pages of allegations or 16 new pages of briefing changes the finding most fundamental to the Court's dismissal of Plaintiffs' First Amended Complaint ("FAC")—*i.e.*, that the plain language of the settlement agreement that Plaintiffs assert created a charitable trust *expressly disclaims* any intention to do so.  On March 30, the Court issued a well-reasoned Order, dismissing all of Plaintiffs' claims with prejudice.  *See* Dkts. 40, 41.  Central to that ruling was the clear language of a 2007 settlement agreement (the "*Wang* Settlement"), which the Court held disclaimed any intention to form a charitable trust.  *See* Dkt. 41 at 6-8. "Ultimately," the Court ruled, "plaintiffs have not plausibly alleged that the *Wang* settlement created a charitable trust.  Hence, all of the claims that sound in trust will be dismissed." *Id.* at 6.

Nothing has occurred since March 30 to alter that ruling or call it into question.  The law remains the same; the language of the *Wang* Settlement remains the same; and so too should this Court's judgment for defendants.  Plaintiffs' motion for relief under Rule 59(e)—a "disfavored," "extraordinary" remedy, *see infra* at 4-5—should be denied, for three primary reasons:

- *First*, Plaintiffs misconstrue the purpose of the procedural relief they seek.  Rather than explaining why the Court's Order represents "a clear error or [a] manifest injustice," Plaintiffs spend much of their brief debating the Court's reasoning in its Order.  Such attempts to "relitigate" a ruling via Rule 59 are improper.  *Nat'l Wildlife Fed'n v. U.S. Army Corps of Eng'rs*, 318 F.R.D. 1, 5 (D.D.C. 2016) (Bates, J.).

- *Second*, Plaintiffs incorrectly claim that the Court failed to explain why the deficiencies of the previous complaints could not be cured.  The Order makes clear that no amount of new factual allegations can alter the plain language of the *Wang* Settlement, which disclaims any intention to create a charitable trust.

- *Third*, Plaintiffs' proposed Second Amended Complaint ("SAC") is just as deficient and just as futile as their last two complaints. None plausibly alleges the formation of a charitable trust or Plaintiffs' standing to bring this lawsuit.

Plaintiffs' motion should be denied and this case should be brought to an end.

## II.     Background And Procedural History

In April 2017, Plaintiffs filed their first complaint against the Yahoo Defendants,[1] the Laogai Research Foundation ("LRF"), the Laogai Human Rights Organization, the Estate of Harry Wu, and the so-called Yahoo Human Rights Fund Trust. Dkt. 1. Plaintiffs alleged that they were the beneficiaries of a trust, and claimed that defendants breached fiduciary and other duties owed to them. *Id.* The Yahoo Defendants moved to dismiss Plaintiffs' complaint. Dkt. 18. Rather than oppose, Plaintiffs filed the FAC in July 2017—adding 10 pages of allegations. Dkt. 26. Plaintiffs asserted claims against the Yahoo Defendants for breach and modification of trust, *id.* ¶¶ 125-31, 135-36, and civil conspiracy, *id.* ¶¶ 112-13. They also alleged third-party and principal-agent liability claims against Yahoo, *id.* ¶¶ 137-41.[2]

The Yahoo Defendants moved to dismiss. Dkt. 29. They explained that dismissal was warranted because the *Wang* Settlement, which Yahoo made to settle a 2007 lawsuit, did not create a charitable trust. *See* Dkts. 29-1, 35. The *Wang* Settlement—which was part of the FAC under the incorporation-by-reference doctrine, *see* Dkt. 29-2 at 1-2—does not mention the creation of a "charitable trust" (or of any other type of trust), or otherwise indicate an intent to form a charitable trust. Dkt. 35 at 4-9. The Yahoo Defendants further showed that even if the *Wang* Settlement created a charitable trust, Plaintiffs lack standing to enforce it because their

---

[1] The Yahoo Defendants are Yahoo! Inc., Ron Bell, and Michael Callahan. *See* Dkt. 29-1.

