IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| HE DEPU, *et al.*,<br><br>    Plaintiffs,<br><br>    v.<br><br>YAHOO! INC., *et al.*,<br><br>    Defendants. | Case No. 1:17-cv-00635-JDB<br><br>Judge John D. Bates |

**DEFENDANTS THE LAOGAI RESEARCH FOUNDATION'S, LAOGAI RESEARCH FOUNDATION'S AND LAOGAI HUMAN RIGHTS ORGANIZATION'S MEMORANDUM IN OPPOSITION TO PLAINTIFFS' MOTION TO ALTER THE JUDGMENT AND PLAINTIFFS' MOTION TO AMEND THE COMPLAINT**

Defendants The Laogai Research Foundation ("LRF-CA"), Laogai Research Foundation ("LRF-VA"), and the Laogai Human Rights Organization, by counsel, file this Opposition to Plaintiffs' Motion To Alter The Judgment and Plaintiffs' Motion To Amend The Complaint (collectively, the "Motion".)

After this Court granted Defendants' Motions to Dismiss Plaintiffs' second attempt at a complaint[1], on several grounds, Plaintiffs seek to have the Court vacate its Order and allow them a third attempt at pleading a viable cause of action. Plaintiffs' Motion, purportedly brought under Rule 59(e) and Rule 15(a), simply seeks to reargue the Motion to Dismiss, is improper, and should be summarily denied.

First, it is well settled that Rule 59(e) cannot be used to present arguments or allegations that were available to the party before judgment. All of the arguments in the Motion and all the allegations added by the Plaintiffs in their proposed new Complaint were available to them when

---

[1] Plaintiffs' First Amended Complaint ("FAC") was filed in response to Defendants' Motions to dismiss the original Complaint.

1

their Opposition to the Motions to Dismiss were filed; indeed, they were available when the Plaintiffs' first Complaint was filed in April 2017.  Second, Plaintiffs misapprehend the Court's Memorandum Opinion ("Opinion").  Plaintiffs apparently believe that by adding new conclusory allegations to the dismissed complaint, they are able to cure the defects of their pleading.  They cannot.  The Court's opinion found that the FAC must be dismissed because Plaintiffs' allegations were not plausible: not because they were missing certain formulaic words, but because they were contradicted by the very documents that Plaintiffs relied upon as the basis of their claims.  Opinion at 6-10 (Dkt. 41).  Finally, the Motion must be denied because any amendment would be futile, as Plaintiffs' third feckless attempt at a Complaint clearly shows.

The proposed new Complaint ("SAC") makes several changes, none of which merit reconsideration of any facet of the Court's decision.  First, Plaintiff Yu Ling, the sole plaintiff who was a party to the Wang Settlement, has now been removed as a plaintiff, together with her frivolous claims which she released seven years ago; with the removal of Yu, only the "Beneficiary Plaintiffs" remain, none of whom are parties to the Wang Settlement and thus have no standing to seek its rescission or modification.  Second, the remaining plaintiffs have added a few scattered conclusory allegations, which they mistakenly believe are sufficient to address the FAC's incurable defects.[2]  Finally, they have added a sixth "alternative" count for imposition of a constructive trust, which is not even a cause of action in the District of Columbia.   Dkt. 42-1.

---

[2] For example, the dismissed Complaint cited repeatedly the "primary humanitarian purpose" of the Wang Settlement.  As the Motions to Dismiss pointed out, this phrase is not to be found in the Wang Settlement, and the Court held that it could find no such obligation in that document.  Opinion at 14.  Undaunted by this ruling, the new complaint simply rephrases the term "primary humanitarian purpose" to the newly-invented "Humanitarian Assistance Program," a phrase that again cannot be found in the Wang Settlement.  This amounts to a renaming of the deck chairs on the Titanic.

2

## THE COURT'S MEMORANDUM OPINION

The Court's Opinion dismissed the FAC's trust counts on two grounds.  First, the Court found that the complaint did not meet the requirements of *Iqbal* in plausibly alleging that the Wang Settlement created a charitable trust.  *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 545 (2007).  The Court noted that the Wang Settlement (Dkt. 29-5) was a contract that did not purport to be a trust document, unlike the 2009 Yahoo Trust.  Opinion at 7.  Furthermore, the Wang Settlement's express provisions contradicted the FAC's conclusory allegations of an intent to create a trust.[3]  *Id.* at 7-8.

