## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| IN RE: MID-AIR COLLISION IN WASHINGTON, D.C., JAN. 29, 2025 | Lead Case No. 1:25-cv-03382-ACR |
| Plaintiffs, | |
| v. | |
| American Airlines, Inc., PSA Airlines, Inc., and United States of America, | |
| Defendants. | |

## REPLY IN SUPPORT OF PSA AIRLINES, INC.'S
## MOTION TO DISMISS THE MASTER COMPLAINT

William F. Gould (Bar No. 428468)
HOLLAND & KNIGHT LLP
800 17th Street, NW
Washington, DC 20006
(202) 955-3000
william.gould@hklaw.com

Steven Raffaele (Bar No. NY0685)
Robert J. Burns (Bar No. NY0682)
Sarah Korapaty (Bar No. NY0684)
Qian (Sheila) Shen (Bar No. NY0693)
HOLLAND & KNIGHT LLP
787 Seventh Avenue
New York, NY 10019
(212) 513-3200
steven.raffaele@hklaw.com
robert.burns@hklaw.com
sarah.korapaty@hklaw.com
qian.shen@hklaw.com

Paul W. Hughes (Bar No. 997235)
Sarah P. Hogarth (Bar No. 1033884)
Mary H. Schnoor (Bar No. 1740370)
Alex C. Boota (Bar No. 90001014)
MCDERMOTT WILL & SCHULTE LLP
500 North Capitol Street NW
Washington, DC 20001
(202) 756-8000
phughes@mwe.com
shogarth@mwe.com
mschnoor@mwe.com
aboota@mwe.com

*Attorneys for Defendants American Airlines, Inc. and PSA Airlines, Inc.*

**ORAL ARGUMENT SCHEDULED FOR FEBRUARY 27, 2026, at 10:30 a.m.**

## TABLE OF CONTENTS

Table of Authorities ................................................................................................ ii

Introduction ........................................................................................................... 1

Argument ............................................................................................................... 2

    A.    Plaintiffs have not plausibly alleged that PSA breached any federal standard of care. ......................................................................................................... 3

        1.    The overlapping claims with American are preempted. ......................... 5

        2.    The circling approach claims are preempted. ........................................ 7

        3.    Plaintiffs have not plausibly alleged a see-and-avoid claim. ................. 9

    B.    The scheduling claims are expressly preempted by the Airline Deregulation Act. ......................................................................................................... 13

    C.    The common carrier claims should be dismissed. ....................................... 14

Conclusion ........................................................................................................... 15

i

# TABLE OF AUTHORITIES*

**Cases**

*Abdullah v. Am. Airlines, Inc.*,
   181 F.3d 363 (3d Cir. 1999)......................................................................2, 3, 4

*Administrator v. Lorenz*,
   2006 WL 208383 (NTSB Jan. 23, 2006) ......................................................10

*In re Air Crash Near Clarence Ctr.*,
   2013 WL 5964480 (W.D.N.Y. 2013) ..............................................................6

*Arbitraje Casa de Cambio, S.A. de C.V. v. United States Postal Serv.*,
   297 F. Supp. 2d 165 (D.D.C. 2003) ................................................................9

*Burbank v. Lockheed Air Terminal, Inc.*,
   411 U.S. 624 (1973)........................................................................................3

*Dania Beach v. FAA*,
   628 F.3d 581 (D.C. Cir. 2010) ........................................................................8

*French v. Pan Am Exp., Inc.*,
   869 F.2d 1 (1st Cir. 1989)...............................................................................4

*Haines v. Dep't of Transp.*,
   449 F.2d 1073 (D.C. Cir. 1971)...............................................................11, 13

*Joy v. Bell Helicopter Textron, Inc.*,
   999 F.2d 549 (D.C. Cir. 1993) ......................................................................11

*Morales v. Trans World Airlines, Inc.*,
   504 U.S. 374 (1992)......................................................................................14

*Park v. Hyatt Corp.*,
   436 F. Supp. 2d 60 (D.D.C. 2006) ................................................................15

*PLIVA, Inc. v. Mensing*,
   564 U.S. 604 (2011)........................................................................................6

*Quaid v. Kerry*,
   161 F. Supp. 3d 70 (D.D.C. 2016) ..................................................................9

*Sanchez v. Bay Area Rapid Transit Dist.*,
   2013 WL 4764485 (N.D. Cal. 2013) ............................................................14

*Shay v. Norwalk Taxi, Inc.*,
   2013 WL 1277294 (Conn. Super. Ct. 2013)..................................................14

*Sikkelee v. Precision Airmotive Corp.*,
   907 F.3d 701 (3d Cir. 2018)............................................................................6

*Tweed-New Haven Airport Auth. v. Tong*,
   930 F.3d 65 (2d Cir. 2019)..............................................................................8

---

*    Authorities marked with an asterisk are those on which we chiefly rely.