[2] Plaintiff Yu also brought a claim against Yahoo for breach of the *Wang* Settlement. *Id.* ¶¶ 142-45. However, she has abandoned all her claims in the proposed SAC. Dkt. 42 at 4.

2

proposed beneficiary class was "uncertain and limitless" and because they failed to allege Article III standing. *See* Dkt. 29-1 at 10-12.[3]

On March 30, 2018, the Court granted the Yahoo Defendants' motion to dismiss. *See* Dkts. 40, 41. After reviewing the *Wang* Settlement, the Court concluded that "plaintiffs have not plausibly alleged that [it] created a charitable trust." Dkt. 41 at 8. Specifically, the Court held that the *Wang* Settlement "is a contract and, unlike the 2009 amendment, it does not purport to be a trust document." *Id.* There is no mention of "charitable beneficiaries" in the *Wang* Settlement and it "expressly disclaims the creation of third-party beneficiaries." *Id.* The Court noted that Yahoo's express intent in executing the *Wang* Settlement was its "desire … to resolve [its] disputes, and all claims, causes of action and controversies" with the *Wang* plaintiffs—*not* to create a charitable trust. *Id.* at 9. Because Plaintiffs failed to plausibly allege that Yahoo intended to create a charitable trust, all of Plaintiffs' trust claims necessarily failed. *See id.*

As an alternative ground for dismissal, the Court held that, even if Plaintiffs "plausibly alleged that Yahoo created a charitable trust for their benefit, their trust claims would still fail [because] they have failed to establish that they have standing under principles of trust law." *Id.* at 8-11. The Court held that, with two exceptions, Plaintiffs also lacked Article III standing because they did not allege "that they have submitted an application for funding that was denied, or that they are otherwise entitled to an award from the purported trust." *Id.* at 11 n.9.[4]

---

[3] The Yahoo Defendants also argued that Plaintiffs' claims were time barred, but the Court's order dismissing the FAC did not reach this alternate ground. *See* Dkt. 41 at 16 n.3.

[4] The Court also granted their co-defendants' motions to dismiss. Dkt. 40. Plaintiffs are mistaken in claiming that the judgment for all defendants here does not comply with Rule 58's requirement of a "separate document." Dkt. 42 at 3 n.3. Rule 58 was met by the Court's entry of a "sufficiently terse" order that is "distinct from any opinion or memorandum" and which "disposes of all remaining claims." *Kidd v. D.C.*, 206 F.3d 35, 37 (D.C. Cir. 2000). The March 30 order plainly suffices. *See* Dkt. 40.

3

After 11pm on April 26 (the night before the filing deadline), Plaintiffs told defendants they would be filing this Rule 59 motion. Despite the rules requiring parties to discuss in good faith proposed motions, Plaintiffs made no attempt to do so. The following day, Plaintiffs filed the instant motion, attaching the 62-page SAC, which has some 13 pages of new allegations.

### III.   Legal Standard

Plaintiffs seek to alter the Court's judgment in defendant's favor pursuant to Rule 59(e) of the Federal Rules of Civil Procedure. The D.C. Circuit and this Court have explained such motions are an "extraordinary," "disfavored" remedy. *See Leidos, Inc. v. Hellenic Republic*, 881 F.3d 213, 217 (D.C. Cir. 2018); *Niskey v. Johnson*, 2014 WL 5371082, at *1 (D.D.C. Oct. 22, 2014) (Bates, J.). Accordingly, Plaintiffs "bear[] the burden of establishing extraordinary circumstances warranting relief from a final judgment." *Niskey*, 2014 WL 5371082, at *1.