Second, the Court found the FAC must be dismissed on the additional grounds that the Beneficiary Plaintiffs did not have standing to enforce the "trust" they alleged.  The Court noted that the general rule is that only public officials, such as attorneys general, have standing to enforce the terms of a charitable trust.  *Id.* at 8-9.  In order to avoid this bar, the Court stated, the Plaintiffs must plausibly allege that they are members of a small and distinct beneficiary class, or otherwise have a special interest in the trust.  *Id.* at 9.  The Court found that the FAC did not allege a special interest in the trust, and that the proposed class of beneficiaries of the purported trust – individuals from any country, not just China, who had been persecuted for expressing their views online, at any time – was far too large to qualify as a small and distinct class.[4]  *Id.* at 9-10.

---

[3] The Opinion noted that the Wang Settlement expressly disclaimed the intent to create any third party beneficiaries, and stated the intent of Yahoo was not to create a trust, but to resolve the dispute between it and the *Wang* plaintiffs. *Id.* at 7-8.

[4] The FAC admitted that the potential beneficiaries in China alone were "many" as long ago as 2007, and the Court noted that that number could only have grown, given the number of internet users in China and China's repressive approach to online freedom. *Id.* at 10. The same allegation of many potential beneficiaries remains in the proposed SAC. SAC, ¶ 28.

The Court also ruled that Yu's claims for breach of the Wang Settlement and unjust enrichment had been released, and also failed to state a claim. *Id.* at 11-16. Given these defects, the Court dismissed the FAC, without reaching the numerous other arguments that Defendants raised, including the bar of the statute of limitations, or the statutory immunity of non-profit organizations such as LRF and LHRO from suits by members of the public at large.[5] *Id.*

Plaintiffs' response to the Court's Opinion in its Motion is simple: the Court is wrong, and their case should <u>not</u> have been dismissed. To overcome the Court's finding that no charitable trust had been created by the Wang Settlement, the proposed new Complaint adds new conclusory allegations that allege that Yahoo <u>did</u> intend to create a trust in the Wang Settlement. To overcome the Court's finding that the proposed beneficiary class is too large to create standing, the proposed new Complaint adds new, equally conclusory allegations that the class is no larger than 1200 people.

All the new allegations in the SAC, and all the arguments made in the Motion, were available to Plaintiffs when the Motion to Dismiss was briefed. Indeed, many of the arguments in the Motion <u>were</u> previously made by Plaintiffs in opposing the Motion to Dismiss.

I.  <u>Rule 59 cannot be used to reargue the Motion to Dismiss.</u>

A Rule 59 motion may be only be granted if "there is an intervening change of controlling law, the availability of new evidence, or the need to correct a clear error or prevent manifest injustice." *Ciralsky v. CIA*, 355 F.3d 661, 671 (D.C. Cir. 2004). "Rule 59(e) is not a vehicle to present a new legal theory that was available prior to judgment." *Patton Boggs LLP v. Chevron Corp.,* 683 F.3d 397, 403 (D.C. Cir. 2012).

---

[5] *See* LRF Brief at 28-36 (Dkt. 27-1); LHRO Brief at 4 (Dkt. 28-1); Yahoo Brief at 19-27 (Dkt. 29-1).

A Rule 59(e) motion may not be used to raise arguments or present evidence that could have been raised prior to the entry of judgment. *GSS Grp. Ltd v. Nat'l Port Auth.*, 680 F.3d 805, 812 (D.C. Cir. 2012). Nor may such a motion be used as a vehicle to raise the same arguments that a party originally made or to present evidence that was previously available. *Messina v. Krakower,* 439 F.3d 755, 759 (D.C. Cir. 2006).

Yet that is precisely what Plaintiffs' Motion seeks to do. To overcome the Court's finding that Plaintiffs' Complaint failed to plausibly allege that the Wang Settlement was a trust, the Motion simply reargues the Motion to Dismiss by repeating its previous arguments, or by highlighting parts of the record that Plaintiffs failed to emphasize before. *See, e.g.,* SAC, ¶ 41 (Dkt. 42-1). For example, despite the Court's ruling to the contrary, Plaintiffs simply re-argue that there is language in the Wang Settlement that <u>could</u> support a finding of an intent to create a charitable trust: for example, the Wang Settlement prohibited "commingling" of funds, or the Yahoo payments were made "in trust." Motion at 6-7 (Dkt. 42).