**Cases—continued**

*Walker v. King Cnty. Metro*,
109 P.3d 836 (Wash. 2005)........................................................................15

*\*Witty v. Delta Air Lines, Inc.*,
366 F.3d 380 (5th Cir. 2004) .......................................................................2

**Statutes**

49 U.S.C.
§ 1131......................................................................................................12
§ 40102(a)(32)...........................................................................................7
§ 40103......................................................................................................3
§ 41713....................................................................................................13
§ 44701(c).................................................................................................4

Airline Deregulation Act of 1978, Pub. L. No. 95-504, 92 Stat. 1705 ..............3

Federal Aviation Act of 1958, Pub. L. No. 85-726, 72 Stat. 731 .........3, 4, 5, 8

General Aviation Revitalization Act of 1994, Pub. L. No. 103-298, 108 Stat. 1552
(1994)......................................................................................................4

**Regulations**

14 C.F.R.
§ 5.21........................................................................................................7
§ 25.729..................................................................................................10
§ 25.1401..................................................................................................6
§ 91.13(a)............................................................1, 2, 3, 5, 9, 10, 11, 13
§ 91.113(b)...........................................................................................5, 12
§ 91.113(g)..............................................................................................12
§ 91.123.............................................................................................12, 13
§ 91.127..............................................................................................8, 12
Part 93 Subpart V.......................................................................................7
§ 93.125.....................................................................................................7
Part 121 Subpart G.....................................................................................5
§ 121.135...................................................................................................6
§ 121.354...................................................................................................6
§ 121.401(a)(1)..........................................................................................6
§ 125.91(a)................................................................................................6
Part 139....................................................................................................7

**Other Authorities**

FAA, Aeronautical Information Manual, § 5-4-5(f) .............................................8

FAA Advisory Circular 90-120 ........................................................................13

FAA, *Airplane Flying Handbook*, Chapter 18...................................................11

NTSB, "What We Found," *Midair Collision PSA Airlines Bombardier CRJ700
Airplane and Sikorsky UH-60 Military Helicopter* (Jan. 27, 2026)................12

## INTRODUCTION

Plaintiffs' opposition and the government's admission of liability confirm what PSA Airlines explained at the outset: there is no plausible claim that PSA did anything wrong. The complaint alleges that PSA's pilots accepted the FAA-designed circling approach to Runway 33 at air traffic control's request, complied with all clearance and right-of-way rules, and executed the landing approach precisely as federal law required. Plaintiffs never identify a single competing federal directive that the crew ignored or violated.

Plaintiffs' PSA-specific theories thus rest on a strange premise—that an airline can be held liable when its flight crew followed every applicable federal rule and every air-traffic-control instruction during a final approach into one of the most tightly regulated airspaces in the nation. The Supremacy Clause and the federal government's intensive regulation of aviation safety—in particular during the final moments of a landing approach at DCA—foreclose that theory, and Plaintiffs offer no coherent answer as to how PSA's compliance with every federal standard could nonetheless amount to a plausible claim.

Faced with that defect, Plaintiffs fall back on the general "careless or reckless" language of 14 C.F.R. § 91.13(a). But a catch-all regulation cannot convert compliance with detailed federal rules into a plausible tort claim, particularly where uniformity in air traffic control is paramount. Because Plaintiffs' own allegations establish that Flight 5342 was operated in accordance with governing federal law, their PSA-specific claims fail as a matter of law and should be dismissed.

The remaining claims against PSA should be dismissed too. Because federal law comprehensively governs aviation safety, including in each of the specific areas implicated by Plaintiffs' liability theories, the claims against PSA are preempted because Plaintiffs have not alleged that PSA breached any federal standard. The scheduling claims are additionally expressly preempted by the Airline Deregulation Act. And Plaintiffs' common-carrier claims are duplicative. The Court should dismiss all claims against PSA.

# ARGUMENT

Plaintiffs have failed to state a plausible claim against PSA.  As PSA previously explained (at 6-19), Congress intended the federal government to have comprehensive and exclusive control in regulating the field of aviation safety, which implicates each of Plaintiffs' claims.  Federal standards govern every aspect of PSA's operations, yet Plaintiffs all but concede that they have not alleged that PSA violated any federal standard or regulation concerning crewmember training, aircraft lighting, safety risk management systems, flight scheduling, or executing a circling approach to Runway 33 at DCA.  That deficiency warrants dismissal of virtually all of their claims—primarily because the pervasive federal regulation in each of the specific safety areas supplants any state standard of care, but also because—even under Plaintiffs' preemption theory—it would have been impossible for PSA to independently comply with federal law and the state-law duties Plaintiffs would impose.