Specifically, Plaintiffs must show there has been an "intervening change of controlling law, the availability of new evidence, or the need to correct a clear error or prevent manifest injustice." *Firestone v. Firestone*, 76 F.3d 1205, 1208 (D.C. Cir. 1996). As this Court has explained, Rule 59(e) motions cannot "be used to relitigate old matters, or to raise arguments or present evidence that could have been raised prior to the entry of judgment." *Nat'l Wildlife*, 318 F.R.D. at 5 (citing *Exxon Shipping Co. v. Baker*, 554 U.S. 471, 486 n.5 (2008)). Nor is it a "chance for a party to correct poor strategic choices." *Id.* (citing *SEC v. Bilzerian*, 729 F. Supp. 2d 9, 15 (D.D.C. 2010)).

Plaintiffs' heavy burden exists for good reason. "The strictness with which such motions are viewed is justified by the need to protect both the integrity of the adversarial process in which parties are expected to bring all arguments before the court, and the ability of the parties and others to rely on the finality of judgments." *Id*. at 5. "Court[s] will not grant Rule 59(e) relief on the basis of … arguments that [plaintiffs] had a full and fair opportunity to present." *Id*.

4

**IV.     Plaintiffs Cannot Carry Their Heavy Burden, And This Motion Should Be Denied.**

Plaintiffs are not entitled to relief under Rule 59(e) for at least three reasons.  First, they improperly reargue the parties' motions to dismiss briefing.  Second, a cursory review of the Court's Order confirms it correctly determined that any amendment would be futile here.  Third, the new allegations in Plaintiffs' proposed SAC confirm the futility of any proposed amendment.

**A.     Plaintiffs Improperly Seek to Relitigate the Court's Memorandum.**

Plaintiffs misunderstand the purpose of Rule 59(e) motions, which provide a procedural mechanism to alter a judgement where there is "an intervening change of controlling law, the availability of new evidence, or the need to correct a clear error or prevent manifest injustice." *Firestone*, 76 F.3d at 1208.  Such motions may not be used to "relitigate old matters," *Nat'l Wildlife*, 318 F.R.D. at 5—yet this is exactly what Plaintiffs do here, spending much of their brief rearguing old points.  *See* Dkt. 42 at 10-13.  They contend that the Court misinterpreted the *Wang* Settlement and cite 16 cases and two treatises for why they, and not the Court, are right.  But "the Court will not grant Rule 59(e) relief on the basis of … arguments that [plaintiffs already] had a full and fair opportunity to present." *Nat'l Wildlife*, 318 F.R.D. at 5.

**B.     The Court's March 30 Order Confirms that Amendment Would Be Futile.**

Plaintiffs' argument that the Court failed to explain why the deficiencies of their previous complaints could not be cured, Dkt. 42 at 4, should also be rejected.  The Order makes clear that no amount of new factual allegations will change the plain language of the *Wang* Settlement, which disclaims any intention to create a charitable trust.  *See* Dkt. 41 at 6-8.

The Court recognized, and Plaintiffs concede, Dkt. 42 at 10-13, that their claims were predicated on whether the *Wang* Settlement created a charitable trust.  The Court reviewed that written agreement and found no such intent by Yahoo and accordingly rejected Plaintiffs' claims.

5

*See* Dkt. 41 at 8 ("Ultimately, plaintiffs have not plausibly alleged that the *Wang* settlement created a charitable trust. Hence, all of the claims that sound in trust will be dismissed.").

No matter how many new allegations Plaintiffs add, the language of the *Wang* Settlement will not change. Where, as here, dismissal is based on the plain language of a contract, dismissal with prejudice is warranted. *See, e.g., Sheldon v. Hart*, 2010 WL 113007, at *9 (N.D. W. Va. Jan. 8, 2010) (denying leave to amend because additional allegations "do not change the language of the contract"); *see also Moldea v. N.Y. Times Co.*, 22 F.3d 310, 319 (D.C. Cir. 1994) (affirming denial of leave to amend complaint where "the amended [c]omplaint could not withstand a motion to dismiss"). The Court's determination that further amendment would be futile was not "clear error," as Plaintiffs must show here, *Brink v. Cont'l Ins. Co.*, 787 F.3d 1120, 1128-29 (D.C. Cir. 2015), but rather was plainly correct. Moreover, there is no requirement that the Court *explicitly* state why the dismissal is with prejudice. *Cf.* Dkt. 42 at 4. As the Supreme Court has made clear, the reason for dismissal with prejudice may be "express," or it can be "apparent" from the dismissal order. *Forman v. Davis*, 371 U.S. 178, 182 (1962).