Likewise, to overcome the Court's finding that the Plaintiffs' proposed class of beneficiaries is not small enough to create private standing, Plaintiffs' SAC adds additional conclusory allegations that the class is, based solely on Plaintiffs' spurious estimates, small enough to create standing. *Id*. at 14; *see* SAC, ¶¶ 138-145. Plaintiffs allege that the beneficiary class is no more than 1200 persons, apparently believing that this *ipse dixit* allegation is enough to overturn the Court's decision that the purported class was far too large to allow private standing.

On this point, Plaintiff's arguments, and math, are embarrassingly flawed. First, Plaintiffs simply ignore the Court's finding that the proposed class, as defined by the Wang Settlement language upon which Plaintiffs rely, "includes individuals persecuted for expressing

5

their views 'online' through 'Yahoo or another medium,' …; (2) is 'primarily,' but not exclusively, limited to individuals in China,… and (3) is not temporally limited at all." Opinion at 10 (citations omitted).  Plaintiffs simply ignore the Court's ruling and rewrite the uncontestable language of the Settlement to allege that the class is really limited to (1) Chinese persons (2) who are imprisoned in China (3) for exercising their freedom of expression (4) online.  SAC, ¶ 136.  Plaintiffs' new proposed Complaint thus ignores not only the Court's definitive ruling on this issue, but the actual language of the Wang Settlement upon which the ruling was soundly based.

To arrive at their new contention that the class of potential beneficiaries is no more than 1200, not only do Plaintiffs rewrite the very document that they claim establishes the "trust,'" but they resort to brazen manipulation of incomplete, partial data and outright guessing.  For example, Plaintiffs cite a Congressional-Executive Committee on China ("CECC") database, juggle the numbers therein, and declare that it shows only 633 potential beneficiaries in their proposed class.  SAC, ¶¶ 138 et seq.  The CECC database itself states: "The Commission cannot guarantee all information in the [database] is completely up-to-date or accurate."  *See* https://www.cecc.gov/ppd-frequently-asked-questions-faqs.  Nonetheless, if one searches the "inaccurate" CECC database for political prisoners imprisoned for "speech," the database returns a list of 5,931 persons, or roughly ten times what the SAC claims.[6]

Another one of Plaintiffs' cited sources, the Network of Chinese Human Rights Defenders ("CHRD") database, reports, "as partial data," 2,761 cases of arrested human rights

---

[6] All of the Beneficiary Plaintiffs except Xu Yonghai are listed as having been imprisoned for "speech" and thus show up in the list of 5,931 persons, a list which the CECC admits is not complete or up-to-date.

activists from 2012-15, a four-year period, alone.[7] In other words, the <u>partial</u> data shows almost 700 potential beneficiaries being created every year -- in China alone. It is impossible to guess whether this partial data equates to 20 percent, 50 percent, or 80 percent of the actual number of arrested activists; nonetheless, even at face value, plaintiffs' cited data extrapolates to a class of potential beneficiaries, in China alone, in the tens of thousands, far more than the SAC's completely unsupported and utterly implausible allegation of 800-1200 total. Plaintiffs simply ignore the Court's correct finding that the proposed class of beneficiaries is unlimited in time and is not restricted to China.

Again, none of the new allegations of the SAC are newly-discovered, and Plaintiffs do not contend that they are. Indeed, many of these allegations were specifically argued by Plaintiffs, and specifically dismissed by the Court in its decision. *See, e.g.,* Order at 6-7 (rejecting argument that use of words "in trust" created a trust.) To the extent that Plaintiffs now seek to have the Court consider other provisions of the Settlement that they failed to previously emphasize, that argument comes far too late. *See Messina v. Krakower,* 439 F.3d 755, 759 (D.C. Cir. 2006) (Rule 59(e) motion may not be used to raise the same arguments that a party originally made or to present evidence that was previously available).

Indeed, this case bears a striking resemblance to *Nat'l Wildlife Fed'n v. United States Army Corps of Eng'rs*, 318 F.R.D. 1, 3-4 (D.D.C. 2016). There, this Court had granted summary judgment against plaintiffs for lack of standing. The plaintiffs then filed a Rule 59(e) motion to alter or amend the judgment, arguing that they should have been granted additional briefing on the issue of standing, and also that it was error for the Court to deny leave to amend their complaint. The Court denied the motion, ruling that neither the failure to allow additional

---

[7] SAC, ¶ 144. *See* https://www.nchrd.org/2016/03/deprivation-of-liberty-and-tortureother-mistreatment-of-human-rights-defenders-in-china-partial-data-updated-6302013/.