As to Plaintiffs' claims concerning the operation of Flight 5342, their reliance on 14 C.F.R. § 91.13(a), which prohibits "careless or reckless" operation of an aircraft, is insufficient on its own to state a plausible claim.  While a standalone violation of this regulation may be theoretically possible, Plaintiffs have not plausibly alleged one here by the Flight 5342 crew, where federal regulations govern each aspect and decision in the final moments of Flight 5342's approach into DCA—from the approach path, to PAT25's prescribed path and altitude, to which aircraft has right-of-way, to how the pilots must respond to ATC instructions.  Where specific federal regulations exist, they "set the standard" for measuring "careless or reckless" conduct against those standards.  *Abdullah v. Am. Airlines*, 181 F.3d 363, 371 (3d Cir. 1999); *see also Witty v. Delta Air Lines, Inc.*, 366 F.3d 380, 384 (5th Cir. 2004).  Because Plaintiffs have alleged that Flight 5342's crew *complied* with each and every federal rule and standard governing the flight's operation, they have not plausibly alleged "careless or reckless" flight operation.  By contrast, the government admits that PAT25's crew violated multiple federal air traffic rules.  In the final moments of a

landing approach into DCA, compliance with uniform air traffic rules is paramount. Plaintiffs do not meaningfully respond to PSA's detailed argument in its motion (at 13-19) that Plaintiffs have failed to allege facts that plausibly support a violation of 14 C.F.R. § 91.13(a), or any other federal regulation.

In its concurrently filed reply, American addresses Plaintiffs' preemption arguments and explains why Plaintiffs' claims are preempted under any analysis (American Reply 3-18), explains why the scheduling claims are also expressly preempted by the Airline Deregulation Act of 1978, Pub. L. No. 95-504, 92 Stat. 1705 (*id.* at 18-21), and explains why the formulation of these claims under a common carrier theory is duplicative and incorrect (*id.* at 25). As before, American's arguments apply with equal force to Plaintiffs' identical claims against PSA, and PSA incorporates these aspects of American's reply. To avoid repetition, PSA briefly summarizes these arguments and focuses on Plaintiffs' arguments concerning Flight 5342's operation, which are specific to PSA.

### A.    Plaintiffs have not plausibly alleged that PSA breached any federal standard of care.

PSA demonstrated (at 6-19) that all of Plaintiffs' liability theories are preempted by Congress's establishment of an exclusive federal regime governing aviation safety. In enacting the Federal Aviation Act, Congress vested the FAA with authority to regulate virtually every topic that touches upon aviation safety because creating "a uniform and exclusive system" of aviation rules is essential to achieve safety in the federal airspace. *Burbank v. Lockheed Air Terminal, Inc.*, 411 U.S. 624, 639 (1973); *see generally* 49 U.S.C. § 40103. While the Act's savings clause preserves state remedies for personal injuries, the Act preempts state standards of care. *See* American Reply 7; *Abdullah v. Am. Airlines, Inc.*, 181 F.3d 363, 376 (3d Cir. 1999) (holding that Congress intended to preserve state causes of action in tort, but only for "violation of federal air safety standards"). Because all of Plaintiffs' liability theories against PSA concern aviation safety, they must allege that PSA breached a federal standard of care. Their failure to do so means their claims

are preempted.

Plaintiffs principally argue (at 13-31) for a different preemption analysis, but their alternative preemption theories do not refute PSA's argument that preemption requires dismissal of all these overlapping claims. *See* American Reply 13-18. Congress intended the federal government to occupy the field of aviation safety regulation when it enacted the Federal Aviation Act—indeed, it recognized that uniform regulation is necessary "for the prevention of collision between aircraft." Pub. L. No. 85-726, 72 Stat. 731, 750; *see* 49 U.S.C. § 44701(c) ("The Administrator shall carry out this chapter in a way that best tends to reduce or eliminate the possibility or recurrence of accidents in air transportation.").

Against this expressed intent and the "obvious problems that would arise if the 50 states and the FAA attempted to regulate air safety at the same time" (*French v. Pan Am Exp., Inc.*, 869 F.2d 1, 6 (1st Cir. 1989)), Plaintiffs rely on misguided textual arguments. *See* American Reply 5-8. They conflate (at 13, 15-16) state remedies with state standards of care—the Act's savings clause no doubt preserves state remedies for personal injuries. But the Act preempts state standards of care. *See* American Reply 6-9; *Abdullah v. Am. Airlines*, *Inc.*, 181 F.3d 363, 376 (3d Cir. 1999) (holding that Congress intended to preserve state causes of action in tort, but only for "violation of federal air safety standards"). And they mistakenly argue for a negative inference to be drawn from Congress's subsequent inclusion of express preemption provisions in the Airline Deregulation Act and the General Aviation Revitalization Act, Pub. L. No. 103-298 (1994)—these provisions were necessary, however, to achieve the particular objectives of those statutes, which were distinct from the Federal Aviation Act's aim of ensuring uniform aviation safety standards. *See* American Reply 7-8. Nothing in either Act suggested any intention to cede exclusive federal regulatory control over aviation safety; the ADA addressed economic matters, while the GARA narrowly addressed repose for aircraft manufacturers. *Id.* It is thus unsurprising that the Supreme Court and overwhelming weight of circuit authority recognized—and continue to recognize—the

4

broad preemptive scope of federal regulation in matters of aviation safety. *Id.* at 9-10.

Even under Plaintiffs' alternative preemption theory, moreover, their claims against PSA still fail. Federal regulations and standards pervasively govern each specific safety issue implicated by Plaintiffs' claims. Yet Plaintiffs all but concede that they have not alleged a breach of a federal standard of care as to most of their claims against PSA. And while they cite to a pair of federal regulations (14 C.F.R. §§ 91.13(a) and 91.113(b)) with respect to the PSA-specific claims concerning the operation of Flight 5342, those citations are not supported by plausible factual allegations.