      **C.**     **Plaintiffs' Proposed SAC Does Not Change the Language of the *Wang* Settlement or Otherwise Cure the Deficiencies in their Prior Complaints.**

Leave to amend should be denied where amendment is futile, as Plaintiffs' own authorities confirm. *E.g.*, *Baltimore v. Pruitt*, 2017 WL 5198174, at *4 (D.D.C. Nov. 9, 2017). A review of Plaintiffs' proposed SAC confirms the futility of any further amendment here. It also confirms that Plaintiffs' new allegations could easily have been, but were not, included in its two previous complaints. *See Nat'l Wildlife*, 318 F.R.D. at 5 (Rule 59(e) motions may not be used "to raise arguments or present evidence that could have been raised prior to the entry of judgment").

*1. New trust allegations.*  The proposed SAC "alleges that prior to the YHR Fund, the LRF did not have a program equivalent to the YHR Fund's purpose of providing humanitarian and legal assistance to Chinese dissidents imprisoned for expressing their views online…, and that the LRF's mission is to conduct research and educational work, not to provide humanitarian assistance."  Dkt. 42 at 5 (citing Dkt. 42-1 ¶ 41).  Plaintiffs argue this new allegation adequately pleads the creation of a charitable trust, citing a footnote in *Family Federation for World Peace v. Hyun Jin Moon*, 129 A.3d 234, 247 n.20 (D.C. 2015).  But *Family Federation* does not help Plaintiffs.  The cited passage addressed whether *donors* (like Yahoo here, not Plaintiffs) have standing to enforce the terms of restricted grants that they make.  *Family Foundation* in no way creates a rule that every restricted grant of funds creates a charitable trust—much less vitiates the basic requirement that a donor must actually *intend* to create a charitable trust.  *See id.*; *Duggan v. Keto*, 554 A.2d 1126, 1133 (D.C. 1989) (settlor's intent "should be clearly manifested").[5]

The proposed SAC purports to add other "objective indicators" of a supposed intention to create a charitable trust, such as allegations that Yahoo imposed certain restrictions on how the LRF managed the proceeds from the *Wang* Settlement.  *See* Dkt. 42 at 6-7 (citing Dkt. 42-1 ¶¶ 41, 55, 107).  Plaintiffs contend these restrictions "support[] the existence of a trust," but again fail to explain how this alleged implied intent can possibly override the plain language of the *Wang* Settlement that disclaims any intent to create a charitable trust.

---

[5] Plaintiffs' other cited cases are similarly off-base.  In *D'Agrosa v. Coniglio*, 824 N.Y.S.2d 761 (N.Y. Sup. Ct. 2006), a charitable trust was found only after the court determined, "as a [matter] of law," that the settlement agreement evinced an intention to create a charitable trust.  The opposite occurred here.  *See* Dkt. 41 at 8.  *In re Khan*, 461 B.R. 343, 349 (E.D. Va. 2011), concerned an *express trust*, not a charitable trust, and the court held that an express trust was created because the trustee never held legal title to the funds at issue.  Here, by contrast, Plaintiffs do not dispute that the LRF held legal title to the funds.