7

briefing nor the failure to grant leave to amend were proper grounds for relief under Rule 59(e). The Court rejected the very argument that Plaintiffs make here: that they should be allowed yet another opportunity to present additional or more polished arguments to overturn the Court's decision. *Id.* at 3-4. "[T]he Court will not grant Rule 59(e) relief on the basis of standing arguments that the conservation groups had a full and fair opportunity to present." *Id.* at 5.

The full text of the Wang Settlement was before the Court, and is the reason why the Court found no charitable trust had been created. Every paragraph, provision, or phrase contained in the Wang Settlement was available to be argued by Plaintiffs and considered by the Court in its decision. Likewise, the incomplete human rights databases that Plaintiffs manipulate to challenge its finding regarding class size were equally available to Plaintiffs, had they cared to use them.[8]

Plaintiffs simply are stating the Court's decision is wrong, and the Court should vacate its Opinion in light of other provisions of the Wang Settlement that they now wish to emphasize to the Court. All of these arguments and data (however suspect) were available to the Plaintiffs prior to filing their brief in opposition and surreply in this case. Under Rule 59(e), they may not be relitigated now.

II.   Plaintiffs misconstrue the Court's decision.

To make the case that the dismissal of the FAC should have been without prejudice, Plaintiffs overlook the basis of the Court's ruling. While the Court, in dismissing Plaintiffs' claims, properly phrased its decision in terms of the *Iqbal* standard of a failure to plausibly allege

---

[8] The CECC database has been in existence since 2000, according to the Dui Hua website. *See* https://duihua.org/wp/?page_id=195. The CHRD database was begun in March 2013 and was last updated two years ago, in April 2016, according to the CHRD database. *See* https://www.nchrd.org/2016/03/deprivation-of-liberty-and-tortureother-mistreatment-of-human-rights-defenders-in-china-partial-data-updated-6302013/.

entitlement to relief, the basis of the Court's finding was not that the FAC had failed to recite some magic, formulaic words. Rather, the finding of lack of plausibility proceeded from the fact that the Plaintiffs' allegations were contradicted by the very document upon which Plaintiffs' entire case depended – the Wang Settlement. Opinion at 7-8, 10.

Where the documents referred to in the complaint contradict the factual allegations of the complaint, the document, not the allegation, is accepted. "Nor must we accept as true the complaint's factual allegations insofar as they contradict exhibits to the complaint or matters subject to judicial notice." *Kaempe v. Myers*, 367 F.3d 958, 963 (D.C. Cir. 2004). "[W]here a conclusory allegation in the complaint is contradicted by a document attached to the complaint, the document controls and the allegation is not accepted as true." *Edwards v. Ocwen Loan Servicing, LLC*, 24 F. Supp. 3d 21, 26 n. 4 (D.D.C. 2014) (emphasis supplied).

Thus, the Court's finding that there was no charitable trust created by the Wang Settlement was not based on the FAC's inadvertent omission of one of the elements of its causes of action, but on the fact that the express language of the Wang Settlement defeated Plaintiffs' conclusory allegations that it created a trust. Opinion at 7-8. Likewise, the Court's finding that the proposed class of beneficiaries was too large to confer standing on any individual was based not on Plaintiffs' failure to allege a (wholly-invented) finite number of beneficiaries, but on the actual language of the Wang Settlement that identified a virtually unlimited class of potential beneficiaries. *Id.* at 10.

Thus, the FAC failed, and the SAC also fails, because the language of the Wang Settlement, the document that supposedly created the imaginary "trust," clearly indicates that no such trust was created. Plaintiffs cannot plead around, or revise, the language of the Wang

9

Settlement that defeats their claims. No amendment supplying additional conclusory allegations can solve Plaintiffs' failure to state a claim.

### III. The proposed Amendment is futile.

Plaintiffs allege that because the Court failed to specifically state in its Order that the allegation of additional facts would not cure the deficiency, that a dismissal with prejudice is improper and would constitute "clear error." Motion at 3-4. This specious argument is easily dealt with: the amendment would indeed be futile. As the Court found, it is the very language of the Wang Settlement that precludes Plaintiffs' entire theory of a trust. No amount of re-pleading and re-arguing can change the language of a document written in 2007.