The claims against PSA are thus all preempted and should be dismissed.

### 1.    *The overlapping claims with American are preempted.*

As PSA previously explained (at 7-9), most of Plaintiffs' claims against it overlap entirely with their claims against American and thus fail for the same reason: Plaintiffs have not alleged that PSA violated a single one of the many federal laws or standards that govern the precise aviation safety concerns implicated by Plaintiffs' theories. Plaintiffs effectively concede this deficiency in their opposition. *See* American Reply 13-16. Because the complaint alleges that PSA should have operated differently than what was required under federal law, all of the overlapping claims against PSA are preempted.

Under each specific theory, moreover, the FAA has promulgated pervasive federal rules and safety standards, implementing the uniform standards needed to accomplish Congress's safety objective in enacting the Federal Aviation Act. Plaintiffs acknowledge (at 34) that these "federal aviation regulations impose certain duties" on PSA regarding each of their claims. That pervasive regulation should end the analysis.

**Pilot training, instruction, and supervision:** Plaintiffs acknowledge (at 35-36) that entire subparts in the Code of Federal Regulations govern an airline's flight manual (14 C.F.R. Part 121 Subpart G) and crewmember training (*id.* Subpart N), but they do not make any allegation that

PSA violated these standards by failing to adopt certain policies and procedures regarding pilot training. These regulations are "exhaustive" and touch upon the precise theories alleged. *In re Air Crash Near Clarence Ctr.*, 2013 WL 5964480, \*5 (W.D.N.Y. 2013); *see, e.g.*, 14 C.F.R. § 121.354 (requiring "appropriate procedures for" using collision alert systems); *id.* § 91.161 (special training requirement for DCA airspace). Plaintiffs also disregard that PSA could not have simply "change[d] its policy" (Opp. 35) because FAA approval is required "[p]rior to implementation" of a training program. 14 C.F.R. § 121.401(a)(1); *see PLIVA, Inc. v. Mensing*, 564 U.S. 604, 620 (2011); American Reply 16-18.

Nor can Plaintiffs analogize these claims to products liability cases simply by describing contents of a flight manual as its "design." Opp. 34-36 (citing *Sikkelee v. Precision Airmotive Corp.*, 907 F.3d 701 (3d Cir. 2018) (*Sikkelee II*)). While federal law may not comprehensively dictate the design of an aircraft engine, it specifically lists an operations manual's "contents" (14 C.F.R. § 121.135) and requires that it "[i]nclude instructions and information necessary to allow the personnel concerned to perform their duties and responsibilities with a high degree of safety" and "[n]ot … contrary to any applicable Federal regulation … or the certificate holder's operations specifications or operating certificate" (*id.* § 121.135(a)). Plaintiffs do not allege a violation of that federal safety standard.

***Aircraft lighting:*** Federal regulations comprehensively set requirements for exterior aircraft lighting, including minimum and maximum light intensities and color. *See* 14 C.F.R. §§ 25.1391-25.1397. These regulations even address technical specifications for "anticollision lights." *Id.* § 25.1401. PSA's obligation, moreover, is simply to operate an airworthy aircraft. *See* 14 C.F.R. § 125.91(a). Because federal regulations address the precise concern Plaintiffs raise— yet Plaintiffs do not allege that PSA breached these standards—their aircraft lighting claims are preempted. *See* 14 C.F.R. § 25.1401(d)-(f); American Reply 14-15. The government agrees. U.S. Br. 4.

6

***Safety risk management:***  Plaintiffs are mistaken (at 37) that federal regulations simply "ensure that such a program exists."  To the contrary, numerous federal regulations set standards for PSA's safety risk management programs, including standards that govern the contents of a safety policy (14 C.F.R. § 5.21) and the information that must be used to identify safety hazards (*id.* § 5.53).  Plaintiffs' failure to allege that PSA's FAA-approved safety risk management program breached any one of these standards means their claims are preempted.  *See* American Reply 15-16.

***Flight scheduling:***  Federal law exclusively governs PSA's flight schedules at DCA.  Every PSA arrival at DCA is reserved through a federally approved "reservation" pursuant to FAA's "slot system."  14 C.F.R. § 93.125; *see id.* § 93.123.  The FAA has sole authority to amend the slot system at DCA and otherwise regulate air traffic at this high-density airport.  *Id.* § 93.130.  This intricate federal regulatory scheme preempts Plaintiffs' claims regarding PSA's FAA-approved flight schedule at DCA.  Plaintiffs do not respond.  *See* American Reply 16.