Plaintiffs' new allegations that Yahoo was motivated by a "humanitarian" purpose when it executed the *Wang* Settlement fare no better. *See* Dkt. 42 at 7-8 (citing Dkt. 42-1 ¶ 42). As an initial matter, Plaintiffs try to establish Yahoo's motivations for settling the *Wang* litigation by relying in part on unnamed, anonymous sources. *See* Dkt. 42 at 8. Such speculative claims of course run afoul of *Iqbal* and its progeny, and are refuted by the very document, *i.e.*, the *Wang* Settlement, on which Plaintiffs' case hinges. In any event, Yahoo has never been shy about its desire—when executing the *Wang* Settlement, or operating its business—to advance human rights. *See* Dkt. 29-1 at 5 n.2 (discussing Yahoo Business & Human Rights Program).[6] Yahoo's commitment to human rights is not some "new" fact, and it does not alter the conclusion that the *Wang* Settlement evinces no intent to form a charitable trust. *Cf., e.g.*, GEORGE G. BOGERT & GEORGE T. BOGERT, THE LAW OF TRUSTS AND TRUSTEES § 324 (3d ed. 2017) ("Sometimes a person seeks to confer benefits on society by means other than through the use of a trust.").

As for Plaintiffs' new allegations that the charitable trust is in fact a "mixed trust," Dkt. 42 at 8, they fail to cite a single District of Columbia case recognizing so-called mixed trusts under District of Columbia law. Although some jurisdictions recognize them, others do not, *see* BOGERT, *supra* § 364 (noting that some jurisdictions such as New York reject charitable trusts that have non-charitable purposes, while others take a different approach), and this Court, "sitting in diversity[,] should normally decline to speculate on such a [novel] question of local doctrine," *Delahanty v. Hinckley*, 845 F.2d 1069, 1070 (D.C. Cir. 1988). And again, in any event, adding conclusory "mixed-trust" allegations cannot help Plaintiffs overcome the plain language of the *Wang* Settlement, which disclaims *any intention* to form a trust—charitable,

---

[6] Indeed, Yahoo spent $17.3 Million to fund the "*Yahoo! Human Rights Fund*." Dkt. 29-5 at 112 (emphasis added).

mixed, or otherwise.  No amount of new allegations can change what the document says.  *See supra* at 6.

  *2. New constructive trust allegations*.  To get around the obvious deficiencies of their charitable trust theory, plaintiffs propose an additional cause of action, seeking the imposition of a constructive trust.  *See* Dkt. 42 at 14-15 (citing Dkt. 42-1 ¶¶ 167-68).  However, District of Columbia law is clear that a constructive trust is a remedy, not an independent cause of action.  *See Ross v. Hacienda Co-op., Inc.*, 686 A.2d 186, 191 (D.C. 1996) ("The imposition of a constructive trust is an equitable remedy."); *Macharia v. United States*, 238 F. Supp. 2d 13, 31 (D.D.C. 2002), *aff'd*, 334 F.3d 61 (D.C. Cir. 2003) ("[A] constructive trust is not an independent cause of action.").  Accordingly, the proposed addition of this new claim does not save the proposed SAC from futility.  The claim is also infirm because it requires Plaintiffs to plausibly allege "fraudulent[] or wrongful[]" conduct by defendants which, as explained above and in all prior briefing, Plaintiffs have failed to do.  *U.S. v. Taylor*, 867 F.2d 700, 703 (D.D.C. 1989).

  *3. New standing allegations*.  The SAC also fails to adequately allege that Plaintiffs have standing.  The Court held that Plaintiffs lack standing because "the general rule with respect to charitable trusts is that only a public officer, usually the state Attorney General, has standing to bring an action to enforce the terms of a charitable trust." Dkt. 41 at 8.  Plaintiffs do not qualify.