#### A. The essential arguments of the SAC have already been ruled upon by the Court.

Plaintiffs fail to acknowledge that the SAC's "new" allegations are merely those that the Court has already ruled on, dressed up in different titles. While the new proposed SAC drops Yu Ling as a plaintiff, her claims, dismissed by the Court, have been simply regurgitated by the remaining Beneficiary Plaintiffs.

In dismissing Yu's claims for breach of the Wang Settlement, the Court noted:

> [T]he amended complaint is completely lacking any reference to a section or provision of the Wang Settlement that defendants supposedly violated. Instead, Yu provides generalized allegations of breach that are untethered to the actual contractual provisions. For example, her allegation that "[t]he Settlement was breached upon . . . the depletion of Trust assets to such an extent that it culminated in the breach of the Settlement," FAC ¶ 144, is conclusory, circular, and fails to identify a settlement provision that was breached. Her claim that a breach occurred because defendants depleted the trust assets and did not use them exclusively (or primarily) "to provide humanitarian and legal assistance" to Chinese dissidents, id., ignores that the Wang Settlement expressly permits the YHRF to be spent to "resolve claims primarily by such persons . . . ; and . . . for payment of [LRF's] operating expenses and the Foundation's education work conducted in the United States in support of human rights." Wang Settlement at 113. Similarly missing from the amended complaint is an identification of any

10

>contractual provision tied to the alleged breach arising from Yahoo's failure to "review all of Wu and the LRF's activities." FAC ¶ 144. And the alleged termination of the "primary" humanitarian purpose is not a breach that plaintiff has connected to any obligation found in the settlement agreement.

Opinion at 14. Yet the SAC makes these very same baseless and dismissed claims, on behalf of the Beneficiary Plaintiffs, merely titling them as "Breach of Trust," rather than "Breach of Settlement." SAC, ¶¶ 149-154. The same result – dismissal – would await them.

Rather than alleging that the Settlement's "primary humanitarian purpose" was breached or terminated, the Plaintiffs rename it as the "Humanitarian Assistance Program," another phrase nowhere to be found in the Wang Settlement, and make the exact same allegations that the Court has already dismissed as to Yu's breach of settlement claims. The SAC asserts Defendants breached their duties by "depleting," or "permitting the depletion of," YHR Fund assets in violation of the "Humanitarian Assistance Program." SAC, ¶¶ 62, 100, 110, 116, 147, 151, 153, 166.[9] The Court found this claim "ignores that the Wang Settlement expressly permits the YHRF to be spent to 'resolve claims primarily by such persons . . . ; and . . . for payment of [LRF's] operating expenses and the Foundation's education work conducted in the United States in support of human rights.'" Opinion at 14. Likewise, the SAC asserts that the Defendants

---

[9] Compare, for example, the SAC's paragraph 153

>By their conduct, Defendants breached duties of trust owed to Plaintiffs and caused the **YHR Fund and Humanitarian Assistance Program assets** to be systematically and unlawfully depleted in violation of the **Humanitarian Assistance Program** and caused the Humanitarian Assistance Program to be unlawfully terminated.

(SAC, ¶ 153) (emphasis supplied) to the original in the dismissed FAC's paragraph 129:

>By their conduct, Defendants breached duties of trust owed to the Beneficiary Plaintiffs, and caused the **Trust assets** to be systematically and unlawfully depleted in violation of the **Trust's primary humanitarian purpose**, and to be unlawfully terminated.

(FAC, ¶ 129) (Emphasis supplied). Plaintiffs have done no more than execute a global "search and replace," substituting "Humanitarian Assistance Program" for "Trust" and "humanitarian purpose." The examples are countless. This is not even new wine in old skins: it is the same wine, in the same skins.

11

breached duties by "terminating the Humanitarian Assistance Program." SAC, ¶¶ 74, 134, 147, 151, 153, 166. Yet this is exactly the same claim that the Court held could not be connected to any obligation found in the Wang Settlement: "the alleged termination of the 'primary' humanitarian purpose is not a breach that plaintiff has connected to any obligation found in the settlement agreement." Opinion at 14. Slapping a new label on the non-existent "primary humanitarian purpose" still does not create an obligation that the Wang Settlement does not contain.

The Court has already ruled on these same frivolous claims, and found that these "breaches" do not correspond to any obligation that can be found in the Wang Settlement. *Id.* Dressing these dismissed breach of contract claims up in the guise of breach of trust claims does not change the provisions of the Wang Settlement, or the legal result. The SAC cannot be amended to state a claim, amendment would thus be futile, and the motion for leave must be denied.