## 2.    *The circling approach claims are preempted.*

PSA previously explained (at 10-13) that Plaintiffs' claims regarding Flight 5342's pilots accepting and executing a circling approach to Runway 33 are preempted because Plaintiffs have not alleged that the pilots violated any federal rule or standard in conducting the approach precisely as ATC directed and FAA had designed.  FAA controls virtually every aspect of air traffic operations in DCA airspace to accomplish its safety mission—from designing and approving runway and approach paths at DCA (14 C.F.R. Part 139 and *id.* § 97.20) to controlling and directing air traffic "to ensure safety in the takeoff and landing of aircraft" (49 U.S.C. § 40102(a)(32)) to creating special flight rules in DCA airspace (14 C.F.R. Part 93 Subpart V).  Plaintiffs cannot plausibly allege that Flight 5342's pilots were negligent in "accept[ing] a circling approach to Runway 33," an approach that the FAA had beforehand designed to manage air traffic around DCA and which ATC had requested Flight 5342's pilots to accept.  Compl. ¶ 90.  Flight 5342's crew

complied with every federal rule, standard, and guidance on the books: unlike PAT25's crew, it followed the "traffic patterns established for [DCA]" (14 C.F.R. § 91.127), complied with "ATC instruction[s]" (*id.* § 91.123(b)), and accepted ATC's request to execute a circling approach to Runway 33 consistent with federal standards governing when it is appropriate to accept a circling approach (FAA, Aeronautical Information Manual, § 5-4-5(f) "Instrument Approach Procedure (IAP) Charts" "Circling"). *See* Compl. ¶ 188.

The comprehensive federal regulation governing the circling approach to Runway 33—and Plaintiffs' inability to allege that the Flight 5342 crew breached a single one of the numerous federal rules and standards on point—preempts Plaintiffs' circling-approach claims. Plaintiffs cannot invoke state common-law tort duties to challenge the FAA's determination that it is generally safe to take a "circling approach to land at Runway 33 at DCA in nighttime conditions" and under the specific circumstances in which the Flight 5342 crew accepted ATC's request for the aircraft to take that approach. Compl. ¶¶ 222(g), 229(g), 236(g), 243(g); *see Dania Beach v. FAA,* 628 F.3d 581, 584 (D.C. Cir. 2010) (explaining that FAA evaluates the "safety hazards associated with" a runway's layout and design, which are subject to FAA standards, approvals, and certification); *Tweed-New Haven Airport Auth. v. Tong*, 930 F.3d 65, 75 (2d Cir. 2019) (holding that "Congress intended the [Federal Aviation Act]," and the authority it vested to the FAA, "to occupy the entire field of air safety including runway length").

Plaintiffs offer virtually nothing in response to this showing. *See* Opp. 31-32. They do not attempt to rebut PSA's detailed demonstration that federal law dominates every aspect touching upon the circling-approach claims. *See* PSA Mot. 10-12. They offer no counter to D.C. Circuit precedent holding that the FAA weighs "safety hazards associated with" the design and layout of a runway, which necessarily accounts for approach paths and whether "air traffic control could choreograph the dance of the airplanes … safe[ly]." *Dania Beach*, 628 F.3d at 589. And they do not respond to PSA's argument that the allegations show that Flight 5342's crew complied with

every single federal rule, standard, and guidance governing their acceptance and execution of the circling approach.  *See* PSA Mot. at 12-13.

Instead, Plaintiffs simply reference "the careless or reckless standard of 14 C.F.R. § 91.13(a)," without explaining how that standard saves their circling-approach claims from preemption.  Opp. 31.  The complaint, however, only cites to that regulation with respect to the see-and-avoid claims; there is no reference to it in any of the allegations concerning the circling-approach theories.  *Compare, e.g.*, Compl. ¶ 221 (alleging a duty "to see and avoid other aircraft pursuant to 14 C.F.R. § 91.13(a)"); *id.* ¶ 222(a) (alleging negligence "by failing to see and avoid PAT25, including while on final approach to Runway 33 at DCA, pursuant to 14 C.F.R. § 91.13(a)"); *with id.* ¶ 222(e)-(g) (citing no federal regulation).  "It is axiomatic that a complaint may not be amended by the briefs in opposition to a motion to dismiss."  *Quaid v. Kerry*, 161 F. Supp. 3d 70, 72 n.2 (D.D.C. 2016) (quoting *Arbitraje Casa de Cambio, S.A. de C.V. v. United States Postal Serv.*, 297 F. Supp. 2d 165, 170 (D.D.C. 2003)).  The Court should thus decline at the outset to "consider th[is] argument[]," which was not alleged in the complaint.  *Id.*

In any event, Plaintiffs do not plausibly explain in their opposition—let alone allege in their complaint—how the Flight 5342 pilots' acceptance of an ATC-requested and FAA-approved circling approach under the appropriate conditions as detailed by federal regulatory manuals, and their execution of this approach consistent with the FAA's technical specifications and federal air traffic regulations, could possibly be "a careless or reckless" operation of an aircraft "so as to endanger the life or property of another."  14 C.F.R. § 91.13(a).  Because of this deficiency, they have not plausibly stated a claim regarding Flight 5342's circling approach.