  The Court further held that, even though there is an "exception[]" to this general rule—for "small and distinct" beneficiary classes—Plaintiffs do not qualify there either.  *Id.* at 9.  The SAC does not and cannot fix this deficiency.  *First*, Plaintiffs now make the conclusory claim that their proposed beneficiary class consists of 800 to 1,200 people in China, Dkt. 42 at 14 (citing Dkt. 42-1 ¶¶ 142-44), but as the Court recognized, the *Wang* Settlement contemplates other individuals outside China possibly receiving legal or humanitarian funding.  *E.g.*, Dkt. 41 at 10 (proposed class consists of people "primarily,' *but not exclusively* … in China") (emphasis

9

added).  *Second*, Plaintiffs' estimate of potential beneficiaries in China is simply wrong.  Their 800-to-1,200 person figure is based on "current cases" in the U.S. Congressional-Executive Committee database, but as the proposed SAC makes clear, some *8,000 more people* are listed.  *See* Dkt. 42-1 ¶ 138 ("The U.S. Congressional-Executive Committee on China[] maintains a Political Prisoner Database that contains more than 9,100 entries.").  *Third*, as the Court held, there is no "temporal[] limit" on who can benefit, *see* Dkt. 41 at 10; thus, Plaintiffs' estimate, which considers only *current* prisoners, again significantly undercounts the proposed class.  *Last*, even if the class included only 800 to 1,200 people, that group is still far too large, far too far from the United States, and far too disparate in terms of their claims for the Court to consider them as proper plaintiffs in a trust case.  *See, e.g.*, Dkt. 41 at 10-11 (canvassing case law, including D.C. Court of Appeals decision holding that class consisting of "those who regularly attended and financially contributed to a single church in Washington was too 'uncertain and limitless' to confer standing").

  Like the FAC, the SAC also fails to allege not only standing under governing trust law, but under Article III standing principles.  As the Court held, seven Plaintiffs lack Article III standing because they never "submitted an application for funding that was denied," or otherwise plausibly alleged "that they are … entitled to an award from the purported trust."  Dkt. 41 at 11 n.9.  The SAC does not alter that conclusion.  For example, Plaintiff He alleges that he previously applied and received humanitarian assistance, but "not as much as he would have received had Defendants administered" the funds "lawfully."  Dkt. 42-1 ¶ 10.  Yet He fails to allege any concrete facts to support this mere legal conclusion, such as how much he requested and what he was awarded.  His barebones allegations are far too speculative to survive a motion to dismiss.  *See* Dkt. 41 at 11 n.9; *Massey v. D.C.*, 2015 WL 9310126, at *1 (D.C. Cir. Dec. 9, 2015) ("sparse, conclusory, and unsupported allegations [a]re inadequate to allow the court to

10

draw the reasonable inference that the defendant is liable for the misconduct alleged"); *Si v. Laogai Research Found.*, 71 F. Supp. 3d 73, 84 (D.D.C. 2014) ("plaintiff must provide 'more than an unadorned, the-defendant-unlawfully-harmed-me accusation'").

## V.     Conclusion

For these reasons (and for those advance by the other defendants), the Court should deny Plaintiffs' Motion seeking to undo the final judgment against them.

Dated:   May 17, 2018

Respectfully Submitted,

By: /s/ Matt Kline
   Matthew T. Kline

Matthew T. Kline (*pro hac vice*)
  mkline@omm.com
Patrick S. McNally (*pro hac vice*)
  pmcnally@omm.com
O'MELVENY & MYERS LLP
1999 Avenue of the Stars, 8th Floor
Los Angeles, CA 90067
Telephone:    (310) 553-6700
Facsimile:    (310) 246-6779

Brian Boyle (D.C. Bar No. 419773)
  bboyle@omm.com
O'MELVENY & MYERS LLP
1625 Eye Street NW
Washington, DC 20006
Telephone:    (202) 387-5327
Facsimile:    (202) 383-5414

*Attorneys for Defendants Yahoo! Inc., Ronald Bell, and Michael Callahan*

## **CERTIFICATE OF SERVICE**

      I hereby certify that on May 17, 2018, I caused the foregoing document to be electronically filed with the clerk of the United States District Court for the District of Columbia using the CM/ECF system, which will send notification of such filing to the e-mail addresses denoted on the electronic Mail Notice List.

      Executed on May 17, 2018, in Los Angeles, California.

                                                  /s/ Matt Kline
                                                  Matthew T. Kline