B. <u>The new Sixth Count fails to state a claim.</u>

Plaintiffs argue that by adding a previously unpleaded sixth count, for "imposition of constructive trust," that the SAC definitely now states a claim.[10] Motion at 14-15. The problem with Plaintiffs' argument is that there is no such cause of action in the District of Columbia.

A constructive trust is a remedy, not a claim. "[A] constructive trust is not an independent cause of action." *Macharia v. United States*, 238 F. Supp. 2d 13, 31 (D.D.C. 2002), *aff'd*, 334 F.3d 61 (D.C. Cir. 2003). *See also Ross v. Hacienda Co-op., Inc.*, 686 A.2d 186, 191 (D.C. 1996) ("The imposition of a constructive trust is an equitable remedy."). Thus, the SAC's

---

[10] The SAC also retains the civil conspiracy count that the Court dismissed on the basis that there were no torts alleged, and that civil conspiracy is not an independent cause of action. The SAC, like the FAC, alleges no torts.

"fail-safe" sixth count for constructive trust would also have to be dismissed for failure to state a claim.

      C.   <u>Amendment would be futile, based on the other numerous arguments made in Defendants' Motions to Dismiss and not ruled upon by the Court.</u>

Finally, awaiting the meritless SAC is a host of additional arguments contained in Defendants' previous Motions to Dismiss that the Court did not reach, given the utter failure of the FAC to state a claim under the *Iqbal* standard. Those arguments include the bar of the statute of limitations,[11] and the immunity of non-profit organizations like LRF and LHRO from suits by the general public.[12]

In particular, what bars the SAC is that it requires the Court to strike an essential, integral, and non-severable part of the Wang Settlement, the provision which enables the use of the Yahoo Funds for the operational and educational expenses of the LRF. Plaintiffs' SAC, like their FAC, asks the Court rewrite the terms of the Wang Settlement to bar the use of the Yahoo Funds as the parties to the Wang Settlement prescribed. As noted in LRF's Brief, this amendment to the Wang Settlement cannot be brought by the Beneficiary Plaintiffs, and is expressly barred by the Settlement itself. Section IV.P of the Wang Settlement states that Section II, which contains the provisions that Plaintiffs ask the Court to excise, is essential to the Agreement, and cannot be severed from the Agreement. See LRF Brief at 12-13 (Dkt. 27-1).

---

[11] The allegations in the Complaint show indisputably that Plaintiffs' alleged injuries and Defendants' alleged wrongful acts occurred well before April 11, 2014 -- i.e., more than three years prior to the filing of this action. The Yahoo Brief painstakingly details the acts that put Plaintiffs on notice of their alleged claims, and the applicable law that bars each claim. Dkt 29-1 at pp. 18-26. Defendants incorporate those arguments again.

[12] The LRF Defendants incorporate herein the arguments contained on those issues in the Defendants' previous Briefs. LRF Brief at 28-33 (Dkt. 27-1); LHRO Brief at 4 (Dkt. 28-1).

## **CONCLUSION**

For all of the foregoing reasons, the Court should deny Plaintiffs' Motion in its entirety, and to grant such other relief the Court deems proper.

Respectfully submitted,

*/s/ David I. Bledsoe*---------------------

David I. Bledsoe
DC Bar No. 422596
600 Cameron Street
Alexandria, VA  22314
703-379-9424
703-684-1851(fax)
bledsoelaw@earthlink.net


*/s/ George E. Kostel*-------------------

George E. Kostel
DC Bar No. 1000015
Email: georgekostel@impresalegal.com
Impresa Legal Group
3033 Wilson Boulevard
Suite 700
Arlington, VA 22201
Telephone: (703) 842-0660
Facsimile: (703) 684-1851


*Counsel for the Laogai Defendants*

## CERTIFICATE OF SERVICE

I hereby certify that on May 18, 2018, I caused the foregoing document to be electronically filed with the clerk of the United States District Court for the District of Columbia using the CM/ECF system, which will send notification of such filing to the e-mail addresses denoted on the electronic Mail Notice List.

/s/ David I. Bledsoe----------------------

David I. Bledsoe
DC Bar No. 422596
600 Cameron Street
Suite 203
Alexandria, VA  22314
703-379-9424
703-684-1851(fax)
bledsoelaw@earthlink.net