### 3.    *Plaintiffs have not plausibly alleged a see-and-avoid claim.*

Plaintiffs' see-and-avoid claims fail for the same reason: they have not plausibly alleged that Flight 5342's crew—which was complying with every one of the numerous federal rules and instructions governing air traffic—was operating the aircraft "carelessly or recklessly."  14 C.F.R.

§ 91.13(a).  Beyond pointing to this general standard and another federal regulation that Plaintiffs have factually alleged the Flight 5342 crew was *complying* with, Plaintiffs offer no counter to PSA's detailed explanation (PSA Mot. 13-19) as to why they have not alleged facts to plausibly support a breach of a federal standard.

To start, Plaintiffs appear to misunderstand (at 32) PSA's argument.  PSA acknowledged in its opening brief that "Plaintiffs invoke a general catch-all regulation that prohibits 'careless or reckless' operation of an aircraft."  PSA Mot. 17 (citing to complaint allegations that reference 14 C.F.R. § 91.13(a)).  But while the complaint may reference that regulation with respect to the see-and-avoid claims, PSA explained (at 17-19) that, "[u]nder the circumstances alleged, Flight 5342's crew could not plausibly have been operating the aircraft carelessly or recklessly in violation of 14 C.F.R. § 91.13(a) while complying with the numerous federal dictates and ATC instructions on its approach."  PSA Mot. 17.  Despite Plaintiffs' mischaracterization (at 32-33) of PSA's motion, PSA has not argued that a violation under 14 C.F.R. § 91.13(a) is "only derivative of other federal regulation violations."  Opp. 32.  To the contrary, PSA observed that such violations are "typically derivative," because "in virtually every case where a court has upheld an agency finding of careless or reckless operation of an aircraft, the pilot acted contrary to either federal regulation or ATC instruction."  PSA Mot. 17 (collecting cases).  Plaintiffs describe this premise as "extraordinary" and "unfounded" (Opp. 32), yet they do not offer a single federal or administrative case finding a violation of 14 C.F.R. § 91.13(a) without other underlying violations of federal aviation regulations.[2]

---

[2]    For its part, the government offers a single administrative enforcement action where the FAA suspended a pilot's certificate solely based on violating 14 C.F.R. § 91.13(a).  U.S. Br. 6 (citing *Administrator v. Lorenz*, NTSB Order No. EA-5205, 2006 WL 208383 (NTSB Jan. 23, 2006)).  In that case, the pilot "inadvertently landed … with the landing gear retracted."  *Lorenz*, 2006 WL 208383 at *1.

Unsurprisingly, federal regulations and guidance extensively cover the appropriate design and use of landing gears, which dictate that pilots are required to use landing gears absent exigent circumstances.  *See, e.g.*, 14 C.F.R. § 25.729 (requiring retractable gear to have an aural warning

PSA thus does not dispute that 14 C.F.R. § 91.13(a) is "a stand-alone regulation" or that it "acts as a general standard of care for in-flight operations." Opp. 32-33; *see also* U.S. Br. 5 (citing to federal courts concluding that 14 C.F.R. § 91.13(a) preempts state standards of care). The point, however, is that in areas where federal rules and instructions are pervasive and dominant—which, as PSA has shown, is especially true in the moments of a final approach into DCA—it is difficult to fathom how a pilot could plausibly operate an aircraft carelessly or recklessly while also complying with each and every federal rule in the book. *See Joy v. Bell Helicopter Textron, Inc.*, 999 F.2d 549, 561 (D.C. Cir. 1993) (assessing the sufficiency of evidence for a violation of 14 C.F.R. § 91.13(a) in light of "the FAA restrictions governing the flight"); *Haines v. Dep't of Transp.*, 449 F.2d 1073, 1076 (D.C. Cir. 1971) (this regulation "is designed to promote safety and uniformity in commercial flight and to *induce compliance with traffic controls*") (emphasis added).[3] If there is such a circumstance, Plaintiffs have not alleged one.

Beyond that misunderstanding, Plaintiffs do not even try to rebut PSA's previous showing (at 15-19) that they have failed to plausibly allege facts supporting careless or reckless operation of Flight 5342. PSA's pilots were following ATC instructions and cleared for final approach by

---

device to alert pilot if attempting to land with the gear up); *id.* § 91.9 (requiring pilots to comply with the operating limitations specified in the Airplane Flight Manual, which provide standardized checklists that mandate extending the landing gear for a normal landing); FAA, *Airplane Flying Handbook*, Chapter 18: Emergency Procedures (describing emergency procedures for a "gear-up landing"). 14 C.F.R. § 91.13(a) provides the mechanism for FAA to enforce violations of these other federal rules and standards.

Thus, neither Plaintiffs nor the government have refuted PSA's observation that virtually every example of a pilot operating an aircraft carelessly or recklessly in violation of 14 C.F.R. § 91.13(a) involves the breach of some other federal rule or standard.

[3] The government suggests (at 6) that 14 C.F.R. § 91.13(a) "restates the general common law duty of reasonable care," but that oversimplifies matters. To be clear, as the government also recognizes (at 5), that federal regulation *preempts* any applicable state standard, making state standards irrelevant. *Joy* held that this regulation "is far too general to be the subject of a negligence per se instruction"; it did not purport to determine the precise contours of this federal standard. 999 F.2d at 558. But importantly, *Joy* recognizes that "careless" in 14 C.F.R. § 91.13(a) must be assessed in the context of all the other relevant federal aviation laws, which is conclusive here.

ATC. *See* 14 C.F.R. §§ 91.123(b), 91.127. They thus had right-of-way, such that any aircraft nearby were obligated to "give way" as required under 14 C.F.R. § 91.113(g). And the only information they heard from ATC was that PAT25 had their aircraft in sight and would "pass behind." Compl. ¶¶ 154-155, 162-163. Without a modified instruction from ATC or an alert from ATC that PAT25 was converging on their glidepath, federal rules and standards do not call for a deviation from final landing approach. *See* 14 C.F.R. § 91.123; FAA Advisory Circular 90-120.

Plaintiffs' principal response to this showing (at 31, 34) is to point to 14 C.F.R. § 91.113(b), which generally requires pilots to maintain vigilance to "see and avoid other aircraft." But as PSA described (at 15, 18), that provision specifically requires that a "pilot shall give way ... and may not pass over, under, or ahead of" another aircraft "[w]hen a rule of this section gives another aircraft the right-of-way." 14 C.F.R. § 91.113(b). Flight 5342 was on an ATC-cleared final approach and thus "ha[d] the right-of-way over other aircraft." *Id.* § 91.113(g); *see* Compl. ¶ 137 ("runway three three cleared to land."). Thus, it was PAT25's obligation under federal law to "give way" to Flight 5342, not the other way around. *Id.* § 91.113(b).[4] Plaintiffs do not respond.

At bottom, Plaintiffs' see-and-avoid claim would require PSA's flight crew to have taken actions that depart from "uniform[]" air traffic rules and the reasonable expectation that other aircraft will follow those rules, a proposition that would upend the objective of FAA's extensive

---

[4] This dispenses with plaintiffs' repetition of allegations about "situational awareness," TCAS advisories, and evasive action. *See* Opp. 31. As PSA explained (at 18-19 n.4), these allegations cannot plausibly state facts sufficient to overcome Flight 5342's clear right of way. Because of Flight 5342's low altitude, the Flight 5342 crew did not receive a TCAS Resolution Advisory alert, which alerts pilots when the "aircraft will come even closer and direct [them] to take action to avoid those aircraft." Compl. ¶ 32. The inference Plaintiffs attempt to draw—that Flight 5342's pilots must not have tried to see and avoid PAT25—is utterly implausible in the circumstances. Indeed, the National Transportation Safety Board (NTSB)—the independent entity statutorily charged with investigating and "establish[ing] the facts, circumstances, and cause or probable cause of" aircraft accidents (49 U.S.C. § 1131)—identified many facts reflecting failures by the United States government. *See* NTSB, "What We Found," *Midair Collision PSA Airlines Bombardier CRJ700 Airplane and Sikorsky UH-60 Military Helicopter* (Jan. 27, 2026), perma.cc/HA9J-D4UT. The same was not true for the pilots on Flight 5342, who followed every federal instruction.

regulation of air traffic control in DCA airspace and potentially *increase* the risk of accidents. *Haines*, 449 F.2d at 1076 (explaining that 14 C.F.R. § 91.13(a) "is designed to promote safety and uniformity in commercial flight and to induce compliance with traffic controls" and to "prevent inherently dangerous practices").  But federal standards are clear that "[w]hen an ATC clearance has been obtained, no pilot in command may deviate from that clearance unless an amended clearance is obtained, an emergency exists, or the deviation is in response to a traffic alert and collision avoidance system resolution advisory."  14 C.F.R. § 91.123; *see also* FAA Advisory Circular 90-120, ¶ 3.2 (clarifying that an aircraft cleared to land should "not deviate from an assigned clearance [to land] based solely on T[raffic] A[dvisory] information.").  These standards and rules make plain the obvious: unilateral deviations from federal rules and instructions in-flight necessarily *introduce* risks to other aircrafts.  Based on the allegations in the complaint, the Flight 5342 crew took the only reasonable course of action:  the pilots complied with all federal rules, standards, and instructions.  Plaintiffs have not alleged—and cannot allege—the facts necessary to support this claim against PSA.

*    *    *

All of Plaintiffs' claims against PSA should be dismissed because they have not plausibly alleged that PSA breached any federal standard of care.

## B.    The scheduling claims are expressly preempted by the Airline Deregulation Act.

PSA previously explained (at 19-20) that Plaintiffs' scheduling claims are also preempted under the Airline Deregulation Act's express preemption provision, which preempts claims that "relate to" PSA's "service[s]" and "route[s]."  49 U.S.C. § 41713.  Plaintiffs do not dispute that the FAA-approved schedule of PSA's flights into DCA goes to the essence of its air transportation "service."  *See* American Reply 18-19.  Instead, they contend that various cases establish the broad point that "personal injury claims" do not "fall under the scope of economic regulation Congress sought to preempt" (Opp. 40)—ultimately because, Plaintiffs assert, they "do not 'seek to dictate'

13

'when and how often'" any airline flies into DCA (Opp. 42). But when and how often an airline flies into DCA is *exactly* what Plaintiffs' scheduling claims would regulate: The only way PSA could avoid liability under this theory is by changing its FAA-approved schedule into DCA. *See* American Reply 19-20. Contrary to Plaintiffs' contention, in conducting the ADA preemption analysis, courts consider what conduct the asserted state-law claim, if accepted, would regulate. As the Supreme Court has observed, there may be "some state actions" that affect airline services in "too tenuous, remote, or peripheral a manner to have pre-emptive effect." *Morales v. Trans World Airlines, Inc.*, 504 U.S. 374, 390 (1992). But *Morales* explains that "[t]he ordinary meaning of ['relating to'] is a broad one … and the words thus express a broad pre-emptive purpose." *Id.* at 383. As in *Morales*, "the present litigation plainly does not present [such] a borderline question": there is nothing "tenuous" about Plaintiffs' scheduling claims' "connection with" PSA's "services." *Id.* at 384, 390. Plaintiffs would have state law *directly* regulate an airline's routes and schedules into DCA. The authorities Plaintiffs invoke are readily distinguished by considering what conduct the state-law claims in those cases would regulate. *See* American Reply 20-21. Because Plaintiffs' scheduling claims would cause state law to regulate how and when an airline flies into a particular airport, the scheduling claims are expressly preempted.

### C.    The common carrier claims should be dismissed.

In addition to federal law preempting any purported "common carrier" duty owed by PSA, Plaintiffs' claims based upon such a duty should be dismissed for the additional reason that there is no independent cause of action for "common carrier" liability. As PSA explained (at 20), these claims simply repeat the same allegations as the negligence claims. And even in the few jurisdictions that impose a heightened common carrier duty, such a duty arises "within the framework of an ordinary negligence claim, rather than as a distinct cause of action." *Shay v. Norwalk Taxi, Inc.*, 2013 WL 1277294, *4 (Conn. Super. Ct. 2013); *see also, e.g.*, *Sanchez v. Bay Area Rapid Transit Dist.*, 2013 WL 4764485, *7 (N.D. Cal. 2013) (explaining that it is "one element of a

general negligence claim, not a claim unto itself"); *Walker v. King Cnty. Metro*, 109 P.3d 836, 837-838 (Wash. 2005) (describing "the duty or standard of care owed by a common carrier" as an "element of negligence"). Because there is no distinct common-carrier cause of action—and the allegations in these claims are identical to those in the negligence claims—the "common carrier" claims should be dismissed as "duplicative." *Park v. Hyatt Corp.*, 436 F. Supp. 2d 60, 66 (D.D.C. 2006).

Plaintiffs do not respond to this key point in either of their oppositions.[5] Instead, in Plaintiffs' opposition to American Airlines, Inc.'s motion to dismiss (Dkt. 67 at 20), they simply assume D.C. law applies and argue that it imposes a "different" standard than "the traditional negligence standard." Aside from that assumption being misguided and the understanding of D.C. law being incorrect (American Reply 25 n.15), Plaintiffs' argument is simply non-responsive to the airlines' showing that dismissal of these claims is warranted because there is no independent cause of action for common-carrier liability. The Court should thus dismiss these claims.

## CONCLUSION

The Court should dismiss Plaintiffs' claims against Defendant PSA Airlines, Inc.

---

[5]   Plaintiffs nowhere respond to PSA's argument in its motion to dismiss (at 20) that the common carrier claims against it should be dismissed for additional non-preemption reasons. Plaintiffs' opposition to PSA's motion to dismiss (Dkt. 66) is limited to "grounds of federal preemption."

Dated:  January 30, 2026

Respectfully submitted,

/s/ *Robert J. Burns*
William F. Gould (Bar No. 428468)
HOLLAND & KNIGHT LLP
800 17th Street, NW
Washington, DC 20006
(202) 955-3000
william.gould@hklaw.com

Steven Raffaele (Bar No. NY0685)
Robert J. Burns (Bar No. NY0682)
Sarah Korapaty (Bar No. NY0684)
Qian (Sheila) Shen (Bar No. NY0693)
HOLLAND & KNIGHT LLP
787 Seventh Avenue
New York, NY 10019
(212) 513-3200
steven.raffaele@hklaw.com
robert.burns@hklaw.com
sarah.korapaty@hklaw.com
qian.shen@hklaw.com

/s/ *Paul W. Hughes*
Paul W. Hughes (Bar No. 997235)
Sarah P. Hogarth (Bar No. 1033884)
Mary H. Schnoor (Bar No. 1740370)
Alex C. Boota (Bar No. 90001014)
MCDERMOTT WILL & SCHULTE LLP
500 North Capitol Street NW
Washington, DC 20001
(202) 756-8000
phughes@mwe.com
shogarth@mwe.com
mschnoor@mwe.com
aboota@mwe.com

*Attorneys for Defendants*
*American Airlines, Inc. and PSA Airlines, Inc.*